UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DAVID ASLANI,                                              |        Case No. 1:08-cv-298
                                                           |
      Plaintiff,                                           |        Chief Judge Paul L. Maloney
                                                           |
          v.                                         |        Magistrate Judge Scoville
                                                           |
SPARROW HEALTH SYSTEMS,                                     |
                                                           |
KEN HAMKAMD, individually and as                           |
security officer of Sparrow Health System,                 |
DENNIS SWAN, individually and as administrator in          |
charge of Sparrow Health System,                           |
RICHARD LIEBELT, individually and as                       |
registered nurse of Sparrow Health System,                 |
RACHEL LATUNSKI, individually and as                       |
registered nurse of Sparrow Health System,                 |
KARL ENGLER, individually and as                           |
registered nurse of Sparrow Health System,                 |
DR. JAMES CAGLE, individually and as                       |
physician of Sparrow Health System,[1]                     |
DR. STEVEN OWENS, individually and as                      |
physician of Sparrow Health System,[2]                     |
                                                           |
GREYHOUND BUS LINES, INC.,                                 |
                                                           |
ED LEWIS, individually and as                              |
bus driver of Greyhound Bus Lines, Inc.,                   |
                                                           |
CAPITAL AREA TRANSPORTATION AUTHORITY,                     |
                                                           |
MATTHEW FOWLER, individually & as security officer         |
for the Capital Area Transportation Authority in Mich.,[3] |

_____

[1]Aslani has not served Dr. Cagle.

[2]Aslani has not served Dr. Owens.

[3]

In November 2008, defendants Fowler and Becker jointly filed a motion to quash service

JOSEPH M. BECKER, individually & as security officer | 
for the Capital Area Transportation Authority in Mich., | 
| 
CITY OF LANSING[4], *et al.*, | 
| 
     Defendants. | 
| 

_____

## OPINION AND ORDER

<u>Granting the Lansing Defendants' Motion to Dismiss, and Dismissing</u>
Counts 1, 7 & 8 (Federal Claims) and Count 5 (IIED) as to Police Defendants as Untimely;
Counts 2, 3 and 4 (False Arrest, False Imprisonment, A&B) as to All Defendants as Untimely;
Count 6 (Malicious Prosecution) as to All Defendants for Failure to State a Claim

<u>Dismissing the Lansing Police Department;</u>

<u>Denying without prejudice the Sparrow Health Defendants' Motion for Summary Judgment</u>:
Allowing Sparrow et al. to File Renewed Summary-Judgment Motion After Close of Discovery

<u>Granting in Part, and Denying without Prejudice in Part, Greyhound's Motion to Dismiss</u>:
Denying Motion to Dismiss Count 1 (42 USC 1981) and Count 5 (IIED) as to Greyhound;
Dismissing Count 3 (False Imprisonment) as to Greyhound because it is Untimely as to All Defendants;
Dismissing Count 9 (International Law) as to All Defendants for Failure to State a Claim

_____

[document #35], which has been referred to the Magistrate Judge for a conclusive ruling.  In January 2009, plaintiff Aslani filed an opposition brief [document #62] and Fowler & Becker filed a reply brief (denominated as a supplemental brief) [document #60].  Aslani filed a sur-reply brief on February 20, 2009 [document #73].  The motion was scheduled for oral argument before the Magistrate Judge, but she vacated the hearing *sine die* by order dated January 26, 2009 [document #65].

   4

    As explained below, the court is dismissing the LPD, because it is not a juridical entity.  The court will substitute the City of Lansing, because both claims against a police department, and official-capacity claims against its employees, are  considered claims against the City.

    In future filings by the parties or the court, the caption shall include the City of Lansing but shall not include the LPD or Lansing Police Officers.  *See Shepard's McGraw-Hill, Inc. v. Legalsoft Corp.*, 769 F. Supp. 1161, 1167 (D. Colo. 1991) ("Accordingly, it is ordered that * * * the caption in this action shall be modified to reflect the dismissal of defendant United Systems, Inc. . . .").

This is a federal civil-rights action with pendent state-law tort claims. Plaintiff David Aslani ("Aslani") has asserted nine claims. Numerous defendants have filed motions to dismiss or motions for summary judgment. For the reasons that follow, the court will dismiss the following parties from the case: the Lansing Police Department ("LPD"), because it is not a juridical entity; and the individual Lansing Police Officers, because all nine claims are meritless or untimely as to them.

The court will dismiss five counts as to all defendants. Counts 2, 3 and 4 (Michigan common-law claims for false arrest, false imprisonment, and assault & battery) are barred by the applicable Michigan two-year statute of limitations, and Aslani has not shown the propriety of equitable tolling. Count 6 (Michigan common-law claim for malicious prosecution) fails to state a claim on which relief can be granted, because the underlying criminal proceedings did not terminate favorably to Aslani. Count 9 (claims under the United Nations Convention Against Torture ("CAT") and the UN's Universal Declaration of Human Rights ("UDHR")).

Thus, only four claims remain, all of which appear to be governed a three-year statute of limitations under Michigan law: counts 1, 7 and 8 (federal civil-rights claims) and count 5 (intentional infliction of emotional distress, "IIED").

Aslani describes himself as a Muslim and "an Iranian-born naturalized citizen of the United States" who "is olive-skinned and outwardly appears to be of Middle Eastern descent." *See* Complaint filed March 31, 2008 ("Comp") ¶¶ 13 & 35; First Amended Complaint filed July 21, 2008 ("Am Comp") ¶¶ 15 & 17. Aslani had a valid Greyhound bus ticket for a round trip from Detroit to Lansing and back. **On April 1, 2005**, Aslani was attempting to use the return portion of that ticket, going from Lansing to Detroit. Aslani urgently needed to get home because his wife was waiting for him with his blood-pressure medication, which he had forgotten to take with him on the

trip.  Comp ¶¶ 1-2.

Aslani approached the Greyhound bus driver, showed him the valid ticket, and, it seems, explained that he needed to get on the next bus, not a later bus, in order to get his medication as soon as possible; Aslani indicated that he would stand in the aisle or "squeeze" himself on a seat with other passengers.  Comp ¶ 3.  Aslani does not mention whether there was a seat available within the customary, contemplated use of the seats, i.e., with enough room for each person to be reasonably comfortable and not unduly cramped or imposed upon.  Nor does he relate the driver's response, if any, to his request.

While the driver was busy with luggage and talking to other passengers, Aslani boarded the bus and "easily" found a seat.  Comp ¶ 4.  A few minutes later, two City of Lansing police officers boarded the bus, approached Aslani, and "advised him with hostility, anger, and disrespect that he had to get off the bus immediately, otherwise he would be arrested for trespassing."  Comp ¶ 6.  Aslani explained to the police that he had a valid ticket, which he showed them, and that he needed to get back to Detroit urgently to get his blood-pressure medication that he had forgotten to take on the trip, Comp ¶ 7, but the police again ordered him to get off the bus or he would be arrested for trespassing, Comp ¶ 8.  Aslani claims that he complied and got off the bus.  Comp ¶ 9.

Aslani alleges that both Lansing Police Department ("LPD") and Capital Area Transportation Authority ("CATA") security officers directed racial slurs at him, such as "fuckin[g] Arab", while he was at the Greyhound bus terminal.  Comp ¶ 11.  Aslani alleges that he was then "subjected to monstrous mistreatments, in the form of brutal beating, terrorizing tasering and yes, terrifying torture, with . . . intense cruelty . . . ."  Comp ¶ 12.  Aslani asserts that he was subjected to disparate treatment due to his religion (Islam), as evinced by the fact that CATA or LPD officers told him

-4-

"pray now" and called him a "fuckin[g] Moslem" while they were beating, throwing, and tasering him, and by the fact that they desecrated his Muslim holy book.  Comp ¶ 13.

On April 25, 2005, Aslani was charged in the State Court of Ingham County, Michigan, with trespassing, two counts of resisting and obstructing a police officer, and one count of assault and battery, and assigned a court-appointed attorney over his objections.  The prosecutor offered a bargain in which Aslani would plead guilty to a simple misdemeanor for trespassing and the State would drop the other charges.  Comp ¶¶ 14-16.  Aslani contends that he was wrongfully denied access to surveillance videos from the Greyhound bus terminal, the CATA station, and the Sparrow Hospital emergency room, where he was allegedly "subjected to various savage . . . treatments, including but not limited to, beating, tasering, cathe[te]rization and medical torture, and verbal and physical and psychological abuses."  Comp ¶ 17.

At a September 2006 state-court hearing, the state prosecutor offered Aslani this plea agreement:  plead *nolo contendere* (no contest) to misdemeanor trespassing and misdemeanor resisting and obstructing an officer, and pay a fine up to $200, and in return the prosecution would drop the other charges and vacate the order that had prohibited Aslani from carrying firearms.  Comp ¶ 18.  Feeling pressured, Aslani reluctantly accepted the plea bargain because his attorney led him to believe that a no-contest plea was not an admission that he was guilty of committing any offense. Comp ¶¶ 19-21.  The Michigan Court of Appeals denied Aslani's application for leave to appeal in October 2007, *see* Comp ¶ 24 (not available on WestLaw), and the Michigan Supreme Court denied review in April 2008, *see People v. Aslani*, 747 N.W.2d 307 (Mich. 2008).

Aslani filed the original complaint in this court on March 31, 2008, one day less than three

years after his allegedly false arrest and imprisonment and the other alleged torts of the defendants. The original complaint named four institutional defendants – the LPD, Greyhound, CATA, and Sparrow Health Systems – and no individual defendants.

Before the defendants filed any response to the original complaint, Aslani filed the first amended complaint in July 2008.  Because none of the defendants had filed a responsive pleading by that time,[5] Aslani was entitled to amend his complaint once "as of right", i.e., without leave of court or opposing counsel.  *Essroc Cement Corp. v. CPRIN, Inc.*, 2009 WL 129809, *1 (W.D. Mich. Jan. 20, 2009) (Maloney, C.J.) (citing *Rogers v. AK Steel Corp.*, 1998 WL 1753590, *2 (S.D. Ohio Apr. 16, 1998) ("'A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . .'") (quoting FED. R. CIV. P. 15(a)); *McCready v. Michigan State Bar Standing Comm.*, 926 F. Supp. 618, 620 (W.D. Mich. 1995) (McKeague, J.) ("Plaintiff was entitled to file his amended complaint as of right under FED. R. CIV. P. 15(a), because defendant had failed to file an answer to his original complaint."), *aff'd o.g.*, 1996 WL 637484 (6th Cir. Nov. 4, 1996).  Accordingly, the court accepted Aslani's amended complaint for filing.

The amended complaint kept the four institutional defendants and added 16 individual

---

5

"Cases uniformly hold that a 'responsive pleading' is solely one of the pleadings mentioned in Rule 7(a) – [such as an answer –] other responses, such as a motion to dismiss or a motion for summary judgment, do not suffice" under Rule 15(a).  *PNC Secs. Corp. v. Finanz Liedgens GMBH*, 1996 WL 665574, *6 (6th Cir. Nov. 14, 1996) (citing, *inter alia*, *Kroger Co. v. Adkins Transfer Co.*, 408 F.2d 813 (6th Cir. 1969) and *Rogers v. Girard Trust Co.*, 159 F.2d 239 (6th Cir. 1947)).

*See, e.g., Wingert v. JPMorgan Chase Bank*, 537 F.3d 565, 574 (6th Cir. 2008) ("A motion to dismiss is not considered a responsive pleading under Rule 15(a).") (citing *Ohio Cas. Ins. Co. v. Farmers Bank of Clay*, 178 F.2d 570, 573 (6th Cir. 1949)), *reh'g & reh'g en banc denied* (6th Cir. Oct. 28, 2008), *pet. cert. filed*, 77 U.S.L.W. 3442 (U.S. Jan. 27, 2009) (No. 08-956); *Friske v. Scutt*, 2008 WL 4857963, *1 (E.D. Mich. Nov. 6, 2008) (Hluchaniuk, M.J.) ("Here, defendants have not filed a responsive pleading; rather, they have only filed a motion for summary judgment."), *order aff'd*, 2008 WL 5211613 (E.D. Mich. Dec. 11, 2008) (Rosen, D.J.).

defendants:  seven alleged employees of Sparrow (doctors, nurses, and administrators), one alleged

Greyhound employee (bus driver Ed Lewis), two alleged CATA employees (security officers Fowler

and Becker), and six alleged City of Lansing employees (police officers)**. The amended complaint**

**asserts three federal claims, five state-law claims, and one claim under international law:**

| | | |
|---|---|---|
| Count 1, Am Comp ¶¶ 29-48 | 42 U.S.C. § 1981 | |
| ~~Count 2, Am Comp ¶¶ 49-61~~ | ~~False Arrest~~ | |
| ~~Count 3, Am Comp ¶¶ 62-73~~ | ~~False Imprisonment~~ | |
| ~~Count 4, Am Comp ¶¶ 74-83~~ | ~~Assault and Battery / Excessive Force~~ | |
| Count 5, Am Comp ¶¶ 84-89 | IIED | |
| ~~Count 6, Am Comp ¶¶ 90-106~~ | ~~Malicious Prosecution~~ | |
| Count 7, Am Comp ¶¶ 107-114 | 42 U.S.C. § 1983 | |
| Count 8, Am Comp ¶¶ 115-122 | 42 U.S.C. § 1985(3) | |
| ~~Count 9, Am Comp ¶¶ 123-125~~ | ~~UDHR and CAT~~ | |

(The claims listed in "strike-through" font are those which the court will dismiss as to all defendants.

Count 2-4 are untimely as to all defendants, and Counts 6 and 9 lack merit as to all defendants.)

Aslani demands a jury trial.  *See* Am Comp at 1.

**The Lansing Police Defendants.**  On October 8, 2008, seven defendants filed both an

answer[6] to the first amended complaint, and a motion to dismiss ("MTD") the first amended

---

6

Because some defendants have filed an answer, Aslani no longer has an absolute right to
amend his complaint.  "After a responsive pleading [an answer] is filed, a plaintiff may only amend
the pleadings by leave of court or by written consent of the adverse party[,] and leave shall be freely
given when justice so requires."  *Siddock v. Grand Trunk Western R.R., Inc.*, 556 F. Supp.2d 731,
739 (W.D. Mich. 2008) (Maloney, J.) (citing FED. R. CIV. P. 15(a)).

Thus, if Aslani wishes to further amend his complaint, he must file a motion with this court

complaint:  the Lansing Police Department and Lansing Police Officers Paul Beasinger, Kevin

Schlagel, Shannon Thielen, and Nathaniel Osborn; Lansing Police Captain Theresa Szymanski; and

Lansing Police Chief Mark Alley (collectively "the Lansing Police Defendants").  In October 2008,

this court denied the Lansing Police Defendants' dispositive motion without prejudice for failure

to comply with W.D. MICH. LCIVR 7.1(d), which requires a movant to consult with opposing

counsel in an attempt to obtain concurrence before filing a motion, and to affirmatively state in their

motion the efforts that they made to obtain concurrence.  *See Aslani v. Sparrow Health Sys.*, 2008

WL 2642617 (W.D. Mich. Oct. 20, 2008) (Maloney, C.J.).


### DISCUSSION:
### The Lansing Police Defendants' Renewed Motion to Dismiss the Amended Complaint

On November 4, 2008, the Lansing defendants filed a renewed motion to dismiss the

amended complaint under FED. R. CIV. P. 12(b)(6) for failure to state a claim on which relief can be

granted ("Lansing Police MTD").  Aslani filed an opposition brief on December 2, 2008, and the

Lansing defendants elected not to file a reply brief.  The Lansing defendants first seek to dismiss the

LPD on the ground that it is not an entity suable *eo nomine*, in its own name.  *See* Lansing Police

MTD at 2 ¶ 8.  They acknowledge that official-capacity claims against Lansing police employees

constitute claims against the City of Lansing, but they note that Aslani did not raise any official-

capacity claims against the Lansing police employees (in fact, did not name them as defendants at

---

for leave to amend, or he must obtain written consent from all the defendants. *See, e.g., Glass v. The Kellogg Co. Bakery, Confectionery, Tobacco Workers and Grain Millers Pension Plan*, 2008 WL 4534422, *1 (W.D. Mich. Oct. 6, 2008) (Maloney, C.J.) (the parties jointly filed a stipulation permitting plaintiff to amend his complaint after defendant had responded to his original complaint);

all) until the amended complaint.

The amended complaint was not filed until July 21, 2008.  That was more than the three years allowed on the federal civil-rights claims (counts 1, 7 and 8) by MICH. COMP. LAWS § 600.5805(10) and the state-law IIED claim (count 5).  *A fortiori*, it was more than the two years allowed on the state-law false arrest, false imprisonment, and assault & battery claims (counts 2-4) by MICH. COMP. LAWS § 600.5805(2).

The Lansing Police defendants also seek to dismiss the malicious prosecution claim (count 6).  They argue that it is duplicative of the false-imprisonment claim and/or that it fails on its merits.

The Lansing Police defendants' motion does not address count 9, which asserts a claim for violation of the UDHR and the CAT.  But that claim will be dismissed as to all defendants for failure to state a claim, for the reasons stated below in the discussion of Greyhound's motion to dismiss.

In his brief opposing the Lansing Police defendants' motion to dismiss, Aslani spends much time on matters that are irrelevant to the arguments for dismissal and/or legally or factually mistaken.

**For example, Aslani complains that the Lansing defendants have not filed "responsive pleadings" to the first amended complaint and thus should be subject to entry of default judgment, *id.* at 1-2 and 3-4 and 15-16.**  Aslani is advised that defendants are required to file *either* an answer or a dispositive motion (motion to dismiss or a motion for summary judgment) within 20 days of being served with the complaint.  *See Phelps v. Am. Gen. Fin. Servs.*, 2008 WL 3978318, *3 (E.D. Mich Aug. 22, 2008) ("[A] defendant may properly defend as required by Rule 55(a) in ways other than filing an answer, such as by filing a motion to dismiss for failure to state a claim.")

(citing, *inter alia, In re Sumitomo Copper Lit.*, 204 F.R.D. 58, 61-62 (S.D.N.Y. 2001)).[7]

Moreover, the Lansing Police Defendants are not required to file an answer to the amended complaint until after the court rules on their pending motion to dismiss. Almost every court to consider this latter issue has concluded that "[p]ursuant to Rule 12(a)(4) of the Rules of Civil Procedure, once a motion to dismiss under Rule 12(b)(6) is filed a defendant need not file its answer until 10 days following the denial of the motion to dismiss." *Woodruff v. McPhie*, 593 F. Supp.2d 273, ___ n.2 (D.D.C. 2009) ("Therefore, the defendant's answer cannot be considered untimely as the Court is now just ruling on the defendant's motion to dismiss.").[8]

The court adopts this view and finds that the Lansing Police Defendants have complied with the Rules regarding the filing of answers and dispositive motions. There is no basis for entering default or for sanctioning the Lansing Police Defendants for "failing" to file an answer while their timely Rule 12 motion to dismiss is pending. *See, e.g., FaceBook, Inc. v. ConnectU, LLC*, 2007 WL 1725441, *2 (N.D. Cal. June 14, 2007) ("Pacific Northwest and Williams need not file an answer until 20 days after the issuance of a written order denying their pending motion to dismiss, in the event the Court so rules."); *Reeder v. Knapik*, 2007 WL 1521100, *-2 (S.D. Cal. May 22, 2007)

---

[7]

*See, e.g., Philips v. Colony Bancorp*, 2003 WL 23717093, *1 (E.D. Tenn. Nov. 3, 2003) (Edgar, C.J.) ("Prior to filing an answer, defendants filed motions seeking dismissal of this action . . . ."); *Babb v. Bridgestone/Firestone, Inc.*, 861 F. Supp. 50, 51 (M.D. Tenn. 1993) ("Bridgestone has filed two pre-answer motions. First, they have moved to dismiss the complaint against the individual defendants for improper service . . . . They also argue that the Complaint fails to state a cause of action against the individual defendants . . . .").

[8]

Rule 12(b)(4) recognizes the court's authority and discretion to require a defendant to file an answer prior to resolution of its dispositive motion. *See, e.g., Merchants Nat'l Bank of Topeka, Kansas v. Safrabank (California)*, 1991 WL 173784, *1 (D. Kan. Aug. 28, 1991). But this court imposed no such requirement on any of the defendants in this case.

-10-

("Knapik timely filed a Rule 12(b)(5) motion to dismiss plaintiff['] s for insufficiency of service of process.  * * *  Accordingly, Knapik is not in default but is entirely within the procedures set forth in the Federal Rules . . . .  Knapik need not file an answer unless and until the Court enters a ruling on his motion . . . ."); *Combs v. Valdez*, 2005 WL 2291626, *1 n.3 (N.D. Tex. Sept. 13, 2005) ("[They] were served on June 16, 2005; they timely filed the instant motion to dismiss on July 6, 2005.  Thus, pursuant to FED. R. CIV. P. 12(b)(4), [they] need not file an answer or other responsive pleading until 10 days after the District Court determines the instant motion . . . .").[9][10][11]

Nor can the court conclude that the Lansing Police Defendants conceded allegations in

_____

[9]

*Accord Love v. Smith*, 2005 WL 1163143, *4 n.2 (D. Md. May 17, 2005);

*David v. NY Comm'r of Labor*, 2003 WL 21518155, *4 (D. Minn. May 28, 2003), *aff'd on other grounds*, 85 F. App'x 546 (8th Cir. 2004);

*Mittleman v. US*, 997 F. Supp. 1, 6 (D.D.C. 1998), *aff'd on other grounds*, 1998 WL 796298 and 1998 WL 796300 (D.C. Cir. Oct. 15, 1998);

*Hampton v. Scully*, 1991 WL 18129, *5-6 (S.D.N.Y. Feb. 5, 1991) (denying plaintiff's motion for default judgment).

[10]

As noted below, the Lansing Defendants' renewed motion to dismiss the amended complaint does not seek dismissal of count 2 (false arrest under Michigan common law) and count 9 (international-law / treaty claims).  But this fact does not obligate the Lansing Defendants to file an answer to those claims which it has not moved to dismiss.  *See Beaulieu v. Bd. of Trustees of Univ. of West Florida*, 2007 WL 2020161, *2 (N.D. Fla. July 9, 2007) ("The majority of courts considering this question have concluded that a party need not file an answer while a partial motion to dismiss is pending.") (citing *Oil Express Nat'l, Inc. v. D'Allessandro*, 173 F.R.D. 219, 220 (N.D. Ill. 1997) and *Brocksopp Eng., Inc. v. Bach-Simpson, Ltd.*, 136 F.R.D. 485, 486-87 (E.D. Wis. 1991) and *Business Incentives Co. v. Sony Corp. of America*, 397 F. Supp. 63, 64 (S.D.N.Y. 1975) and *Northland Ins. Cos. v. Blaylock*, 115 F. Supp.2d 1108, 1115 (D. Minn. 2000) and Wright, Miller & Marcus, 5B FED. PRAC. & PROC. Civil 2d § 1346 (2006)).

[11]

*Cf. Lindsey v. Leavy*, 149 F.2d 899, 902 (9th Cir. 1945) ("A defendant need not file an answer before moving for summary judgment.") (citing 3 <u>Moore's Federal Practice</u> page 3181).

Aslani's complaint by "failing" to file an answer which denies them. *Krajicek v. Justin*, 1999 WL 195734, *1 (6th Cir. Mar. 23, 1999) (Boggs, Clay, 11th Cir. J. Godbold) ("defendants filed a motion to dismiss in lieu of an answer to the complaint. *See* FED. R. CIV. P. 12(b)(4). Thus, we will not construe their failure to deny the allegations in the complaint as an admission under Rule 8(d).").

**Aslani also seems to assert that "the City of Lansing has been one of the Defendants in the case at hand",** *id.* at 2, even though neither the original complaint nor the amended complaint names the City of Lansing as a defendant. Perhaps Aslani means to say that, once he amended the complaint to include official-capacity claims against the individual Lansing police defendants, those claims effectively were claims against the City of Lansing (which is correct). In any event, as discussed below, the court will dismiss the Lansing Police Department and substitute the City of Lansing as a party defendant in its place.

**Next, Aslani complains that the Lansing Police Defendants failed to comply with W.D. MICH. LCIVR 7.1(d) when they filed their first motion to dismiss**, *id.* at 2-3. But this court already agreed with Aslani on that point, and used it as the basis for denying without prejudice the Lansing Police Defendants' first motion to dismiss (as Aslani acknowledges at Aslani Lansing Opp at 5).

**Aslani next complains that the Lansing Police defendants are being dishonest when they invoke FED. R. CIV. P. 12(b)(6)** and contend that he fails to state a claim against them on which relief can be granted. *Id.* at 3. The court notes that this is not a question of honesty or good faith, but merely a disagreement between adversaries over whether certain counts state a claim on which relief can be granted under the prevailing case law.

-12-

Aslani then charges that the Lansing defendants are lying when they state that he "'filed his complaint [on] July 21, 2008,' which they should have known is absolutely untrue." **Aslani Lansing Opp at 3. Aslani seems to miss two points of law here. First**, once the court accepts an amended complaint for filing, it automatically replaces the original complaint. *Malik v. AT&T Mobility LLC*, 2008 WL 4104555, *3 (W.D. Mich. Aug. 29, 2008) (Maloney, C.J.) and *ABB, Inc. v. Reed City Power Line Supply Co.*, 2007 WL 2713731, *1 (W.D. Mich. Sept. 18, 2007) (Maloney, J.) (both quoting *FL Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 702 (1982) (White, J., concurring in part & dissenting in part o.g., joined by 3 JJ.)).  The filing of the amended complaint renders the original null and void. *Essroc Cement Corp. v. CPRIN Recycling, Inc.*, 2009 WL 129809, *1 (W.D. Mich. Jan. 20, 2009) (Maloney, C.J.) (citing *B&H Med., LLC v. ABP Admin, Inc.*, 526 F.3d 257, 268 n.8 (6th Cir. 2008) (citations omitted)).  Thus, for most purposes, the original complaint has no effect, as if it never existed.

**Second,** the date when a superseded complaint was filed may be relevant under the "relation back" doctrine.  Under that doctrine, which is codified at FED. R. CIV. P. 15(c) and MICH. CT. R. 2.118(D), an amended complaint is sometimes deemed to be filed on the date of the *original* complaint. *See generally Moore v. Tenn.*, 267 F. App'x 450, 454-56 (6th Cir. 2008).  In the limitations analysis below, the court will explain why Aslani's amended complaint does *not* "relate back" to the time when he filed the original complaint.

## DISCUSSION
### Plaintiff's Request for Rule 11 Sanctions against the Lansing Police Defendants

Next, Aslani seeks Rule 11 sanctions against the Lansing Police Defendants.  He writes:

Defendants, through their attorneys, by placing a simple telephone call to the office

of the clerk of this Court could have readily ascertained the fact that, under the attendant circumstances in the case at bar, they had been served timely, and thereby there was no necessity for filing the concerned vexatious and misleading motion for dismissal under the attendance circumstances in the case at bar.

Therefore, in their failure to provide their responsive pleadings to the plaintiff's First Amended Complaint, the said Defendants have failed to exercise reasonable inquiry and thereby have failed to utilize due diligence and in such a failure they have violated the requirement under FED. R. CIV. P. 11, which mandates that every motion is well grounded in fact and it is warranted by existing law or a good-faith argument [for a change in the law] and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.  When a motion is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the motion, including a reasonable attorney's fee.  [citation omitted]

\* \* \*

Defendants have asserted that they had "left a detailed message on the basis of Defendants' Motion to dismiss . . . ."  (please see pages 1-2 of the said motion).  The fact of the matter is that Mr. David Otis, the attorney for the said Defendants, left only a one-sentence message in which he had advised the plaintiff that he was "calling to seek concurrence in our motion for summary judgment based on statute of limitations."  That sentence a detailed message does not make, as under the dictionary definition the term "detailed" has been "characterized by abundant use of detail or thoroughness of treatment" [citation omitted].

Aslani Lansing Op at 4-6.

   **Aslani's request for Rule 11 sanctions fails for two independent reasons.  First,** "the Federal Rule of Civil Procedure governing non-discovery sanctions provides that '[a] motion for sanctions under this rule shall be made separately from other motions or requests . . . .'" *Griffin v. Reznick*, – F. Supp.2d –, –, 2008 WL 5110528, \*11 n.6 (W.D. Mich. Dec. 2, 2008) (Maloney, C.J.) (quoting FED. R. CIV. P. 11(c)(1)(A)).  "The drafters instruct that a separate motion is one that is 'not simply included as an additional prayer for relief contained in another motion.'" *Griffin*, 2008 WL 5110528 at \* 11 n.6 (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 294 n.7 (6th Cir. 1997) (quoting Advisory Comm. Notes to 1993 Amendments of FED. R. CIV. P. 11)).

If Aslani wished to pursue Rule 11 sanctions against the Lansing Defendants, he would have to "follow a two-step process: first, serve the Rule 11 motion on the opposing party for a designated period (at least twenty-one days); and then file the motion with the court."  *Griffin*, 2008 WL 5110528 at * 11 n.6 (quoting *Ridder*, 109 F.3d at 294).  A Rule 11 request that fails to comply with this "safe harbor" provision must be denied or disregarded.  *Griffin*, 2008 WL 5110528 at * 11 n.6 (citing *Standard Ins. Co. v. Cooper-Pipkin*, 2008 WL 5000044 (N.D. Tex. Nov. 24, 2008) and *Ferris v. Rollins College, Inc.*, 2008 WL 4569872 (N.D. Fla. Oct. 9, 2008) ("Plaintiff also did not follow the procedural requirements to request sanctions, such as filing a separate motion with the Court. Accordingly, Plaintiff's motion for sanctions is denied.")).

**The second reason why this court will not impose Rule 11 sanctions against the Lansing Defendants at this juncture is that** Aslani has not identified any conduct by the Lansing Police defendants that could possibly warrant Rule 11 sanctions.  Specifically, there was nothing inappropriate or unethical about the Lansing police defendants electing to file a motion to dismiss instead of an answer, or in waiting until the resolution of their motion to dismiss before filing an answer.  Nor was there anything sanctionable in the their representation that they left a "detailed" voicemail with Aslani to request his concurrence in the instant renewed motion to dismiss.

### DISCUSSION:
### The Federal claims (Counts 1, 7 and 8) are Time-Barred as to the Lansing Defendants; The State-Law Claims in Counts 2-4 are Untimely as to All Defendants

Because 42 U.S.C. sections 1981, 1983 and 1985(3) do not provide their own statutes of limitation, the court "borrows" the most closely analogous statute of limitations in the State where the events giving rise to the claims occurred.  *See Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985);

*Hardin v. Straub*, 490 U.S. 536, 539 (1989) (court also must borrow the State's tolling provisions);

*Mulligan v. Schlachter*, 389 F.2d 231 (6th Cir. 1968).**[12]**

Aslani does not contest the Lansing Police Defendants' contention that his three federal civil-rights claims (counts 1, 7 and 8, under 42 U.S.C. §§ 1981, 1983 and 1985(3), respectively) are governed by Michigan's three-year statute of limitations for personal-injury claims, MICH. COMP. LAWS § 600.5805(10), *see* Aslani Lansing Opp at 6. **The court holds that Aslani's section 1981 claim and his section 1983 claim are governed by a three-year limitations period:**

> There is no dispute that the applicable statute of limitations based on violations of 42 USC 1981 and 42 USC 1983 is a state's statute of limitations governing personal injury, *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 676 . . . (1987) . . . which in this state is three years.

*Timmons v. Mount Morris Twp.*, 2001 WL 766138, *1 (Mich. App. Jan. 26, 2001) (p.c.) (P.J. Jansen, Doctoroff, O'Connell) (citing MICH. COMP. LAWS § 600.5805(8)); *see also Sumner v. Goodyear Tire & Rubber Co.*, 398 N.W.2d 368, 378-79 (Mich. 1986) ("Title VII and § 1981 have 180-day and three-year statutes of limitation, respectively."), *overruled o.g. by Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 696 N.W.2d 646 (Mich. 2005).[13]

---

[12]

In 1990, Congress enacted 28 U.S.C. § 1658, a four-year "catch-all" statute of limitations for claims that arise under federal statutes (or amendments) that were enacted after December 1, 1990. Aslani has not contended that his federal civil-rights claim arise under post-December 1, 1990 amendments to 42 U.S.C. §§ 1981, 1983 or 1985(3). Therefore, § 1658's four-year catch-all limitations period does not apply. *Contrast Hughes v. GMC*, 212 F. App'x 497 (6th Cir. 2007) (Ann Aldrich, U.S.D.J.) (four-year federal catch-all statute of limitations applied to § 1981 claims for racial discrimination in employment, rather than Michigan's three-year statute of limitations for personal-injury claims) (following *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004)).

[13]

There is also Sixth Circuit authority for the proposition that 42 U.S.C. § 1981 claims in Michigan are, at least sometimes, governed not by the statute of limitations for personal-injury claims, but by the statute of limitations for Elliott-Larsen Civil Rights Act claims. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 667-68 n.7 (6th Cir. 1999). First, *Jackson* is distinguishable because

**The court also holds that Aslani's section 1985(3) claim is subject to a three-year limitations period.** *Bell v. Kostanko*, 2004 WL 1505509, *1 n.2 (Mich. App. July 6, 2004) (p.c.) (P.J. O'Connell, Jansen, Wilder) ("a three-year period of limitation applies to plaintiff's claims of . . . violations of 42 USC 1983-1985 . . . .") (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989) and MICH. COMP. LAWS § 600.5805(10)); *see also Bygrave v. Van Reken*, No. 99-1702, 238 F.3d 419, 2000 WL 1769587, *2 (6ᵗʰ Cir. Nov. 14, 2000) (on appeal from Eastern District of Michigan, court stated, "[T]he statute of limitations applicable to Bygrave's § 1981, § 1982, § 1983 *and § 1985 claims* is three years.") (emphasis added) (citing *Carroll v. Wilkerson*, 782 F.2d 44 (6ᵗʰ Cir. 1986) & *Marlowe v. Fisher Body*, 489 F.2d 1057, 1063 (6ᵗʰ Cir. 1973)).

**Aslani also does not contest the Lansing Police Defendants' contention that his state-law claims for assault & battery and false imprisonment (counts 3 and 4) are governed by the two-year limitations period set forth in MICH. COMP. LAWS § 600.5805(2), and the court so holds.** *See Salter v. Lanni*, 1999 WL 33455064, *1 (Mich. App. Jan. 19, 1999) (p.c.) (P.J. Hoekstra, Doctoroff, O'Connell) (citing *Lemmerman v. Fealk*, 534 N.W.2d 695, 697 (Mich. 1995) ("Claims for assault and battery normally must be brought within two years after they accrue . . . .")); *Christopoulos v. Socall*, 2008 WL 2220589, *1 (Mich. App. May 29, 2008) (p.c.) (P.J. Servitto, Cavanagh, Kelly) ("The statute of limitations for assault and battery is two years.") (citing MICH. COMP. LAWS § 600.5805(2)), *app. den.*, 759 N.W.2d 390 (Mich. 2009); *Lyman v. Toundas Motor Sports Group, Inc.*, 2007 WL 705035, *3 (Mich. App. Mar. 8, 2007) (p.c.) (P.J. Hoekstra, Markey,

─────────────────────

the plaintiff there asserted a claim for racial harassment and a hostile work environment under section 1981 and the MELCRA. Second, even if the court for some reason applied the MELCRA limitations period here, it would be of no avail to Aslani. The MELCRA limitations period, like Michigan's limitations period for personal-injury claims, is three years.

-17-

Wilder) (same);

Likewise, the court holds that Aslani's false-arrest claim (count 2) is governed by the two-year limitations period set forth in MICH. COMP. LAWS § 600.5805(2). *See Wolfe v. Perry*, 412 F.3d 707, 715 (6th Cir. 2005) (citing MICH. COMP. LAWS § 600.5805(2)); *see also Watford v. City of Cleveland*, 1996 WL 733138, *1 (6th Cir. Dec. 18, 1996) (p.c.) (Engel, Brown, Cole) (applying two-year limitations period to section 1983 claims for *false arrest*, false imprisonment, illegal search and seizure, and invasion of privacy); *Kearney v. Ohio Dep't of Indus. Relations*, 1996 WL 290265, *1 (6th Cir. May 31, 1996) (p.c.) (Siler, Batchelder, D.J. Carr) ("His claims for false arrest and imprisonment . . . also are barred because he did not file suit within two years.") (citing, *inter alia*, *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989)); *Hirmuz v. City of Madison Hts.*, 469 F. Supp.2d 466, 477 (E.D. Mich. 2007) (David Lawson, J.) ("Under state law false arrest claims themselves must be commenced within two years.") (citing MICH. COMP. LAWS § 600.5805(2)).

Aslani's IIED claim (count 5), however, is governed by Michigan's *three*-year statute of limitations for personal-injury claims, MICH. COMP. LAWS § 600.5805(10). *See Bell v. Kostanko*, 2004 WL 1505509, *1 n.2 (Mich. App. July 6, 2004) (p.c.) (P.J. O'Connell, Jansen, Wilder) ("a three-year period of limitation applies to plaintiff's claims of intentional infliction of emotional distress") (citing *Lemmerman v. Fealk*, 534 N.W.2d 695, 697 (Mich. 1995) ("claims for negligence and intentional infliction of emotional distress must be brought within three years after they accrue in order to avoid the limitation bar.")).

Aslani concedes that he did not amend the complaint[14] to name the individual LPD

---

[14]

Under Michigan law, for this purpose Aslani's amended complaint (filed July 2008) does

defendants until more than three years after their alleged wrongs,[15] and therefore, that counts

not "relate back" to the time when he filed the original complaint (March 31, 2008).

MICH. CT. R. 2.118(D) provides, "An amendment that adds a claim or a defense relates back to the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading." However, "it is well established in Michigan that the relation-back doctrine does not apply with regard to the addition of new parties." *Bellamy v. Target Stores*, 2002 WL 31934019, *2 (Mich. App. Nov. 19, 2002) (p.c.) (citing *Hurt v. Michael's Food Ctr., Inc.*, 559 N.W.2d 660, 665 (Mich. App. 1996) & *Employers Mut. Cas. Co. v. Petroleum Equip., Inc.*, 475 N.W.2d 418, 421 (Mich. App. 1991)). *See also Gardner v. Stodgel*, 437 N.W.2d 276, 280 (Mich. App. 1989) (citing *Guerra v. Bar-Har Inv., Inc.*, 315 N.W.2d 921, 924 (Mich. App. 1982) (citing *Forest v. Parmalee*, 231 N.W.2d 378, 382 (Mich. App. 1975), *aff'd o.g.*, 262 N.W.2d 653 (Mich. 1978))).

Specifically, an amendment to a "John Doe" complaint by the addition of named defendants does not relate back to the filing of the earlier Doe complaint. *Bellamy*, 2002 WL 31934019 at *2 (citing *Thomas v. Process Equip. Corp.*, 397 N.W.2d 224, 226 (Mich. App. 1986) & *Fazzalare v. Desa Indus., Inc.*, 351 N.W.2d 886, 888 (Mich. App. 1984) & *Browder v. Int'l Fid. Ins. Co.*, 296 N.W.2d 60, 62 (Mich. App. 1980)). *See also Meda v. City of Howell*, 312 N.W.2d 202, 204-05 (Mich. App. 1981).

[15]

Aslani's original complaint referred to various individuals as "Defendant", *see* Comp ¶¶ 38 *et seq.*, but he failed to name them as defendants in the caption. FED. R. CIV. P. 10(a) states, "Every pleading must have a caption . . . . *The title of the complaint must name all the parties . . . .*" *See Black v. Reams*, 2008 WL 5145429, *2 (D. Colo. Dec. 5, 2008). Simply put, persons who are not named as parties in the caption of a complaint are not parties. *See Moder v. L.E. Meyers Co.*, 2008 WL 4763266, *1 (W.D. Wis. Oct. 27, 2008) ("[T]he only defendants in a case are those named in the caption.") (citing FED. R. CIV. P. 10(a) and *Myles v. US*, 416 F.3d 551, 552 (7th Cir. 2005)).

For example, summons will not be issued for people not identified in a complaint's caption. *Martin v. Roche*, 2009 WL 32635, *15 (C.D. Cal. Jan. 5, 2009) ("If plaintiff files an amended complaint, he must include in the caption the names of all the defendants against whom he is asserting a claim.  * * *  The Court will not order the United States Marshal to serve a complaint on any defendant not named in the caption.") (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262-63 (9th Cir. 1992) (dismissing action for refusal to comply with orders to name all defendants in caption))).

A plaintiff must ensure that all parties whom he wishes to sue are named in the caption of his complaint, for the caption's *raison d'etre* is to define the roster of those who are legally party to the controversy.  This is a reliable bright-line rule, and Aslani has not proffered any authority for departing from it to "deem" individuals to be defendants in the original complaint despite his failure to name them in the caption. *Cf. Moore v. Powell*, 2006 WL 44199 (W.D. Mo. Jan. 9, 2006):

**2, 3 and 4 will be time-barred as to the Lansing Police Defendants absent equitable tolling. Aslani contends, however, that this court should equitably toll those limitations periods to exclude the time during which he was "diligently and relentlessly" pursuing his state remedies, by which he means his direct appeal from his criminal conviction and sentence.** *See* Aslani

Lansing Opp at 6-7.  Aslani describes his efforts in the state criminal courts as follows:

> [S]ubsequent to the September 18, 2006, hearing, at the state trial court, the Plaintiff has made numerous and at times arduous attempts and efforts to obtain a copy of his trial court record on file, however, to no avail, and thereby he has been denied his right to a copy of the register of actions and the final order, which according to the clerk of the trial court constituted a "$200.00 sentence," among other orders that unlawfully had been entered against him from the bench by the state trial court. Incredibly, to deny the Plaintiff his right to perfect and prosecute his appeal, to date of this filing he has been denied his right to a copy of the final order, or any other order for that matter, that he had meant to make his appeal from.  According to the Michigan Court of Appeals, the state trial court had not entered any order f[rom] which the Plaintiff could make an appeal.  It is an established doctrine that a court speaks through its orders; in the underlying case, however, such a principle has been rendered anathema to the rules of law under American jurisprudence.

---

> Plaintiff responds that 'Caption of the Amended Complaint . . . .  Former Officer Michael Chester's name was not listed because until recently he was not officially served but can now be served through counsel of record.  * * *  Although this response somewhat clarifies plaintiff's position, it does not correct the underlying deficiencies in plaintiff's complaint, namely failure to include Officer Chester as a named defendant in the caption of the amended complaint . . . .  Therefore, . . . plaintiff shall file a second amended complaint which separately identifies all named defendants *within the caption of the complaint* . . . .

*Id.* at *2 (emphasis added).  *See also Rios v. Tilton*, 2009 WL 173180, *6 (E.D. Cal. Jan. 26, 2009) ("If plaintiff elects to file an amended complaint, *plaintiff must list each defendant in the caption of his pleading* and name each defendant . . . .") (emphasis added); *Adams v. Basile*, 2008 WL 5245866, *2 (S.D. Ga. Dec. 16, 2008) ("Plaintiff must name all defendant in the caption and the body of the amended complaint.  As plaintiffs fail to name in the caption . . . Defendant Ronnie Strength, this Defendant should be dismissed from this lawsuit."); *Mazuch v. Rosier*, 2008 WL 4844730, *7 (S.D. Ga. Nov. 7, 2008) ("Plaintiff must name the individuals whom he seeks to include as defendants herein in both the caption and the body of his amended complaint; he may not rely on the fact that individuals are named in the exhibits attached to his amended complaint as a means of including such persons as defendants to this lawsuit.").

Moreover, it was after 293 days of intentional delay and after various complaints and communications relative to this matter that had been made by the Plaintiff with the personnel of the Michigan trial court, including the reporter, herself, and others, such as judges at the state trial court, who did not lift a finger to assist him, that the court reporter finally provided him with the transcript of the September 18, 2006, hearing, in the course of which the state trial court had entered its final order for the said $200.00 sentence and other unlawful orders such as denying him from the bench his right to *res gestae* witnesses.

The said transcript, however, not only was provided to the Plaintiff intentionally 293 days dilatorily, but also had failed to constitute a verbatim recording of the said hearing in violation of MCR 8.108(8), and thereby it has caused further denial of the Plaintiff's established rights, *inter alia*, under the due process of law and equal protection clauses of the Fourteenth Amendment in perfecting and prosecuting his meritorious appeal in order to establish his innocence. Despite, his facing such obstruction of justice, and enduring considerable hardship, the Plaintiff has pursued his appeal and subsequent to exhausting his appeal in the state courts, he timely filed his Application for a Writ of Certiorari in the United States Supreme Court, whose disposition is still pending in that court.

Under the attendant circumstances in the Michigan state courts, the Plaintiff was misled into believing that the final order had been entered into the record, however, all of his diligent efforts heretofore to obtain a copy of the same ha[ve] been rendered naught; in fact, the Michigan Court of appeals denied the Plaintiff's right to appeal because it ruled that there had been no order, rendering his appeal defective for want of a final order, which has been due to the trickery practiced on him wantonly and flagrantly at the state trial court level, resulting in the denial of his federal constitutional rights. Nonetheless, because the Plaintiff . . . has been relentlessly exercising his rights to exhaust all of his state remedies in his assiduously perfecting and prosecuting his state appeals, and thereby the statute of limitations has been tolled in the case at bar. * * *

Aslani Lansing Opp at 7-9 (paragraph breaks added).[16]

"Equitable tolling . . . has a legal basis arising out of our common law, and it may be invoked

when traditional equitable reasons compel such a result." *McDonald v. Farm Bur. Ins. Co.*, 747

---

[16]

Of all Aslani's claims, the malicious-prosecution claim is the only one that requires him to show that the underlying criminal proceedings terminated in his favor. Therefore, that claim arguably would not even accrue until the termination *in Aslani's favor* of all possible proceedings in the underlying criminal action. But that is a matter of when the claim *accrued*, not whether the limitations period on the malicious-prosecution claim should be tolled once it started running.

N.W.2d 811, 819 (Mich. 2008) (Taylor, C.J.).  Equitable tolling has been applied where the plaintiff actively pursued his judicial remedies by filing a defective pleading during the statutory period[17] or the claimant has been induced or tricked by the defendant's misconduct into allowing the filing deadline to pass.  *Mazumder v. Univ. of Michigan Regents*, 715 N.W.2d 96, 99 (Mich. App. 2006) (citing 51 AM. JUR.2d, LIMITATION OF ACTIONS § 174 at p. 563 ("The time requirements in lawsuits between private litigants are customarily subject to equitable tolling if such tolling is necessary to prevent unfairness to a diligent plaintiff.")), *rev'd in part on other grounds*, 743 N.W.2d 889 (Mich. 2008).  But the equitable-tolling doctrine "must and should be rarely invoked", and then only when necessary "to ensure fundamental practicality and fairness and to prevent the unjust technical forfeiture of a cause of action." *Mazumder*, 715 N.W.2d at 99.

The doctrine does not always require wrongdoing by a defendant, but it "applies principally situations in which a defendant actively misleads a plaintiff about the cause of action or in which the plaintiff is prevented in some extraordinary way from asserting his rights . . . ." *Mazumder*, 715 N.W.2d at 107 (Mich. App. 2006) (citing *Ward v. Rooney-Gandy*, 696 N.W.2d 64, 67 (Mich. App. 2005)).  "[T]he usual sort of conduct which may work an estoppel in the statute of limitations context" includes, for example, "an offer to compromise or settle plaintiff's claim, a representation that the limitations period was of much greater duration than it actually was, or part payment of plaintiff's claim." *Lothian v. City of Detroit*, 324 N.W.2d 9, 18 (Mich. 1982).  Defendant conduct that may justify equitable tolling also includes "fraudulent concealment." *Devillers v. Auto Club Ins. Ass'n*, 702 N.W.2d 539, 558-59 (Mich. 2005) (citing *Holmberg v. Armbrecht*, 327 U.S. 392

---

[17]

*See, e.g., Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 n.3 (1990) (noting application of equitable tolling in *Burnett v. N.Y. Centr. R. Co.*, 380 U.S. 424 (1965), where plaintiff filed a timely complaint in the wrong court), *followed by Ward*, 696 N.W.2d at 67.

-22-

(1946)).

An *absolute* prerequisite of equitable tolling is the plaintiff's showing that he acted diligently. *See Ward*, 696 N.W.2d at 67 (citing 51 AM. JUR.2d, Limitation of Actions § 175 at p. 564). **Aslani has not shown that he acted diligently with regard to the filing of the instant claims.** Other than the malicious-prosecution claim, he has not shown that *any* of his claims' accrual or success depended on the progression or success of the direct appeal of his conviction. In other words, the progress and outcome of Aslani's criminal direct appeal had *no* bearing on his right to bring these claims in federal court or his ability to prevail on these claims. Therefore, any bad-faith delay of his prosecution of that appeal provides no excuse for his delay in bringing this action.

**In any event, Aslani does not allege that any of *these defendants* misled him as to the accrual of these claims or the applicable limitations periods.** This is significant, because the Michigan Supreme Court "has been reluctant to recognize an [equitable] estoppel [preventing a defendant from raising the limitations bar] absent intentional or negligent conduct" by a party defendant "designed to induce a plaintiff to refrain from bringing a timely action." *Cincinnati Ins. Co. v. Citizens Ins. Co.*, 562 N.W.2d 648, 655 (Mich. 1997) (p.c.) and *Adams v. Detroit*, 591 N.W.2d 67, 70 (Mich. App. 1998) (both citing *Lothian v. City of Detroit*, 324 N.W.2d 9, 12 (Mich. 1982)). Instead, Aslani alleges only obstruction and delay *by the Michigan state courts*.[18] The caption of

───────────────

[18]

*See, e.g.,* Aslani Lansing Opp at 7-8 (unidentified person(s) at state trial court thwarted Aslani's numerous attempts to obtain a copy of the criminal case's "record on file", the "register of actions" (presumably, the docket sheet), and the final order);

*id.* at 8 (implying that Michigan Court of Appeals improperly or dishonestly thwarted Aslani's attempt to appeal his conviction by allegedly holding that "the state trial court had not entered any order for which the Plaintiff could make an appeal");

*id.* at 8 (judges, court reporter and other employees of state trial court intentionally delayed

the amended complaint does not name any Michigan courts, judges or staff, as defendants in our case. *See Wilson v. Plyler*, 2007 WL 866233, *3 (Mich. App. Mar. 22, 2007) (p.c.) (P.J. Smolenski, Saad, Wilder) (Mich. Comp. Laws § 600.5855 tolls a limitation period where "a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim", but "plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment") (quoting *Doe v. Roman Catholic Archbishop of the Archdiocese of Detroit*, 692 N.W.2d 398 (Mich. App. 2004) (citation omitted))).

**Even putting aside the fact that none of the accused Michigan judges and court staff are defendants in this action, the court cannot find that it was their alleged delay of Aslani's criminal appeal which caused him – or *reasonably* could have caused him – to refrain from filing the instant action for so long after the April 1, 2005 incident.** The court is skeptical that the Michigan courts' alleged obstruction actually caused Aslani to delay bringing this suit. Even if that was the cause, the court finds that it was not reasonable for Aslani to sit on these claims because of difficulties or delays in his state criminal appeal. *Cf. Robertson v. Allstate Ins. Co.*, 2007 WL 4553630, *4 (Mich. App. Dec. 27, 2007) (p.c.) (P.J. Saad, Owens, Kelly) ("We also reject plaintiff's assertion that equitable tolling is appropriate on the grounds that Allstate acted fraudulently.  *  *  *  *[P]laintiff failed to create an issue of fact [as to whether]* Allstate made any misrepresentation about her submission of a sworn proof of loss or that *the alleged misrepresentation caused plaintiff to delay filing her complaints*.") (footnote 6 omitted) (emphasis

_____

providing Aslani with a transcript of September 2006 plea hearing, and when the court reporter finally gave him a copy after 293 days, it was not a verbatim transcript as required by Michigan law).

-24-

added).

  **Other than the state courts' allegedly improper obstacles to the prosecution of his criminal direct appeal, Aslani has not proffered any justification for waiting almost three years before filing the original complaint on March 31, 2008** (which asserted the instant claims against Sparrow Health, CATA, Greyhound, and the LPD). Less still has he shown any legal necessity, or other compelling justification, for waiting *more* than three years to assert these claims against the individual defendants (who were added only in the amended complaint, filed July 2008). If the record discloses any "inequity", it is "inadequate to sustain a claim for . . . tolling, because it is directly related to [Aslani]'s unassisted failure to comply with the . . . applicable time constraints, not on intervening, external circumstances." *Sudut v. Botsford Gen. Hosp.*, 2007 WL 286539, *1 (Mich. App. Feb. 1, 2007) (p.c.) (P.J. Saad, Cavanagh, Schuette) (quoting *Ward v. Siano*, 730 N.W.2d 1, 4 (Mich. App. Nov. 24, 2006), *judgment rev'd o.g.*, 741 N.W.2d 836 (Mich. 2006)).

  In short, Aslani has not established his own diligence. He has not shown any misconduct by these defendants that could have misled him into thinking he had more time to bring these claims. Nor has he shown any misconduct by the defendants that could have misled him into thinking that he could not file this civil action until he had pushed his criminal appeal to a certain point. Absent such showings, this is *not* the rare case where limitations periods should be equitably tolled. *See Sobh v. Farm Bur. Ins. Co. of Mich.*, 2007 WL 1206978, *2 (Mich. App. Apr. 24, 2007) (p.c.) (P.J. Cavanagh, Jansen, Borrello) and *Downs v. Keebler*, 2006 WL 3422546, *14 (Mich. App. Nov. 28, 2006) (p.c.) (P.J. Zahra, Cavanagh, Owens) ("Although courts undoubtedly possess equitable power [to toll a limitations period], such power has traditionally been reserved for 'unusual circumstances' such as fraud or mutual mistake.") (both quoting *Devillers v. Auto Club Ins. Ass'n*, 702 N.W.2d 539,

556 (Mich. 2005) (internal alterations & quote marks omitted, nn. 63 & 64 omitted)).

## DISCUSSION:
### Count 6 (Malicious Prosecution) Fails to State a Claim Against Any Defendant

Under Michigan law, "a basic element of a cause of action for malicious prosecution is the termination of the criminal proceedings in favor of the accused." *Cox v. Williams*, 593 N.W.2d 173, 174 (Mich. App. 1999) (citing RESTATEMENT OF TORTS 2D § 658 at pp. 416-17). Criminal proceedings are deemed to terminate in favor of the accused by (1) discharge by a magistrate at a preliminary hearing, (2) the grand jury's refusal to issue an indictment, (3) the prosecutor's formal abandonment of the proceedings, (4) the quashing of an indictment or information, (5) an acquittal, or (6) a final order in favor of the accused by a trial court or appellate court. *Cox*, 593 N.W.2d at 174-75 (citing RESTATEMENT OF TORTS 2D § 659 at pp. 417).

It is undisputed that none of the first five events occurred, and it is no longer possible for them to occur. Thus, Aslani can state a claim for malicious prosecution only if he can show that the sixth event occurred, i.e., that he obtained a final order in his favor from a trial or appellate court.

There is no such order, nor will there be. Following Aslani's no-contest plea and conviction, the Michigan Court of Appeals denied his application for leave to appeal in October 2007, *see* Comp ¶ 24 (not available on WestLaw), and the Michigan Supreme Court denied review in April 2008, *see People v. Aslani*, 747 N.W.2d 307 (Mich. 2008).

Aslani petitioned for a writ of *certiorari* from the United States Supreme Court, *see* 2008 WL 4441090 (U.S. Sept. 25, 2008) (No. 08-415), but that Court denied the petition on December 1, 2008, *Aslani v. Michigan*, – U.S. –, 129 S.Ct. 639 (2008). United States Supreme Court Rules provide that "[a]ny petition for the rehearing of an order denying a petition for a writ of certiorari

or extraordinary writ shall be filed within 25 days after the date of the order of denial . . . ."  U.S.

SUP. CT. R. 44 ¶ 2 (version eff. from Oct. 1, 2007 to the present).  The 25-day period for Aslani to

file a rehearing petition with the U.S. Supreme Court began on December 2, 2008 and expired on

December 27, 2008, *see* FED. R. CIV. P. 6, and Aslani did not seek rehearing.

Because it is no longer possible for the criminal proceedings to terminate in Aslani's favor,

he fails to state a claim for malicious prosecution against Lansing Police Defendants or anyone else.


**DISCUSSION:**
**The Lansing Police Department Must Be Dismissed, Because it is Not Suable *In Eo Nomine***

**Under the Federal Rules of Civil Procedure, a party's capacity to sue or be sued is**

**determined by the law of the State in which the district court sits or the law of the individual's**

**domicile.**  *O'Donnell v. Brown*, 335 F. Supp.2d 787, 815 (W.D. Mich. 2004) (citing FED. R. CIV.

P. 17(b)).  Because this court sits in Michigan and the record suggests Michigan is Aslani's

domicile, Michigan law will determine whether the Lansing Police Department is suable in its own

name.

In Michigan, **"it is well established that police departments are merely arms of the city**

**and are not juridical entities capable of suing or being sued."**  *Robinson v. City of Grand Rapids*,

2008 WL 4822218, *6 n.1 (W.D. Mich. Nov. 4, 2008) (Scoville, M.J.) (citing, *inter alia, Haverstick*

*Enters., Inc. v. Financial Fed. Credit, Inc.*, 32 F.3d 989, 992 n.1 (6th Cir. 1994)); *see also Alexander*

*v. City of Pontiac*, 2007 WL 4357738, *6 (E.D. Mich. Dec. 12, 2007) (Battani, J.) ("'Michigan's

governmental immunity statute, M.C.L. 691.1401 *et seq.*, immunizes municipal police departments

from suit.'") (quoting *O'Donnell v. Brown*, 335 F. Supp.2d 787, 815 (W.D. Mich. 2004)).  Even

before the enactment of the governmental-immunity statute, the Michigan Supreme Court explained

that "[i]t cannot be true that such an agency can be officially liable to suits for liabilities, where it has no legal means of raising funds for payment."  *O'Leary v. Bd. of Fire & Water Comm'rs of Marquette*, 44 N.W. 608, 610 (Mich. 1890).

**Accordingly, the court is obligated to dismiss the Lansing Police Department pursuant to FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction.**  *See Brown v. Romulus PD*, 2009 WL 22881, *2 (E.D. Mich. Jan. 5, 2009) (Edmunds, J.) (citing, *inter alia*, *McPherson v. Fitzpatrick*, 234 N.W.2d 566, 568 (Mich. App. 1975) ("[T[he police department is not liable in a tort action directed solely against such department . . . .")); *O'Donnell v. Brown*, 335 F. Supp.2d 787, 815 (W.D. Mich. 2004) (Quist, J.) (§ 1983 action) ("[p]laintiff's claims against the City of Lansing Police Department are claims against the City of Lansing, and the Police Department will be dismissed . . . .").[19]

**The court will automatically substitute the City of Lansing as a defendant in place of the Lansing Police Department**.  "'[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent.'"  *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  *See Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008) ("Lambert sued the Clerk in his official capacity, which is the equivalent of suing the Clerk's

---

[19]

*Accord Rogers v. Detroit PD*, – F. Supp.2d –, –, 2009 WL 127665, *4 (E.D. Mich. 2009) (Ludington, J.) (noting earlier R&R "recommending that Defendant Detroit Police Department be *sua sponte* dismissed because it is not an entity that is capable of being sued");

*Dunbar v. Rogers*, 2007 WL 2300691, *1 (E.D. Mich. Aug. 8, 2007) (O'Meara, J.) ("[I]n Michigan, police departments generally cannot be sued in their own right because they are not a distinct legal unit apart from the municipality that creates them.  The claims against defendant Detroit Police Department will be dismissed.") (citation omitted);

*Miller v. McKinley, Inc.*, 2007 WL 2156273, *10 (E.D. Mich. July 26, 2007) (Gadola, J.) ("Taylor Police Department * * * is not independent of the municipality and all separate claims against it must be dismissed.") (citing, *inter alia*, *Michonski v. City of Detroit*, 413 N.W.2d 438, 441 (Mich. App. 1987) (citing *Davis v. Chrysler Corp.*, 391 N.W.2d 376 (Mich. App. 1986))).

employer, the County."), *cert. denied*, – U.S. –, 129 S.Ct. 905 (2009); *Powers v. Lorain Cty.* 259 F.

App'x 818, 822 n.2 (6th Cir. 2008) ("The same analysis for determining Defendant Lorain County's

liability applies to Defendant Stammitti's liability because 'a suit under section 1983 against a

defendant in his official capacity is equivalent to a suit against the local government entity.'")

(quoting *Leach v. Shelby Cty. Sheriff*, 891 F.3d 1241, 1245 (6th Cir. 1989)). *See, e.g., Lake v.*

*Granholm*, 2008 WL 724162, *2 n.1 (W.D. Mich. Mar. 17, 2008) (Jonker, J.) ("Suits against police

departments are deemed to be brought against the municipality itself.  I will therefore address all

plaintiff's claims against the police department as being brought against the City of Midland itself.")

(internal citation omitted); *Adams v. City of Marshall*, 2005 WL 3556146, *2 (W.D. Mich. Dec. 29,

2005) (Miles, J.) ("Thus, when a municipal police department is sued, the real party in interest is the

city.") (citing *Moomey v. City of Holland*, 490 F. Supp. 188, 190 (W.D. Mich. 1980) (Gibson, J.)).[20]


**DISCUSSION:**
**Sparrow Health Defendants' Premature Motion for Summary Judgment**

On October 9 and 10, 2008, defendants Sparrow Health System, Dennis Swan, Richard

Liebelt, Rachel Latunski, Karl Engler, and Ken Hankamd (collectively "the Sparrow defendants"

or "Sparrow") filed an answer, and then an amended answer, to the first amended complaint

---

[20]

*Accord Blackburn v. Grai*, 2008 WL 5188796, *2 (E.D. Mich. Dec. 10, 2008) (Hood, J.)
("[T]he better practice is to construe the plaintiff's complaint as against the County,  and not the Jail,
at least when the correct entity is not also named in the action.  That approach pays proper deference
to Sixth Circuit precedent that makes clear that a *pro se* litigant's submissions are to be construed
liberally.  Moreover, naming parties is one area in which the Sixth Circuit has applied this rule
generously to *pro se* litigants.") (citing *Berndt v. Tennessee*, 796 F.2d 879, 882 (6th Cir. 1986)) (other
internal citations omitted).

[documents #23 and #26].[21]  On the date of the incident, Hankamd was employed by Sparrow as a security officer, Swan as an administrator-in-charge, and Liebelt, Latunski, and Engler as registered nurses.  Am Comp ¶¶ 25, 26 and 28.

On December 29, 2008, all the served Sparrow defendants jointly **filed a motion for summary judgment on the amended complaint [document # 49].**  Aslani filed an opposition brief on January 15, 2009 [document #54], emphasizing that discovery is not complete and contending that summary judgment is premature until he is afforded a full opportunity for discovery.  The court agrees with Aslani up to a point.  But the court will not allow his right to discovery to occasion *open-ended* delay in this court's consideration of motions which have the potential to dispose of the remaining four claims.

It is a "'well-established' principle that the plaintiff must receive 'a full opportunity to conduct discovery to be able to successfully defeat a motion for summary judgment."  *Farah v. Wellington*, 295 F. App'x 743, 747 (6th Cir. 2008) (quoting *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004)).  "[I]mplicit in the 'opportunity to respond' is the requirement that sufficient time be afforded for discovery necessary to develop 'facts essential to justify opposition to the motion."  *Transition Healthcare Assocs., Inc. v. Tri-State Health Investors, LLC*, – F. App'x –, –, 2009 WL 67869, *5 (6th Cir. 2009) (citing *Routman v. Automatic Data Processing, Inc.*, 873 F.2d 970, 971 (6th Cir. 1989)).  To determine whether curtailing discovery now is the fairer course of action, the court considers how much of an opportunity for focused discovery Aslani has

---

21

Aslani's amended complaint names two more defendants who were allegedly employees of Sparrow Health at the relevant time:  Dr. James W Cagle, Jr., D.O., and Dr. Steven Owens, M.D. *See* Am Comp ¶ 27.  On October 10, 2008 summons were returned unexecuted as to Dr. Cagle and Dr. Owens [document #30].  The docket sheet contains no further filings or information regarding Aslani's attempts to serve the summons and amended complaint on Drs. Cagle and Owens.

*realistically* had.

Proceeding *pro se*, Aslani has had his hands full:  he drafted a cogent and fairly detailed complaint, then amended the complaint to name more than a dozen individuals whom he had identified in the meantime as employees of the four institutional defendants named in the original complaint.  When the Lansing Police Defendants first moved to dismiss, Aslani worked to prepare an opposition brief – only to see their motion dismissed because of their failure to comply with a local civil rule, and then renewed after they cured the defect.  Also in the time since Aslani initiated this action, Aslani also had to research and write a brief, again without counsel, to support his petition to the U.S. Supreme Court for a writ of certiorari.  Coming up to the present, Aslani still must locate and serve three defendants (alleged Sparrow Health physicians Cagle and Owens, and alleged Greyhound bus driver Ed Lewis), as well as defeat two other defendants' efforts to quash service (alleged CATA security officers Fowler and Becker).  The court cannot say that Aslani has squandered the time available to him, or that any diligent layperson would have completed discovery relative to all nine claims by now.  Aslani has done enough so far, and will be given a chance to finish discovery at a reasonable pace.

Accordingly, the court will deny the Sparrow Health defendants' motion for summary judgment without prejudice to ensure that Aslani has a full and adequate opportunity to conduct discovery with regard to the remaining claims.  *See, e.g., Glen Eden Hosp., Inc. v. Blue Cross & Blue Shield of Mich., Inc.*, 740 F.2d 423, 427-28 (6th Cir. 1984) (district court abused discretion by granting summary judgment before completion of discovery); *Communities for Equity v. Michigan H.S. Athletic Ass'n*, 26 F. Supp.2d 1001, 1008 (W.D. Mich. 1998) (Enslen, J.) (granting Rule 56(f)

request).[22][23]  In fairness to the defendants, however, the court will set a date certain by which Aslani must conduct whatever discovery he needs to meaningfully oppose summary judgment.

**The Greyhound Defendants**.  The first amended complaint names Greyhound Lines, Inc., and "Ed Lewis, individually and as bus driver of Greyhound Lines, Inc."  On July 21, 2008, a summons was issued to Greyhound, which filed an answer to the amended complaint on October 9, 2008 [doc #16].  On October 10, 2008, the summons was returned unexecuted as to defendant Ed Lewis, the alleged Greyhound bus driver [doc #30].  The docket sheet contains no further filings or information regarding Aslani's attempt to serve defendant Ed Lewis with the amended complaint and summons.  Greyhound moves to dismiss the four claims against it:  counts 1, 3, 5 and 9.

---

[22]

*Cf. Gunasekera v. Irwin*, 551 F.3d 461, 466 n.1 (6th Cir. 2009) ("[W]e cannot convert Irwin and Krendl's Rule 12(b)(6) motion into a motion for summary judgment because Gunasekera was not afforded the opportunity to obtain discovery under Rule 56(f).").

[23]

Aslani did not file an *affidavit* explaining how additional discovery will enable him to withstand summary judgment.  But this technical failure, owing presumably to Aslani's *pro se* status, does not defeat his good-faith 56(f) request under the circumstances.  *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 488-89 (6th Cir. 2000) ("some courts have suggested that the request for relief under Rule 56(f) can take a form other than an affidavit.  Indeed, even our own court has intimated that either a Rule 56(f) affidavit 'or a motion' would suffice.  *Plott*, 71 F.3d at 1196.  We need not address this issue, however, because, as explained below, the Cacevics complied with neither the technical nor the substantive aspects of the rule.") (emphasis added, internal cite omitted).  *See, e.g.:*

*Seaton v. Good*, 2008 WL 4585243, *12 (E.D. Mich. Oct. 14, 2008) ("Plaintiff has consistently requested discovery in this action, and requiring, as a part of its response to the summary judgment motion, a Rule 56(f) affidavit, a motion for new discovery . . . would ignore plaintiff's arguments and unduly exalt form over substance.  Making the argument once should be enough.");

*US v. $198,000 in US Currency*, 2008 WL 2697301, *4 (E.D. Mich. July 2, 2008) (Gadola, J.) ("Despite the absence of an affidavit, because Rule 56(f)(3) allows the court to issue "any . . . just order", the Court finds that in the interest of fairness," the court would not rule on summary judgment until plaintiff was afforded more time for discovery).

**As for count 3 (False Imprisonment),** the court has already held that this claim is untimely as to all defendants under the two-year limitations period of MICH. COMP. LAWS § 600.5805(2). Therefore, the court will grant Greyhound's motion to dismiss count 3 without further discussion.

**As for count 1 (title 42 U.S.C. § 1981) and count 5 (IIED),** Greyhound contends that such intentional torts cannot be alleged against Greyhound itself: "In order to maintain claims for intentional torts, plaintiff needed to name and serve the bus driver involved in the incident, which Plaintiff did not do." Greyhound MTD at 5. Greyhound contends that it "cannot be held liable for the intentional torts of its employees and/or agents performed outside the scope of their employment." *Id.* at 10-11; *see also id.* at 12-13 (relying on standard for *respondeat superior* liability for intentional torts set forth in *Zisgo v. Hurley Med. Ctr.*, 716 N.W.2d 220 (Mich. 2006)).[24]

The court determines that under the circumstances, dismissing these claims at this stage of the case would be hasty and unduly harsh. So far as the record reflects, Aslani has shown reasonable effort, as a *pro se* plaintiff, in refining and expanding his pleading as he obtains additional information about the identity and whereabouts of those responsible for the alleged wrongs. He has not demonstrated bad faith or undue delay. Less than four months after Aslani filed the original complaint, and without the aid of counsel, Aslani amended the complaint to add Greyhound bus

---

[24]

Greyhound also cites *Booker v. GTE Net, LLC*, 350 F.3d 515, 519-20 (6th Cir. 2003) for the proposition that "An employer simply cannot be held liable under the Doctrine of Respondeat Superior unless the intentional wrongs of the agent were calculated to advance the cause of the principal or were appropriate to the normal scope of the operator's employment."

The court disregards *Booker v. GTE* because that panel was applying *Kentucky* law, not Michigan law. When ruling on a state-law claim, this court's obligation is to predict how the Michigan Supreme Court would rule. *Appalachian Railcar Servs. v. Boatright Enters., Inc.*, – F. Supp.2d –, –, 2008 WL 828112, *14 (W.D. Mich. 2008) (Paul L. Maloney, J.) (quoting *NUFIC v. Alticor, Inc.*, 472 F.3d 436, 438 (6th Cir. 2007) (Richard Allen Griffin, J.) (citation omitted)). Greyhound has not identified any Michigan decisions which cite *Booker* with approval on this score.

driver Ed Lewis as a defendant, as well as CATA security officers Fowler and Becker.  The court will afford Aslani an additional reasonable period in which to conduct discovery needed to find Lewis and effect proper service on Lewis, Fowler and Becker.  If Aslani does not verify valid service of process on Lewis by April 30, 2009, Greyhound will be free to file a renewed motion to dismiss the remaining claims against it (counts 1 section 1981 and count 5 IIED) on this basis.[25]

**As for Count 9, Greyhound contends that claims under the Universal Declaration of Human Rights ("UDHR") and the United Nations Convention Against Torture ("CAT") are not cognizable,** because there is no authority that those treaties are self-executing and enforceable in United States federal courts.  This court agrees and will dismiss count 9 on that basis.

It is true that treaties entered into by the United States become the law of the land.  *US v. Renkel*, 456 F.3d 640, 642 (6th Cir.) (McKeague, J.) (citing U.S. CONST. Art. VI, cl. 2), *reh'g & reh'g en banc denied* (6th Cir Dec. 6, 2006).  Generally, "'treaties have the same legal effect as statutes.'" *Renkel*, 456 F.3d at 642-43 (citing *US v. Emuegbunam*, 268 F.3d 377, 389 (6th Cir. 2001) (citing *Whitney v. Robinson*, 124 U.S. 190, 194 (1888) and *US v. Page*, 232 F.3d 536, 540 (6th Cir. 2000)).

"Yet treaties, like some statutes, do not always directly create rights that a private citizen can enforce in court."  *Renkel*, 456 F.3d at 643 (citing *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 808 (D.C. Cir. 1984) (Robert Bork, J., concurring)).  This is because

---

[25]

Moreover, Greyhound seems to proceed on the premise that its driver, Ed Lewis, was acting outside the scope of his employment if he committed any intentional tort.  Whether Lewis was acting outside the scope of his employment is a material factual issue which the court must decide by reference to matters outside the pleadings and the documents attached to them.  Resolution of such an issue by the court is more suited to a summary-judgment motion.  As noted with regard to the Sparrow Health defendants' motion for summary judgment, it is premature to consider summary-judgment motions until Aslani has had a fuller opportunity to conduct discovery.

> [a] treaty is primarily a compact between independent nations.  It depends for the enforcement of its provisions on the interest and honor of the governments which are parties to it.  If these fail, its infraction becomes the subject of international negotiations and reclamation, so far as the injured parties choose to seek redress, which may in the end be enforced by actual war.  It is obvious that with all this the judicial courts have nothing to do and can give no redress.

*Renkel*, 456 F.3d at 643 (quoting *Emuegbunam*, 268 F.3d at 389 (quoting *Edye v. Robertson (Head Money Cases)*, 112 U.S. 580, 598 (1884) (Miller, J., for a unanimous Court))).  Put another way,

> the judiciary is not that department of the government, to which the assertion of its interests against foreign powers is confided; and its duty commonly is to decide upon individual rights, according to those principles which the political Departments of the nation have established.

*Renkel*, 456 F.3d at 643 (quoting *Foster v. Neilson*, 27 U.S. (2 Pet.) 253, 307 (1829) (unanimous)).

Relying on these principles, our Circuit has squarely held that there is no private "cause of action under the Convention Against Torture because it is not self-executing" and private individuals have no cause of action under any domestic law implementing the United States' obligations under the Convention, either.  *Renkel*, 456 F.3d at 645.  *Accord Pierre v. Gonzales*, 502 F.3d 109, 119-20 (2d Cir. 2007); *Hoxha v. Levi*, 465 F.3d 554, 564 (6th Cir. 2006) ("The United States has ratified the Torture Convention.  The Convention is not self-executing, however, and therefore does not in itself create judicially enforceable rights.") (internal citation omitted) (citing *Auguste v. Ridge*, 395 F.3d 123, 132 and n.7 (3d Cir. 2005)); *Saint Fort v. Ashcroft*, 329 F.3d 191, 202 (1st Cir. 2003).[26]

---

[26]

     *See, e.g., Mason v. Granholm*, 2008 WL 3538981, *1 (E.D. Mich. Aug. 12, 2008) (O'Meara, J.) ("Both the ICCPR [International Covenant on Civil and Political Rights] and the CAT are international treaties that are cognizable in this court only if they are self-executing or if Congress has passed appropriate enabling legislation. * * * [T]he ICCPR is not binding on this court, nor is CAT.") (n. 2 omitted).

-35-

As for Aslani's purported claim under the Universal Declaration of Human Rights,[27] the court must begin by adhering to the presumption that the UDHR does not create rights enforceable by a private individual in U.S. courts. *See Renkel*, 456 F.3d at 643 ("'courts *presume* that the rights created by an international treaty belong to a state and that a private individual cannot enforce them.'") (quoting *Emuegbunam*, 268 F.3d at 389) (emphasis in original). The court has located no binding authority, and not even any Sixth Circuit *persuasive* authority, that would rebut this presumption and permit this court to adjudicate Aslani's UDHR claim.[28]

On the contrary, "at the time of its adoption in 1948, it was the explicit position of the United States that the Declaration 'is not a treaty . .. [or] an international agreement' and that 'it is not and does not purport to be a statement of law or of legal obligation.'" *Taylor v. Cleveland Clinic*, 2008 WL 1752140, *2 (N.D. Ohio Apr. 14, 2008) (quoting 19 STATE DEP'T BULLETIN 751 (1948) (remarks of U.S. Representative to the U.N.)); *accord Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 719 (9th Cir. 1992) (referring to UDHR as "a non-binding resolution"); *Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 816 n.17 (D.C. Cir. 1987) (J. Bork for the Court, with J. Buckley concurring in pertinent part). Not surprisingly, then, a plaintiff's

---

[27]The United Nations General Assembly adopted the UDHR on December 10, 1948. *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 776 (1961).

[28]

If Congress and the President wish to ensure that private individuals have the right to sue in federal court to enforce the CAT or the UDHR, they can enact implementing legislation that expressly creates such a private cause of action. *See Medellin v. US*, 551 U.S. –, –, 128 S.Ct. 1346, 1366 (2008) (Roberts, C.J., joined by Scalia, Thomas, Kennedy, & Alito, JJ.) (after holding that International Court of Justice decision was not directly-enforceable domestic law, Court remarked, "Congress is up to the task of implementing non-self-executing treaties, even those involving complex [issues]. The judgments of a number of international tribunals enjoy a different status because of implementing legislation enacted by Congress.") (citing federal statutes that expressly create a private right of action in federal court for violation of UN Conventions on the Settlement of Investment Disputes and the Recognition and Enforcement of Foreign Arbitral Awards).

-36-

reliance on the United Nations Universal Declaration of Human Rights as legal footing for his civil rights claim . . . is misplaced.  The Supreme Court . . . observed that "the Declaration of its own force impose obligations as a matter of international law", and by itself cannot support creation of a cause of action that a federal district court could hear under the applicable jurisdictional statutes.

*Reynosa v. MDOC*, 2005 WL 3535061, *6 (W.D. Mich. Dec. 22, 2005) (Bell, C.J.) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 733 (2004)).

Therefore, the UDHR claim must be dismissed as to all defendants.  *See Taylor*, 2008 WL 1752140 at *2 (James Gwin, J.) ("Ms. Taylor cannot rely on the UDHR, which is a resolution of the United Nations, and is binding on neither the United States nor this court.") and *Taylor v. Taylor*, 2008 WL 906102, *2 (N.D. Ohio Mar. 31, 2008) (Jack Zouhary, J.) ("It does not serve as a legal basis for a cause of action.") and *Taylor v. Vivid Video*, 2008 WL 744212, *2 (N.D. Ohio Mar. 19, 2008) (Sara Lioi, J.) (all citing *Flores v. S. Peru Copper Corp.*, 343 F.3d 140, 165 & n.36, 167-68 & n.38, 169 (2d Cir. 2003)).[29]

**The CATA Defendants.**   The first amended complaint names the Capital Area Transportation Authority ("CATA") and two of its alleged Security Officers, Matthew Fowler and Joseph Becker.  CATA filed an answer to the amended complaint on October 9, 2008 [doc #20]. Fowler and Becker have not filed an answer or dispositive motion with regard to the amended complaint; rather, they filed a motion to quash service of process, which will be decided by Magistrate Judge Carmody.

---

[29]

   *Cf. also Fulop Family v. US*, No. 90-3294, 919 F.2d 738, 1990 WL 198256, *1 (6th Cir. Dec. 10, 1990) (p.c.) (Martin, Jones, D.J. Edgar) (affirming, without opinion, the dismissal as frivolous of a complaint alleging conspiracy to deprive plaintiffs of their constitutional rights in violation of 42 U.S.C. §§ 1981-1985 and 28 U.S.C. §§ 2671-2680 and the UDHR).

## ORDER

Lansing Defendants' motion to dismiss the amended complaint **[doc # 32] is GRANTED.**

**The following seven defendants are dismissed from the case:**

"Police Department of the City of Lansing"
Lansing Police Officer Paul Beasinger
Lansing Police Officer Kevin Schlagel
Lansing Police Officer Shannon Thielen
Lansing Police Officer Nathaniel Osborn
Lansing Police Captain Theresa Szymanski
Lansing Police Chief Mark Alley

**Three claims are DISMISSED AS TO Lansing Police Defendants as time-barred:**

| | |
|---|---|
| **Count 1** | federal civil-rights claim under 42 U.S.C. § 1981 |
| **Count 7** | federal civil-rights claim under 42 U.S.C. § 1983 |
| **Count 8** | federal civil-rights claim under 42 U.S.C. § 1985(3) |

Pursuant to FED. R. CIV. P. 56(f), the Sparrow Health defendants' motion for summary judgment on the first amended complaint **[document # 49] is DENIED without prejudice**.

The Sparrow Health defendants and all other defendants are free to file motions for summary judgment on the remaining 4 claims after completion of discovery, **no earlier than May 15, 2009.**

Defendant Greyhound Lines, Inc.'s motion to dismiss **[document #66] is GRANTED in part** and **DENIED in part, as follows:**

—  Greyhound's motion to dismiss is denied as to Count 1 (42 USC 1981) and Count 5 (IIED);

—  Count 3 (False Imprisonment) is dismissed as to Greyhound because it is untimely;

—  Count 9 (International Law) is dismissed for failure to state a claim.

**The following claims are DISMISSED AS TO ALL DEFENDANTS:**
Count 2      Michigan common-law claim for False Arrest (time-barred)

| | | |
|---|---|---|
| Count 3 | Michigan common-law claim for False Imprisonment (time-barred) |
| Count 4 | Michigan common-law claim for Assault & Battery (time-barred) |
| Count 6 | Michigan common-law claim for Malicious Prosecution (lacks merit) |
| Count 9 | Claims under Treaty and "International Law" (not cognizable) |

**The following four claims survive as to all defendants other than Lansing Defendants:**
– Count 1, federal civil-rights claim under 42 U.S.C. § 1981
– Count 5, Michigan common-law claim for IIED (time-barred)
– Count 7, federal civil-rights claim under 42 U.S.C. § 1983
– Count 8, federal civil-rights claim under 42 U.S.C. § 1985(3)


This is <u>not</u> a final and immediately appealable order. *See Griffin v. Reznick*, – F. Supp.2d –, –, 2008 WL 5110528, *10 (W.D. Mich. 2008) (Maloney, C.J.) ("'Absent certification of an interlocutory appeal under 28 U.S.C. § 1292(b) or Fed. R. Civ. P. 54(b), an order disposing of fewer than all parties or claims is nonappealable.'") (quoting *Bd. of Ed. of Avon Lake City Sch. Dist. v. Patrick M.*, 2000 WL 712500, *4 n.5 (6th Cir. May 24, 2000) (citing *Wm. B. Tanner Co. v. US*, 575 F.2d 101, 102 (6th Cir. 1978))).

**IT IS SO ORDERED this 12nd day of March 2009.**


/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge