UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DAVID ASLANI,                                              | Case No. 1:08-cv-298

    Plaintiff,                          | Chief Judge Paul L. Maloney

    v.                                  | Magistrate Judge Scoville

SPARROW HEALTH SYSTEMS,                                    |

KEN HAMKAMD, individually and as                           |
security officer of Sparrow Health System,                 |
DENNIS SWAN, individually and as administrator in          |
charge of Sparrow Health System,                           |
RICHARD LIEBELT, individually and as                       |
registered nurse of Sparrow Health System,                 |
RACHEL LATUNSKI, individually and as                       |
registered nurse of Sparrow Health System,                 |
KARL ENGLER, individually and as                           |
registered nurse of Sparrow Health System,[1]        |

GREYHOUND BUS LINES, INC.,                                 |

CAPITAL AREA TRANSPORTATION AUTHORITY,[2]            |

---

[1]

    The following four persons are named as parties defendant in the amended complaint, but they have not been served. Accordingly, they will not be listed in the caption until and unless Aslani provides proof that he has effected valid service of process upon them:

> "ED LEWIS, individually and as bus driver of Greyhound Bus Lines, Inc."
> "DR. STEVEN OWENS, individually and as physician of Sparrow Health System"
> "DR. JAMES CAGLE, individually and as physician of Sparrow Health System"
> "MATTHEW FOWLER, individually & as security officer for the Capital Area Transportation Authority in Mich."

[2]

    In November 2008, Fowler, who Aslani alleged was a Security Officer for defendant CATA, moved to quash service [doc. #35]. Fowler provided evidence that he was employed instead by Joseph Young & Associates, a private company that provided security services to CATA. Aslani filed an opposition brief, Fowler filed a reply, and Aslani filed a sur-reply [Doc. Nos. 60, 62, 73].

JOSEPH M. BECKER, individually & as security officer |
for the Capital Area Transportation Authority in Mich., |
|
CITY OF LANSING[3], *et al.*, |
|
      Defendants. |
|

---

**OPINION AND ORDER**
*" Aslani 3 "*

**Denying the Plaintiff's Motions for Reconsideration
Adhering to Prior Rulings:**

<u>Granting the Lansing Defendants' Motion to Dismiss, and Dismissing</u>
Counts 1, 7 & 8 (Federal Claims) and Count 5 (IIED) as to Police Defendants as Untimely;
Counts 2, 3 and 4 (False Arrest, False Imprisonment, A&B) as to All Defendants as Untimely;
Count 6 (Malicious Prosecution) as to All Defendants for Failure to State a Claim;
Count 9 (International Law) for Failure to State a Claim

<u>Denying without prejudice the Sparrow Health Defendants' Motion for Summary Judgment</u>:
<u>Denying Without Prejudice Greyhound's Motion to Dismiss Count 1 (42 USC 1981) and Count 5 (IIED)</u>
Allowing All Parties to File Summary-Judgment Motions After Close of Discovery

---

      By order issued April 16, 2009, Magistrate Judge Carmody granted in part and denied in part Fowler's motion; she denied without prejudice as premature his motion to dismiss for lack of personal jurisdiction. *See* Doc. 84. She concluded that Aslani's attempt to serve Fowler at CATA's office was ineffective, *see* Doc. 85 at pp. 5-6, but she allowed Aslani until June 5, 2009 to properly effect service on Fowler elsewhere, *see id.* at pp. 6-8.

      On May 26, 2009, Aslani moved for permission to effect service on Fowler by alternate means. *See* Docs. 95 and 96. On June 30, 2009, the Magistrate Judge denied the motion; she found that the proposed publication in Cadillac, Michigan was not reasonably calculated to reach Fowler, because there was no evidence that he lived or worked or traveled there, and because Aslani's own motion alleged that Fowler had moved to Cincinnati, Ohio. *See* Doc. 116. So far as the record reflects, Aslani has not yet effected service of process on Fowler.

[3]

      The court dismissed the LPD because it is not a juridical entity. In its stead, the court substituted the City of Lansing, because both claims against a police department, and official-capacity claims against its employees, are considered claims against the City. The caption no longer includes the LPD or the Lansing Police Officers.

Denying Aslani Motion for Extension / Leave to File a Sur-Reply Opposing Police Dispositive Motion;
Denying Aslani Motion for Extension of Time to File Brief Opposing Greyhound's Dispositive Motion

Denying Other Requests that are Inappropriate on Reconsideration or Beyond Court's Jurisdiction

This is a federal civil-rights action, with one pendent state-law tort claim remaining. Plaintiff David Aslani ("Aslani")'s first amended complaint asserted nine claims. Numerous defendants filed motions to dismiss or motions for summary judgment. First, the court dismissed the Lansing Police Department ("LPD") because it is not a juridical entity. Second, the court dismissed all the individual Lansing Police Officers, because all nine claims are meritless or untimely as to them.

The court dismissed five counts as to all defendants. Counts 2, 3 and 4 (Michigan common-law claims for false arrest, false imprisonment, and assault & battery) are barred by the applicable Michigan two-year statute of limitations, and Aslani has not shown the propriety of equitable tolling. Count 6 (Michigan common-law claim for malicious prosecution) fails to state a claim on which relief can be granted, because the underlying criminal proceedings did not terminate favorably to Aslani. Count 9 (claims under the United Nations Convention Against Torture ("CAT") and the UN's Universal Declaration of Human Rights ("UDHR")) also failed to state a claim on which relief can be granted, because neither the Supreme Court nor our Circuit has held that these claims are cognizable in American courts.

Thus, only four claims remain, all of which appear to be governed by a three-year statute of limitations under Michigan law: counts 1, 7 and 8 (federal civil-rights claims under 42 U.S.C. § 1981, § 1983, and § 1985(3)) and count 5 (intentional infliction of emotional distress, "IIED").

**BACKGROUND**

The court incorporates this summary of the factual background and procedural history from its original decision:

Aslani describes himself as a Muslim and "an Iranian-born naturalized citizen of the United States" who "is olive-skinned and outwardly appears to be of Middle Eastern descent." Aslani had a valid Greyhound bus ticket for a round trip from Detroit to Lansing and back. **On April 1, 2005,** Aslani was attempting to use the return portion of that ticket, going from Lansing to Detroit. Aslani urgently needed to get home because his wife was waiting for him with his blood-pressure medication, which he had forgotten to take with him on the trip.

Aslani approached the Greyhound bus driver, showed him the valid ticket, and, it seems, explained that he needed to get on the next bus, not a later bus, in order to get his medication as soon as possible; Aslani indicated that he would stand in the aisle or "squeeze" himself on a seat with other passengers. Aslani does not mention whether there was a seat available within the customary, contemplated use of the seats, i.e., with enough room for each person to be reasonably comfortable and not unduly cramped or imposed upon. Nor does he relate the driver's response, if any, to his request.

While the driver was busy with luggage and talking to other passengers, Aslani boarded the bus and "easily" found a seat. A few minutes later, two City of Lansing police officers boarded the bus, approached Aslani, and "advised him with hostility, anger, and disrespect that he had to get off the bus immediately, otherwise he would be arrested for trespassing." Aslani explained to the police that he had a valid ticket, which he showed them, and that he needed to get back to Detroit urgently to get his blood-pressure medication that he had forgotten to take on the trip, but the police again ordered him to get off the bus or he would be arrested for trespassing, Comp ¶ 8. Aslani claims that he complied and got off the bus. Comp ¶ 9.

Aslani alleges that both Lansing Police Department ("LPD") and Capital Area Transportation Authority ("CATA") security officers directed racial slurs at him, such as "fuckin[g] Arab", while he was at the Greyhound bus terminal. Comp ¶ 11. Aslani alleges that he was then "subjected to monstrous mistreatments, in the form of brutal beating, terrorizing tasering and yes, terrifying torture, with . . . intense cruelty . . . ." Aslani asserts that he was subjected to disparate treatment due to his religion (Islam), as evinced by the fact that CATA or LPD officers told him "pray now" and called him a "fuckin[g] Moslem" while they were beating, throwing, and tasering him, and by the fact that they desecrated his Muslim holy book.

On April 25, 2005, Aslani was charged in the Circuit Court of Ingham County, Michigan, with trespassing, two counts of resisting and obstructing a police officer, and one count of assault and battery, and assigned a court-appointed attorney over

his objections. The prosecutor offered a bargain in which Aslani would plead guilty to a simple misdemeanor for trespassing and the State would drop the other charges. Aslani contends that he was wrongfully denied access to surveillance videos from the Greyhound bus terminal, the CATA station, and the Sparrow Hospital emergency room, where he was allegedly "subjected to various savage . . . treatments, including but not limited to, beating, tasering, cathe[te]rization and medical torture, and verbal and physical and psychological abuses."

At a September 2006 state-court hearing, the state prosecutor offered Aslani this deal: plead *nolo contendere* (no contest) to misdemeanor trespassing and misdemeanor resisting and obstructing an officer, and pay a fine up to $200, and in return the prosecution would drop the other charges and vacate the order that had prohibited Aslani from carrying firearms. Comp ¶ 18. Feeling pressured, Aslani reluctantly accepted the plea bargain because his attorney led him to believe that a no-contest plea was not an admission that he was guilty of committing any offense. Comp ¶¶ 19-21. The Michigan Court of Appeals denied Aslani's application for leave to appeal in October 2007, and the Michigan Supreme Court denied review in April 2008, *see People v. Aslani*, 747 N.W.2d 307 (Mich. 2008).

Aslani filed the original complaint in this court on March 31, 2008, one day less than three years after his allegedly false arrest and imprisonment and the other alleged torts of the defendants. The original complaint named four institutional defendants – the LPD, Greyhound, CATA, and Sparrow Health Systems – and no individual defendants.

Before the defendants filed any response to the original complaint, Aslani filed the first amended complaint in July 2008. Because none of the defendants had filed a responsive pleading by that time, Aslani was entitled to amend his complaint once "as of right", i.e., without leave of court or opposing counsel. * * * Accordingly, the court accepted Aslani's amended complaint for filing.

The amended complaint kept the four institutional defendants and added 16 individual defendants: seven alleged employees of Sparrow (doctors, nurses, and administrators), one alleged Greyhound employee (bus driver Ed Lewis), two alleged CATA employees (security officers Fowler and Becker), and six alleged City of Lansing employees (police officers). **The amended complaint asserts three federal claims, five state-law claims, and one claim under international law:**

| | |
|---|---|
| Count 1, Am Comp ¶¶ 29-48 | 42 U.S.C. § 1981 |
| ~~Count 2, Am Comp ¶¶ 49-61~~ | ~~False Arrest~~ |
| ~~Count 3, Am Comp ¶¶ 62-73~~ | ~~False Imprisonment~~ |
| ~~Count 4, Am Comp ¶¶ 74-83~~ | ~~Assault and Battery / Excessive Force~~ |
| Count 5, Am Comp ¶¶ 84-89 | IIED |
| ~~Count 6, Am Comp ¶¶ 90-106~~ | ~~Malicious Prosecution~~ |

| Count 7, Am Comp ¶¶ 107-114 | 42 U.S.C. § 1983 |
| Count 8, Am Comp ¶¶ 115-122 | 42 U.S.C. § 1985(3) |
| ~~Count 9, Am Comp ¶¶ 123-125~~ | ~~UDHR and CAT~~ |

(The claims listed in "strike-through" font are those which the court will dismiss as to all defendants. Count 2-4 are untimely as to all defendants, and Counts 6 and 9 lack merit as to all defendants.)

*Aslani v. Sparrow Health Sys. et al.*, 2009 WL 736654, *1-3 (W.D. Mich. Mar. 12, 2009) (Maloney,

C.J.) ("*Aslani 2*") (record cites omitted, nn. 5 & 6 omitted) (italics, boldface, strikeout in original).[4]


## DISCUSSION:
### The Police Defendants' Renewed Motion to Dismiss the Amended Complaint

In *Aslani 2*, this court summarized the arguments and issues raised by the Police Defendants'

motion to dismiss and Aslani's response as follows:

> On November 4, 2008, the Lansing defendants filed a renewed motion to dismiss the amended complaint under FED. R. CIV. P. 12(b)(6) for failure to state a claim on which relief can be granted ("Lansing Police MTD"). Aslani filed an opposition brief on December 2, 2008, and the Lansing defendants elected not to file a reply brief. The Lansing defendants first seek to dismiss the LPD on the ground that it is not an entity suable *eo nomine*, in its own name. They acknowledge that official-capacity claims against Lansing police employees constitute claims against the City of Lansing, but they note that Aslani did not raise any official-capacity claims against the Lansing police employees (in fact, did not name them as defendants at all) until the amended complaint.

> The amended complaint was not filed until July 21, 2008. That was more than the three years allowed on the federal civil-rights claims (counts 1, 7 and 8) by MICH. COMP. LAWS § 600.5805(10) and the state-law IIED claim (count 5). *A fortiori*, it was more than the two years allowed on the state-law false arrest, false imprisonment, and assault & battery claims (counts 2-4) by MICH. COMP. LAWS §

---

[4] In October 2008, seven defendants filed both an answer to the amended complaint and a motion to dismiss ("MTD"): the LPD and Police Officers Beasinger, Schlagel, Thielen, and Osborn; Captain Szymanski; and Chief Alley ("the Police Defendants"). This court denied the Police Defendants' dispositive motion without prejudice for failure to comply with LCIvR 7.1(d). *See Aslani v. Sparrow Health Sys.*, 2008 WL 2642617 (W.D. Mich. Oct. 20, 2008) ("*Aslani 1*").

600.5805(2).

The Lansing Police defendants also seek to dismiss the malicious prosecution claim (count 6). They argue that it is duplicative of the false-imprisonment claim and/or that it fails on its merits.

The Lansing Police defendants' motion does not address count 9, which asserts a claim for violation of the UDHR and the CAT. But that claim will be dismissed as to all defendants for failure to state a claim, for the reasons stated below in the discussion of Greyhound's motion to dismiss.

In his brief opposing the Lansing Police defendants' motion to dismiss, Aslani spends much time on matters that are irrelevant to the arguments for dismissal and/or legally or factually mistaken.

**For example, Aslani complains that the Lansing defendants have not filed "responsive pleadings" to the first amended complaint and thus should be subject to entry of default judgment.** Aslani is advised that defendants are required to file *either* an answer or a dispositive motion (motion to dismiss or a motion for summary judgment) within 20 days of being served with the complaint. *See Phelps v. Am. Gen. Fin. Servs.*, 2008 WL 3978318, *3 (E.D. Mich Aug. 22, 2008) ("[A] defendant may properly defend as required by Rule 55(a) in ways other than filing an answer, such as by filing a motion to dismiss for failure to state a claim.") (citing, *inter alia*, *In re Sumitomo Copper Lit.*, 204 F.R.D. 58, 61-62 (S.D.N.Y. 2001)).

Moreover, the Lansing Police Defendants are not required to file an answer to the amended complaint until after the court rules on their pending motion to dismiss. Almost every court to consider this latter issue has concluded that "[p]ursuant to Rule 12(a)(4) of the Rules of Civil Procedure, once a motion to dismiss under Rule 12(b)(6) is filed a defendant need not file its answer until 10 days following the denial of the motion to dismiss." *Woodruff v. McPhie*, 593 F. Supp.2d 273, ___ n.2 (D.D.C. 2009) ("Therefore, the defendant's answer cannot be considered untimely as the Court is now just ruling on the defendant's motion to dismiss.").

The court adopts this view and finds that the Lansing Police Defendants have complied with the Rules regarding the filing of answers and dispositive motions. There is no basis for entering default or for sanctioning the Lansing Police Defendants for "failing" to file an answer while their timely Rule 12 motion to dismiss is pending. *See, e.g., FaceBook, Inc. v. ConnectU, LLC*, 2007 WL 1725441, *2 (N.D. Cal. June 14, 2007) . . . ; *Reeder v. Knapik*, 2007 WL 1521100, *-2 (S.D. Cal. May 22, 2007) . . . ; *Combs v. Valdez*, 2005 WL 2291626, *1 n.3 (N.D. Tex. Sept. 13, 2005) . . . .

Nor can the court conclude that the Lansing Police Defendants conceded allegations

in Aslani's complaint by "failing" to file an answer which denies them. *Krajicek v. Justin*, 1999 WL 195734, *1 (6th Cir. Mar. 23, 1999) . . . Godbold) ("defendants filed a motion to dismiss in lieu of an answer to the complaint. *See* FED. R. CIV. P. 12(b)(4). Thus, we will not deny construe their failure to deny the allegations in the complaint as an admission under Rule 8(d).").

**Aslani also seems to assert that "the City of Lansing has been one of the Defendants in the case at hand"**, even though neither the original complaint nor the amended complaint names the City of Lansing as a defendant. Perhaps Aslani means to say that, once he amended the complaint to include official-capacity claims against the individual Lansing police defendants, those claims effectively were claims against the City of Lansing (which is correct). In any event, as discussed below, the court will dismiss the Lansing Police Department and substitute the City of Lansing as a party defendant in its place.

\* \* \*

**Aslani next complains that the Lansing Police defendants are being dishonest when they invoke FED. R. CIV. P. 12(b)(6)** and contend that he fails to state a claim against them on which relief can be granted. The court notes that this is not a question of honesty or good faith, but merely a disagreement between adversaries over whether certain counts state a claim on which relief can be granted under the prevailing case law.

**Aslani then charges that the Lansing defendants are lying when they state that he "'filed his complaint [on] July 21, 2008,' which they should have known is absolutely untrue." Aslani seems to miss two points of law here. First**, once the court accepts an amended complaint for filing, it automatically replaces the original complaint. \* \* \* *FL Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 702 (1982) (White, J., concurring in part & dissenting in part o.g., joined by 3 JJ.)). The filing of the amended complaint renders the original null and void. \* \* \* *B&H Med., LLC v. ABP Admin, Inc.*, 526 F.3d 257, 268 n.8 (6th Cir. 2008) (citations omitted)). Thus, for most purposes, the original complaint has no effect, as if it never existed.

**Second,** the date when a superseded complaint was filed may be relevant under the "relation back" doctrine. Under that doctrine, which is codified at FED. R. CIV. P. 15(c) and MICH. CT. R. 2.118(D), an amended complaint is sometimes deemed to be filed on the date of the *original* complaint. *See generally Moore v. Tenn.*, 267 F. App'x 450, 454-56 (6th Cir. 2008). In the limitations analysis below, the court will explain why Aslani's amended complaint does *not* "relate back" to the time when he filed the original complaint.

*Aslani v. Sparrow Health Sys. et al.*, No. 1:08-cv-298, 2009 WL 736654, *3-6 (W.D. Mich. Mar. 12,

2009) ("*Aslani 2*") (footnotes 7-11 omitted, brief citations omitted) (italics and boldface in original).[5]

## DISCUSSION:
### The Federal claims (Counts 1, 7 and 8) are Time-Barred as to the Lansing Defendants; The State-Law Claims in Counts 2-4 are Untimely as to All Defendants

In *Aslani 2*, this court held that the three federal civil-rights claims (counts 1, 7 and 8) are

time-barred as to the Police Defendants. This court also held that the state-law claims for false

arrest, false imprisonment, and assault and battery / excessive force were time-barred as to all

defendants. In support of these two rulings, this court wrote as follows:

> Because 42 U.S.C. sections 1981, 1983 and 1985(3) do not provide their own statutes of limitation, the court "borrows" the most closely analogous statute of limitations in the State where the events giving rise to the claims occurred. *See Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985) . . . .[6]

> Aslani does not contest the Lansing Police Defendants' contention that his three federal civil-rights claims (counts 1, 7 and 8, under 42 U.S.C. §§ 1981, 1983 and 1985(3), respectively) are governed by Michigan's three-year statute of limitations for personal-injury claims, MICH. COMP. LAWS § 600.5805(10), *see* Aslani Lansing Opp at 6. **The court holds that Aslani's section 1981 claim and his section 1983 claim are governed by a three-year limitations period:**

>> There is no dispute that the applicable statute of limitations based on violations of 42 USC 1981 and 42 USC 1983 is a state's statute of limitations governing personal injury, *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 676 . . . (1987) . . . which in this state is three years.

> *Timmons v. Mount Morris Twp.*, 2001 WL 766138, *1 (Mich. App. Jan. 26, 2001) .

---

5

In his briefs opposing the Police Defendants' dispositive motion, Aslani sought Rule 11 sanctions against them. This court denied Aslani's request for sanctions, *see Aslani v. Sparrow Health Sys. et al.*, No. 1:2008-cv-298, 2009 WL 736654, *6-7 (W.D. Mich. Mar. 12, 2009) (Maloney, C.J.) ("*Aslani 2*"), and he has not moved for reconsideration of that ruling.

6

In 1990, Congress enacted 28 U.S.C. § 1658, a four-year "catch-all" statute of limitations for claims that arise under federal statutes (or amendments) enacted after December 1, 1990. Aslani has not contended that his federal civil-rights claim arise under post-December 1, 1990 amendments to 42 U.S.C. §§ 1981, 1983 or 1985(3), so the four-year limitations period does not apply.

. . (citing MICH. COMP. LAWS § 600.5805(8)); *see also Sumner v. Goodyear Tire & Rubber Co.*, 398 N.W.2d 368, 378-79 (Mich. 1986) ("Title VII and § 1981 have 180-day and three-year statutes of limitation, respectively.") . . . .[7]

**The court also holds that Aslani's section 1985(3) claim is subject to a three-year limitations period.** *Bell v. Kostanko*, 2004 WL 1505509, *1 n.2 (Mich. App. July 6, 2004) . . . ("a three-year period of limitation applies to plaintiff's claims of . . . violations of 42 USC 1983-1985 . . . .") (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989) and MICH. COMP. LAWS § 600.5805(10)); *see also Bygrave v. Van Reken*, No. 99-1702, 238 F.3d 419, 2000 WL 1769587, *2 (6th Cir. Nov. 14, 2000) (on appeal from Eastern District of Michigan [applying Michigan law], court stated, "[T]he statute of limitations applicable to Bygrave's § 1981, § 1982, § 1983 *and § 1985 claims* is three years.") (emphasis added) (citing *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) & *Marlowe v. Fisher Body*, 489 F.2d 1057, 1063 (6th Cir. 1973)).

**Aslani also does not contest the Lansing Police Defendants' contention that his state-law claims for assault & battery and false imprisonment (counts 3 and 4) are governed by the two-year limitations period set forth in MICH. COMP. LAWS § 600.5805(2), and the court so holds.** *See Salter v. Lanni*, 1999 WL 33455064, *1 (Mich. App. Jan. 19, 1999) . . . (citing *Lemmerman v. Fealk*, 534 N.W.2d 695, 697 (Mich. 1995) ("Claims for assault and battery normally must be brought within two years after they accrue . . . .")); *Christopoulos v. Socall*, 2008 WL 2220589, *1 (Mich. App. May 29, 2008) . . . ("The statute of limitations for assault and battery is two years.") (citing MICH. COMP. LAWS § 600.5805(2)), *app. den.*, 759 N.W.2d 390 (Mich. 2009); *Lyman v. Toundas Motor Sports Group, Inc.*, 2007 WL 705035, *3 (Mich. App. Mar. 8, 2007) . . . (same); *Bell v. Kostanko*, 2004 WL 1505509, *1 n.2 (Mich. App. July 6, 2004) . . . ("it appears that a two-year period of limitation applies to plaintiff's claims of assault and battery and false imprisonment") (citing MICH. COMP. LAWS § 600.5805(2)); *Garnet v. Wallich Lumber*, 563 F. Supp. 479, 481 (E.D. Mich. 1983) ("Since the false arrest at issue occurred more than two years before this lawsuit was filed, the false imprisonment portion of plaintiff's claim must be dismissed.") (citing MICH. COMP. LAWS § 600.5805(2)).

**Likewise, the court holds that Aslani's false-arrest claim (count 2) is governed**

---

[7]

There is also Sixth Circuit authority for the proposition that 42 U.S.C. § 1981 claims in Michigan are, at least sometimes, governed not by the statute of limitations for personal-injury claims, but by the statute of limitations for Elliott-Larsen Civil Rights Act claims. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 667-68 n.7 (6th Cir. 1999). First, *Jackson* is distinguishable because the plaintiff there asserted a claim for racial harassment and a hostile work environment under section 1981 and the MELCRA. Second, even if the court for some reason applied the MELCRA limitations period here, it would be of no avail to Aslani. The MELCRA limitations period, like Michigan's limitations period for personal-injury claims, is three years.

by the two-year limitations period set forth in MICH. COMP. LAWS § 600.5805(2). *See Wolfe v. Perry*, 412 F.3d 707, 715 (6th Cir. 2005) (citing MICH. COMP. LAWS § 600.5805(2)); *see also Watford v. City of Cleveland*, 1996 WL 733138, *1 (6th Cir. Dec. 18, 1996) . . . (applying two-year limitations period to section 1983 claims for *false arrest*, false imprisonment, illegal search and seizure, and invasion of privacy); *Kearney v. Ohio Dep't of Indus. Relations*, 1996 WL 290265, *1 (6th Cir. May 31, 1996) . . . ("His claims for false arrest and imprisonment . . . also are barred because he did not file suit within two years.") (citing, *inter alia*, *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989)); *Hirmuz v. City of Madison Hts.*, 469 F. Supp.2d 466, 477 (E.D. Mich. 2007) . . . ("Under state law false arrest claims themselves must be commenced within two years.") (citing MICH. COMP. LAWS § 600.5805(2)).

**Aslani's IIED claim (count 5), however, is governed by Michigan's *three*-year statute of limitations for personal-injury claims, MICH. COMP. LAWS § 600.5805(10).** *See Bell v. Kostanko*, 2004 WL 1505509, *1 n.2 (Mich. App. July 6, 2004) . . . ("a three-year period of limitation applies to plaintiff's claims of intentional infliction of emotional distress") (citing *Lemmerman v. Fealk*, 534 N.W.2d 695, 697 (Mich. 1995) . . . .

**Aslani concedes that he did not amend the complaint[8] to name the individual**

---

[8]

Under Michigan law, for this purpose Aslani's amended complaint (filed July 2008) does not "relate back" to the time when he filed the original complaint (March 31, 2008).

MICH. CT. R. 2.118(D) provides, "An amendment that adds a claim or a defense relates back to the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading." However, "it is well established in Michigan that the relation-back doctrine does not apply with regard to the addition of new parties." *Bellamy v. Target Stores*, 2002 WL 31934019, *2 (Mich. App. Nov. 19, 2002) (citing *Hurt v. Michael's Food Ctr.*, 559 N.W.2d 660, 665 (Mich. App. 1996) & *Employers Mut. Cas. Co. v. Petroleum Equip.*, 475 N.W.2d 418, 421 (Mich. 1991)). *See also Gardner v. Stodgel*, 437 N.W.2d 276, 280 (Mich. App. 1989) (citing *Guerra v. Bar-Har Inv.*, 315 N.W.2d 921, 924 (Mich. App. 1982) (citing *Forest v. Parmalee*, 231 N.W.2d 378, 382 (Mich. 1975), *aff'd o.g.*, 262 N.W.2d 653 (Mich. 1978))).

Specifically, an amendment to a "John Doe" complaint which adds named defendants does not relate back to the filing of the earlier Doe complaint. *Bellamy*, 2002 WL 31934019 at *2 (citing *Thomas v. Process Equip.*, 397 N.W.2d 224, 226 (Mich. App. 1986) & *Fazzalare v. Desa Indus.*, 351 N.W.2d 886, 888 (Mich. App. 1984) & *Browder v. Int'l Fid. Ins. Co.*, 296 N.W.2d 60, 62 (Mich. App. 1980)). *See also Meda v. City of Howell*, 312 N.W.2d 202, 204-05 (Mich. App. 1981).

**LPD defendants until more than three years after their alleged wrongs,[9] and therefore, that counts 2, 3 and 4 will be time-barred as to the Lansing Police Defendants absent equitable tolling.**

**Aslani contends, however, that this court should equitably toll those limitations periods to exclude the time during which he was "diligently and relentlessly"**

---

[9]

Aslani's original complaint referred to various individuals as "Defendant", *see* Comp ¶¶ 38 *et seq.*, but he failed to name them as defendants in the caption. FED. R. CIV. P. 10(a) states, "Every pleading must have a caption . . . . *The title of the complaint must name all the parties* . . . ." Emphasis added. *See Black v. Reams*, 2008 WL 5145429, *2 (D. Colo. Dec. 5, 2008).

Simply put, persons who are not named as parties in the caption of a complaint are not parties. *See Moder v. L.E. Meyers Co.*, 2008 WL 4763266, *1 (W.D. Wis. Oct. 27, 2008) ("[T]he only defendants in a case are those named in the caption.") (citing FED. R. CIV. P. 10(a) and *Myles v. US*, 416 F.3d 551, 552 (7th Cir. 2005)).

For example, summons will not be issued for people not identified in the caption. *Martin v. Roche*, 2009 WL 32635, *15 (C.D. Cal. Jan. 5, 2009) ("If plaintiff files an amended complaint, he must include in the caption the names of all the defendants against whom he is asserting a claim. * * * The Court will not order the United States Marshal to serve a complaint on any defendant not named in the caption.") (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262-63 (9th Cir. 1992) (dismissing action for refusal to comply with orders to name all defendants in caption)). Indeed, in the instant case, no summons were issued to the individual defendants as to the *original* complaint.

A plaintiff must ensure that all parties whom he wishes to sue are named in the caption of his complaint, for the caption's *raison d'etre* is to define the roster of those who are legally party to the controversy. This is a reliable bright-line rule, and Aslani has not proffered any authority for departing from it to "deem" individuals to be defendants in the original complaint despite his failure to name them in the caption. *Cf. Moore v. Powell*, 2006 WL 44199 (W.D. Mo. Jan. 9, 2006):

> Plaintiff responds that 'Caption of the Amended Complaint . . . . Former Officer Michael Chester's name was not listed because until recently he was not officially served but can now be served through counsel of record. * * * Although this response somewhat clarifies plaintiff's position, it does not correct the underlying deficiencies in plaintiff's complaint, namely failure to include Officer Chester as a named defendant in the caption of the amended complaint . . . . Therefore, . . . plaintiff shall file a second amended complaint which separately identifies all named defendants *within the caption of the complaint* . . . .

*Id.* at *2 (emphasis added). *See also Rios v. Tilton*, 2009 WL 173180, *6 (E.D. Cal. Jan. 26, 2009) ("If plaintiff elects to file an amended complaint, *plaintiff must list each defendant in the caption of his pleading* and name each defendant . . . .") (emphasis added);

**pursuing his state remedies, by which he means his direct appeal from his criminal conviction and sentence.** Aslani describes his efforts in the state criminal courts as follows:

> [S]ubsequent to the September 18, 2006, hearing, at the state trial court, the Plaintiff has made numerous and at times arduous attempts and efforts to obtain a copy of his trial court record on file, however, to no avail, and thereby he has been denied his right to a copy of the register of actions and the final order, which according to the clerk of the trial court constituted a "$200.00 sentence," among other orders that unlawfully had been entered against him from the bench by the state trial court. Incredibly, to deny the Plaintiff his right to perfect and prosecute his appeal, to date of this filing he has been denied his right to a copy of the final order, or any other order for that matter, that he had meant to make his appeal from. According to the Michigan Court of Appeals, the state trial court had not entered any order f[rom] which the Plaintiff could make an appeal. It is an established doctrine that a court speaks through its orders; in the underlying case, however, such a principle has been rendered anathema to the rules of law under American jurisprudence.
>
> Moreover, it was after 293 days of intentional delay and after various complaints and communications relative to this matter that had been made by the Plaintiff with the personnel of the Michigan trial court, including the reporter, herself, and others, such as judges at the state trial court, who did not lift a finger to assist him, that the court reporter finally provided him with the transcript of the September 18, 2006, hearing, in the course of which the state trial court had entered its final order for the said $200.00 sentence and other unlawful orders such as denying him from the bench his right to *res gestae* witnesses.
>
> The said transcript, however, not only was provided to the Plaintiff intentionally 293 days dilatorily, but also had failed to constitute a verbatim recording of the said hearing in violation of MCR 8.108(8), and thereby it has caused further denial of the Plaintiff's established rights, *inter alia*, under the due process of law and equal protection clauses of the Fourteenth Amendment in perfecting and prosecuting his meritorious appeal in order to establish his innocence. Despite, his facing such obstruction of justice, and enduring considerable hardship, the Plaintiff has pursued his appeal and subsequent to exhausting his appeal in the state courts, he timely filed his Application for a Writ of Certiorari in the United States Supreme Court, whose disposition is still pending in that court.

Under the attendant circumstances in the Michigan state courts, the Plaintiff was misled into believing that the final order had been entered into the record, however, all of his diligent efforts heretofore to obtain a copy of the same ha[ve] been rendered naught; in fact, the Michigan Court of Appeals denied the Plaintiff's right to appeal because it ruled that there had been no order, rendering his appeal defective for want of a final order, which has been due to the trickery practiced on him wantonly and flagrantly at the state trial court level, resulting in the denial of his federal constitutional rights. Nonetheless, because the Plaintiff . . . has been relentlessly exercising his rights to exhaust all of his state remedies in his assiduously perfecting and prosecuting his state appeals, and thereby the statute of limitations has been tolled in the case at bar. * * * [10]

"Equitable tolling . . . has a legal basis arising out of our common law, and it may be invoked when traditional equitable reasons compel such a result." *McDonald v. Farm Bur. Ins. Co.*, 747 N.W.2d 811, 819 (Mich. 2008) (Taylor, C.J.). Equitable tolling has been applied where the plaintiff actively pursued his judicial remedies by filing a defective pleading during the statutory period or the claimant has been induced or tricked by the defendant's misconduct into allowing the filing deadline to pass. *Mazumder v. Univ. of Michigan Regents*, 715 N.W.2d 96, 99 (Mich. App. 2006) (citing 51 AM. JUR.2d, LIMITATION OF ACTIONS § 174 at p. 563 ("The time requirements in lawsuits between private litigants are customarily subject to equitable tolling if such tolling is necessary to prevent unfairness to a diligent plaintiff.")), *rev'd in part on other grounds*, 743 N.W.2d 889 (Mich. 2008). But the equitable-tolling doctrine "must and should be rarely invoked", and then only when necessary "to ensure fundamental practicality and fairness and to prevent the unjust technical forfeiture of a cause of action." *Mazumder*, 715 N.W.2d at 99.

The doctrine does not always require wrongdoing by a defendant, but it "applies principally situations in which a defendant actively misleads a plaintiff about the cause of action or in which the plaintiff is prevented in some extraordinary way from asserting his rights . . . ." *Mazumder*, 715 N.W.2d at 107 (Mich. App. 2006) (citing *Ward v. Rooney-Gandy*, 696 N.W.2d 64, 67 (Mich. App. 2005)). "[T]he usual sort of conduct which may work an estoppel in the statute of limitations context" includes, for example, "an offer to compromise or settle plaintiff's claim, a representation that the limitations period was of much greater duration than it

---

[10]

Of all Aslani's claims, the malicious-prosecution claim is the only one that requires him to show that the underlying criminal proceedings terminated in his favor. Therefore, that claim arguably would not even accrue until the termination *in Aslani's favor* of all possible proceedings in the underlying criminal action. But that is a matter of when the claim *accrued*, not whether the limitations period on the malicious-prosecution claim should be tolled once it started running.

actually was, or part payment of plaintiff's claim." *Lothian v. City of Detroit*, 324 N.W.2d 9, 18 (Mich. 1982). Defendant conduct that may justify equitable tolling also includes "fraudulent concealment." *Devillers v. Auto Club Ins. Ass'n*, 702 N.W.2d 539, 558-59 (Mich. 2005) . . . .

An *absolute* prerequisite of equitable tolling is the plaintiff's showing that he acted diligently. *See Ward*, 696 N.W.2d at 67 . . . . **Aslani has not shown that he acted diligently with regard to the filing of the instant claims.** Other than the malicious-prosecution claim, he has not shown that *any* of his claims' accrual or success depended on the progression or success of the direct appeal of his conviction. In other words, the progress and outcome of Aslani's criminal direct appeal had *no* bearing on his right to bring these claims in federal court or his ability to prevail on these claims. Therefore, any bad-faith delay of his prosecution of that appeal provides no excuse for his delay in bringing this action.

**In any event, Aslani does not allege that any of *these defendants* misled him as to the accrual of these claims or the applicable limitations periods.** This is significant, because the Michigan Supreme Court "has been reluctant to recognize an [equitable] estoppel [preventing a defendant from raising the limitations bar] absent intentional or negligent conduct" by a party defendant "designed to induce a plaintiff to refrain from bringing a timely action." *Cincinnati Ins. Co. v. Citizens Ins. Co.*, 562 N.W.2d 648, 655 (Mich. 1997) . . . .

Instead, Aslani alleges only obstruction and delay *by the Michigan state courts*.[11] The caption of the amended complaint does not name any Michigan courts, judges or staff, as defendants in our case. *See Wilson v. Plyler*, 2007 WL 866233, *3 (Mich. App. Mar. 22, 2007) . . . (MICH. COMP. LAWS § 600.5855 tolls a limitation period where "a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim", but "plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent

---

[11]

    *See, e.g.,* Aslani Lansing Opp at 7-8 (unidentified person(s) at state trial court thwarted Aslani's numerous attempts to obtain a copy of the criminal case's "record on file", the "register of actions" (presumably, the docket sheet), and the final order);

    *id.* at 8 (implying that Michigan Court of Appeals improperly or dishonestly thwarted Aslani's attempt to appeal his conviction by allegedly holding that "the state trial court had not entered any order for which the Plaintiff could make an appeal");

    *id.* at 8 (judges, court reporter and other employees of state trial court intentionally delayed providing Aslani with a transcript of September 2006 plea hearing, and when the court reporter finally gave him a copy after 293 days, it was not a verbatim transcript as required by Michigan law).

concealment") (quoting *Doe v. Roman Catholic Archbishop of the Archdiocese of Detroit*, 692 N.W.2d 398 (Mich. App. 2004) (citation omitted))).

**Even putting aside the fact that none of the accused Michigan judges and court staff are defendants in this action, the court cannot find that it was their alleged delay of Aslani's criminal appeal which caused him – or *reasonably* could have caused him – to refrain from filing the instant action for so long after the April 1, 2005 incident.** The court is skeptical that the Michigan courts' alleged obstruction actually caused Aslani to delay bringing this suit. Even if that was the cause, the court finds that it was not reasonable for Aslani to sit on these claims because of difficulties or delays in his state criminal appeal. *Cf. Robertson v. Allstate Ins. Co.*, 2007 WL 4553630, *4 (Mich. App. Dec. 27, 2007) . . . ("We also reject plaintiff's assertion that equitable tolling is appropriate on the grounds that Allstate acted fraudulently. * * * *[P]laintiff failed to create an issue of fact [as to whether]* Allstate made any misrepresentation about her submission of a sworn proof of loss or that *the alleged misrepresentation caused plaintiff to delay filing her complaints*.") (footnote 6 omitted) (emphasis added).

**Other than the state courts' allegedly improper obstacles to the prosecution of his criminal direct appeal, Aslani has not proffered any justification for waiting almost three years before filing the original complaint on March 31, 2008** (which asserted the instant claims against Sparrow Health, CATA, Greyhound, and the LPD). Less still has he shown any legal necessity, or other compelling justification, for waiting *more* than three years to assert these claims against the individual defendants (who were added only in the amended complaint, filed July 2008). If the record discloses any "inequity", it is "inadequate to sustain a claim for . . . tolling, because it is directly related to [Aslani]'s unassisted failure to comply with the . . . applicable time constraints, not on intervening, external circumstances." * * * *Ward v. Siano*, 730 N.W.2d 1, 4 (Mich. App. Nov. 24, 2006), *judgment rev'd o.g.*, 741 N.W.2d 836 (Mich. 2006)).

In short, Aslani has not established his own diligence. He has not shown any misconduct by these defendants that could have misled him into thinking he had more time to bring these claims. Nor has he shown any misconduct by the defendants that could have misled him into thinking that he could not file this civil action until he had pushed his criminal appeal to a certain point.

Absent such showings, this is *not* the rare case where limitations periods should be equitably tolled. *See Sobh v. Farm Bur. Ins. Co. of Mich.*, 2007 WL 1206978, *2 (Mich. App. Apr. 24, 2007) . . . and *Downs v. Keebler*, 2006 WL 3422546, *14 (Mich. App. Nov. 28, 2006) . . . ("Although courts undoubtedly possess equitable power [to toll a limitations period], such power has traditionally been reserved for 'unusual circumstances' such as fraud or mutual mistake.") (both quoting *Devillers v. Auto Club Ins. Ass'n*, 702 N.W.2d 539, 556 (Mich. 2005) . . . .

*Aslani v. Sparrow Health Sys. et al.*, No. 1:2008-cv-298, 2009 WL 736654, *7-12 (W.D. Mich. Mar. 12, 2009) (Maloney, C.J.) ("*Aslani 2*") (some ¶ breaks added, other nn. and brief citations omitted).

**On the issue of these claims' timeliness, Aslani's reconsideration motion first contests the applicability of these limitations periods. His argument fails in three respects.** The first defect is this. He contests the court's statement that he "does not contest the Lansing Police Defendants' contention that his state-law claims for assault and battery . . . are governed by the two-year limitations period set forth in Mich. Comp. Laws § 600.5805(2)." P's Mot. for Recon. at 5. Yet Aslani does not identify where, *in his briefs opposing the prior dispositive motions*, he contested the police defendants' contention regarding the applicability of Michigan's two-year assault-and-battery limitations period to Count Four ("Assault and Battery / Excessive Force"). A party may not fail to contest a proposition in his briefs opposing a dispositive motion, and then contest it later in a reconsideration motion. *See Habel v. Macomb Twp.*, 2006 WL 1007620, *2 (E.D. Mich. Apr. 18, 2006) (Battani, J.) ("A motion for reconsideration is not a vehicle by which Defendants may raise arguments they neglected to advance on summary judgment.") (citing *Sault Sainte Marie Tribe v. Engler*, 146 F.3d 367, 373 (6th Cir. 1998)), *aff'd*, 258 F. App'x 854 (6th Cir. 2007).

**The second defect in Aslani's challenge to the limitations ruling is as follows.** He asserts that "the claim of excessive force is brought under Federal [42 U.S.C.] § 1983, which is governed by the three-year limitations period." P's Mot. for Recon. at 5. Aslani cites no authority for this proposition, and a court is not required to scour the case law to find authority for a proposition when a party fails to provide it. In any event, Aslani pled separate claims under the federal civil-rights statutes (counts one, seven and eight, under 42 U.S.C. §§ 1981, 1983, and 1985, respectively) and the common law (counts two, three, and four, which were false arrest, false imprisonment, and

-17-

assault and battery/excessive force, respectively). Unlike counts 1, 7 and 8, counts two through four made no reference to federal statutes, and the court properly construed them as claims under Michigan state common law. Moreover, as explained in the court's initial opinion, when Congress has not provided a statute of limitations for a federal civil-rights claim – as it has not with the claims in question here – a court entertaining such claims is authorized and obligated to borrow and apply the most closely analogous statute of limitations in the State where the events giving rise to the claims occurred. *See Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985).

Thirdly, in his motion for reconsideration, Aslani cites a host of decisions for the proposition that no legal consequence should attach to his failure to name the Lansing Police Defendants as parties defendant in the caption of the original complaint, or to the concomitant fact that no summons were ever issued for any of the individual defendants as to the original complaint. This argument fails on its merits; less still does it show the "palpable defect" needed for reconsideration under our Local Civil Rules. For one thing, none of Aslani's cited or quoted decisions on this issue except one (*Blanchard*, discussed below) was issued by the U.S. Supreme Court or by our Sixth Circuit Court of Appeals. *See US v. Flores*, 477 F.3d 431, 438 (6th Cir. 2007) (Richard Allen Griffin, J.) ("*Johnson* is a district court opinion and, therefore, not binding . . . .")); *Michigan Elec. Employees Pension Fund v. Encompass Elec. & Data, Inc.*, 556 F. Supp.2d 746, 762 (W.D. Mich. 2008) (Maloney, C.J.) ("'District court opinions have persuasive only and are not binding as a matter of law.'") (quoting *Liebisch v. HHS*, 1994 WL 108957, *2 (6th Cir. Mar. 30, 1994)).[12] It can hardly be a "palpable

---

[12]

*See, e.g., Paycom Billings Servs. v. Payment Resources Int'l*, 212 F. Supp.2d 732, 738 (W.D. Mich. 2002) (**Robert Holmes Bell, C.J.**) ("This court is not bound by a California district court opinion."); *Kirsch Co. v. Bliss & Laughlin Indus., Inc.*, 495 F. Supp. 488, 492 (W.D. Mich. 1980) (**Richard Enslen, J.**) ("[A] district court is . . . not bound by the decision of a district court . . . .")

defect" to decline to follow decisions which lack any precedential force whatsoever.

Aslani argues as follows, in pertinent part,

[T]his Court erroneously has opined that the "original complaint named four institutional defendants – the LPD, Greyhound, CATA, and Sparrow Health Systems – and no individual defendants." However, as it has been irrefutably established in this motion, such a view is contrary to the facts on the ground (please see Dkt. #1). Moreover, through pages 6 and 7, of its said opinion and order, in continuing its said erroneous statement, this Honorable Court has stated the following: "The amended complaint kept the four institutional defendants and added 16 individual defendants." However, again, *any assertion that the Plaintiff allegedly had not identified all of the concerned party Defendants in the caption* and/or in the body *of his original Complaint*, which speaks for itself, *is absolutely fallacious* under the issues of fact and law relative to the case at hand.

Furthermore, through pages 8 and 9 of the said opinion and order, this court has stated that ". . . but they [Lansing Police Defendants . . .] note that Aslani did not raise any official capacity claims against the Lansing police employees (in fact, did not name them as defendants at all) until the amended complaint." However . . . the Plaintiff did name the said party Defendants therein in the body of the original Complaint. The said Lansing Police Defendants have intentionally and deceptively misled this Court in their said false assertion.

Moreover, in the said Opinion and order, this Court has assumed that "Perhaps Aslani means to say that, once he amended the complaint to include official-capacity claims against the individual Lansing police defendant": such an assumption has been quite unnecessary and in fact is outright fallacious, as the Plaintiff did not need to make any such assumption, as *he had already named all of the Lansing Police party Defendants* both *in the caption* and in the body *of his original Complaint* . . . . As the argument presented below will irrefutably established [sic] simply because the Plaintiff has identified certain defendants in the body, rather than in the caption of his original Complaint, under the germane federal precedents it cannot be interpreted as if he has failed to name the concerned party Defendants in his original Complaint.

---

***Accord*** US v. Lacey, 569 F.3d 319, 323 (**7ᵗʰ Cir.** 2009) (Manion, J.) ("Not only is *Fabrizio* a district court case that is not precedential authority . . . .") (citation omitted), *cert. denied*, – U.S. –, – S.Ct. –, 2009 WL 2920272 (Oct. 13, 2009) (No. 09-319); *US v. Ensminger*, 567 F.3d 587, 594 (**9ᵗʰ Cir.** 2009) (noting with approval, "The district court here not only rejected *Powers* [M.D. Fla.] because it has no precedential value in the District of Montana . . . ."); *Werner Enters., Inc. v. Westwind Maritime Int'l, Inc.*, 554 F.3d 1319, 1325 n.5 (**11ᵗʰ Cir.** 2009) ("*Atkins* is a federal district court decision from another circuit, and would not be binding in any event.").

> Additionally, on pages 18 and 19, of the said opinion and order, this Court, by arbitrarily parroting the deceptive assertions made by some of the Defendants, has stated that "Aslani concedes that he did not amend the complaint to name the individual LPD defendants until more than three years after their alleged wrongs.": however, such an assertion is outrageously and absolutely false . . . as *the Plaintiff has already named all of the LDP [sic] Defendants in both the caption and the body of his original Complaint . . . . * * ***

Aslani's Recon. Mot. at 18-19 (footnote 11 omitted, emphasis added).  The court first notes that it is troubled by Aslani's assertion that he named all the Lansing Police defendants in the caption of the original complaint.  An examination of the original complaint reveals that that is untrue.  The court assumes that Aslani made an honest mistake on this score.

Aslani goes on to argue that likewise, his failure to name Sparrow Health System employees Dr. James W. Cagle, Jr., D.O., and Dr. Stevens Owens, M.D., and the many other individual defendants as parties defendant in the caption of the original complaint should be excused and have no legal consequence because he discussed them and called them "defendants" in the body of that complaint.  *See* Aslani's Recon. Mot. at 20-30.

Aslani relies on *Blanchard v. Terry & Wright, Inc.*, 331 F.2d 467 (6th Cir. 1964) for the proposition that "'[w]here a party has actual notice of a suit and is correctly identified in the body of the complaint, courts have typically held that an error in the caption is a technical defect.'" Aslani's Recon. Mot. at 23 (quoting *Nationwide Mut. Ins. Co. v. Kaufman*, 896 F. Supp. 104, 109 (E.D.N.Y. 1995)).  This reliance is misplaced.  First, this court is not obligated to follow any district court's characterization of our Circuit's precedents, let alone a district court outside our circuit; it cannot be a palpable defect in this court's original opinion that it did not follow an interpretation which has no precedential weight.  Second*,* the New York district court in *Kaufman* took our Circuit's decision in *Blanchard* to stand for a far broader proposition than was justified by its context, facts and actual

language. *Blanchard* in no way held, or even intimated, that merely calling someone a "defendant" in the body of a complaint after failing to actually name them as parties defendant in the caption, is of no consequence when determining whether one timely asserted the claims against that person. Unlike the instant case, Blanchard did not involve any potential application of the relation-back doctrine under federal or state law.

Blanchard was an action by a subcontractor against the general contractor ("GC") and its surety to recover for material furnished to the GC in accordance with the general contract with the federal government. *See Blanchard*, 331 F.2d at 468. The Sixth Circuit held only that the subcontractor's failure to name the federal government as a party defendant in the caption did not prevent the district court from allowing the subcontractor to file an amended complaint which corrected the *defect* by expressly alleging that the action arose under the Miller Act. *See Blanchard*, 331 F.2d at 468-69. There was no suggestion that the subcontractor's action was untimely filed or that it would be timely filed only if the amended complaint was deemed to relate back to the filing of the original complaint.

*Blanchard* nowhere held that a district court is obligated to treat a person as a party defendant as of the date of a pleading, for statute of limitations purposes, when the plaintiff failed to specify the person as such in the caption of the earlier pleading as he could and should have done. The panel held not that a district court cannot use the caption as fixing *the identity of the parties*, but rather that "the caption is not regarded as containing any part of plaintiffs' *claim*. We must look to the allegations of the complaint in order to determine the nature of plaintiffs' *cause of action*." *Blanchard*, 331 F.2d at 469 (citing *State of Ohio ex rel. Seney v. Swift & Co.*, 270 F. 1414, 147 (6th Cir. 1921)) (emphasis added). It was only for that very different purpose that the panel directed

courts to look beyond the caption of the complaint. Moreover, unlike here, the panel emphasized that the party omitted from the caption, the United States, had a "merely nominal" interest. "The use plaintiffs were the real parties in interest." *Blanchard*, 331 F.2d at 469-70 (internal citation omitted). In the instant case, by contrast, there is and can be no suggestion that the many individuals whom Aslani failed to name as parties defendant in the original complaint's caption have only a "nominal" interest in the case or are not "real" parties in interest.[13]

Not one of the many other cases cited by Aslani on this issue was handed down by the Sixth Circuit Court of Appeals, so none of them are precedential in this circuit. Aslani has not carried his burden of showing some palpable defect (*see* W.D. MICH. LCIVR 7.4) in this court's determination that his failure to identify the individual police defendants in the caption of the original complaint prevents him from asserting that he properly asserted his claims against them at that time for purposes of the applicable limitations periods.

Lastly, Aslani cannot deny the fact that no summons were issued for *any* of the individuals at the time of, and with regard to, the original complaint. Summons were not issued for any of the individuals until July 21, 2008, after the limitations periods for many claims had elapsed and Aslani filed his amended complaint. This is significant, because a party not served with a summons has not been properly made a party to an action, and thus has not yet validly been sued on the claims asserted

---

[13]

Only three panels of the Sixth Circuit have ever cited *Blanchard*, and none used it as authority for the proposition advanced by Aslani, that his failure to specify the numerous individuals as parties defendant in the caption of the original complaint has no consequence for statute-of-limitations purposes under federal or Michigan law. Rather, all three subsequent decisions cited *Blanchard* solely with regard to the curing of defective allegations related to diversity jurisdiction. *See AmSouth Bank v. Dale*, 386 F.3d 763, 780 (6th Cir. 2004) (Moore, J., joined by W.D. Mich. D.J. Quist, with C.J. Boggs concurring in the judgment only); *Miller v. Davis*, 507 F.2d 308 (6th Cir. 1974) (Celebrezze, McCree, N.D. Ohio D.J. Walinski); *Marlowe v. Fisher Body*, 489 F.2d 1057, 1065 (6th Cir. 1973) (Weick, Miller, Lively).

in the corresponding complaint.  *Cf. Cole v. Beros*, 2008 WL 2963278, *2 (W.D. Pa. July 29, 2008)

("There is no indication that either Local 585, Joint Council No. 40 or the International Brotherhood

of Teamsters has been properly served with a summons . . . .  The union entities have not properly

been made parties to this action, and thus, the Court will address only the claims asserted against

Jordan and Beros.").

Thus, this court continues to hold that even as a *pro se* litigant, Aslani is not entitled to be

shielded from all consequences for his admitted failure to comply with the simple and vital

requirement of Federal Rule of Civil Procedure 10(a).  In addition to the cases cited in *Aslani 2*, *see*

*Howze v. Sanders*, 2008 WL 4570274, *1 (C.D. Cal. Oct. 14, 2008) ("The complaint's caption must

list all defendants.") (citing FED. R. CIV. P. 10(a) and *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262-63

(9th Cir. 1992)); *Harris v. Fischer*, 2008 WL 2331446, *3 (N.D.N.Y. June 3, 2008) (David Hurd, J.)

("Plaintiff should note that any Amended Complaint . . . must contain a caption that identifies by

name, each individual and/or entity that Plaintiff is suing in the present lawsuit . . . .  *Plaintiff should*

*note that any Defendant not named in the [caption of the] amended pleading shall not be a*

*Defendant to this action*.") (emphasis added).

Having failed to show some palpable defect in this court's determination that certain claims

– his count 1, 2, 3, 4, 7 and 8 claims against the Lansing Police Defendants, and his count 2, 3 and

4 claims against *all* defendants – were untimely due to his failure to name those individuals as parties

defendant in the caption of his original complaint, Aslani also fails to show any palpable defect in

the court's determination that Aslani was not entitled to equitable tolling of those statutes of

limitation.  As the City of Lansing points out, *See* City's Opp. to Recon. at 5, Aslani presents

essentially the same arguments on the equitable-tolling issue which he unpersuasively presented in

his briefs opposing the dispositive motions. As our Circuit has long emphasized, "Rule 59(e) allows for reconsideration; it does not permit parties to effectively 're-argue a case.'" *Hough v. Carlton*, 2009 WL 2170117, *5, – F. App'x –, – (6th Cir. July 22, 2009) (Richard Allen Griffin, J., dissenting o.g.) (quoting *Howard v. US*, 533 F.3d 472, 475 (6th Cir. 2008) (Rogers, J.) (quoting *Sault Sainte Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998))).

## DISCUSSION:
## Count 6 (Malicious Prosecution) Fails to State a Claim Against Any Defendant

In *Aslani 2*, this court held that count 6 failed to state a claim for malicious prosecution. In support of that ruling, this court wrote as follows:

> Under Michigan law, "a basic element of a cause of action for malicious prosecution is the termination of the criminal proceedings in favor of the accused." *Cox v. Williams*, 593 N.W.2d 173, 174 (Mich. App. 1999) (citing RESTATEMENT OF TORTS 2D § 658 at pp. 416-17). Criminal proceedings are deemed to terminate in favor of the accused by (1) discharge by a magistrate at a preliminary hearing, (2) the grand jury's refusal to issue an indictment, (3) the prosecutor's formal abandonment of the proceedings, (4) the quashing of an indictment or information, (5) an acquittal, or (6) a final order in favor of the accused by a trial court or appellate court. *Cox*, 593 N.W.2d at 174-75 (citing RESTATEMENT OF TORTS 2D § 659 at pp. 417).

> It is undisputed that none of the first five events occurred, and it is no longer possible for them to occur. Thus, Aslani can state a claim for malicious prosecution only if he can show that the sixth event occurred, i.e., that he obtained a final order in his favor from a trial or appellate court.

> There is no such order, nor will there be. Following Aslani's no-contest plea and conviction, the Michigan Court of Appeals denied his application for leave to appeal in October 2007, *see* Comp ¶ 24 (not available on WestLaw), and the Michigan Supreme Court denied review in April 2008, *see People v. Aslani*, 747 N.W.2d 307 (Mich. 2008).

> Aslani petitioned for a writ of *certiorari* from the United States Supreme Court, *see* 2008 WL 4441090 (U.S. Sept. 25, 2008) (No. 08-415), but that Court denied the petition on December 1, 2008, *Aslani v. Michigan*, – U.S. –, 129 S.Ct. 639 (2008). United States Supreme Court Rules provide that "[a]ny petition for the rehearing of

an order denying a petition for a writ of certiorari or extraordinary writ shall be filed within 25 days after the date of the order of denial . . . ." U.S. SUP. CT. R. 44 ¶ 2 (version eff. from Oct. 1, 2007 to the present). The 25-day period for Aslani to file a rehearing petition with the U.S. Supreme Court began on December 2, 2008 and expired on December 27, 2008, *see* FED. R. CIV. P. 6, and Aslani did not seek rehearing.

Because it is no longer possible for the criminal proceedings to terminate in Aslani's favor, he fails to state a claim for malicious prosecution against Lansing Police Defendants or anyone else.

*Aslani v. Sparrow Health Sys. et al.*, No. 1:2008-cv-298, 2009 WL 736654, *12-13 (W.D. Mich. Mar. 12, 2009) (Maloney, C.J.) ("*Aslani 2*").

Aslani does not show, or even attempt to show, that the state-court proceedings terminated in his favor, which is a prerequisite to a malicious-prosecution claim under Michigan common law. Rather, he argues that the Michigan trial court acted unjustly, maliciously, and unlawfully by failing or refusing to enter a written order from which he could properly appeal. That, in turn, made it impossible for Aslani to ensure that proceedings ultimately "terminated in his favor" in the Michigan Court of Appeals or the Michigan Supreme Court. To the extent that Aslani could have raised this argument in his briefs opposing the dispositive motions but did not, a motion for reconsideration is not a permissible vehicle to raise it now. Conversely, to the extent that Aslani already raised this same argument in his briefs opposing the dispositive motions, a motion for reconsideration is not a permissible vehicle for simply re-arguing the point without citation to new authority.

Aslani identifies no binding precedent, issued since this court issued the March 12, 2009 opinion, which casts doubt on the dismissal of his malicious-prosecution claim under Rule 12(b)(6) for lack of merit. (Because the malicious-prosecution claim arises under Michigan common law, "binding precedent" for this purpose means a Michigan Supreme Court decision or a published Michigan Court of Appeals decision. The decisions of the Michigan trial courts are not binding

precedent, and federal-court decisions are not binding precedent as to the interpretation of state law.) Specifically, Aslani has not identified any court decision – binding or persuasive – which holds that a court may entertain a plaintiff's malicious-prosecution claim when it is undisputed that the underlying criminal proceedings did not terminate in the plaintiff's favor. The court finds no Michigan or even federal decisions suggesting that a court may overlook the absence of this required element of a malicious-prosecution claim merely because it believes that the underlying proceedings *should* have terminated in the plaintiff's favor, or should have been conducted differently.

Finally, it appears that Aslani is asking this court to declare that (1) the Michigan trial court acted improperly in ruling against him, or in failing or refusing to issue a written order or that (2) the Michigan appellate courts acted improperly in failing or refusing to rule in his favor on appeal in the absence of such a written order. *See* Aslani's Recon. Mot. at 4 (claiming that the trial court's alleged failure or refusal to issue the desired written order was motivated by "unlawful reasons such as, inter alia, deep-rooted animus and raw hatred towards him because of his national origin, race, religion, culture, tradition and value system).

This court lacks jurisdiction and authority to find that Aslani did not commit the unlawful conduct charged by the Michigan state prosecutor, notwithstanding Aslani's protestations that "Plaintiff has never been convicted of any crime in the underlying case, period"; that "in accepting the proffered *nolo* [*contendere* plea], [he] advis[ed] the Michigan trial court on the record that all of the allegations that had been made against him had been 'a pack of lies'"; and that he pled no-contest only "in the interest of his health, among other considerations", not because he was guilty. Aslani's Recon. Mot. at 6; *see also id. at 7 n.7* ("Despite the fact that the prosecution were served with all of the Plaintiff's papers, filed in the said tribunals, the prosecution never ever filed a word, much less

a sentence, in response or opposition to any of the damning evidence and truth that the Plaintiff had presented to the said tribunals, simply because they were irrefutable, and any assertion to the contrary would have amounted to deception and misrepresentations of the germane issues of fact and law therein."). Nor are challenges to the state courts' evidentiary rulings within this court's purview. *See* Aslani's Recon. Mot. at 8 ("There were of course other unlawful orders issued from the bench by the Michigan trial court, such as the denial of the plaintiff's substantive right to his *res gestae* witnesses that the Plaintiff in contravention of germane precedents had been intentionally and flagrantly denied of [sic].") (citing *People v. Gunnett*, 452 N.W.2d 863, 866 (Mich. App. 1990)).

This court lacks authority to make such a declarations, let alone to interfere with the state courts' processes – or disregard their judgments – on the basis of such declarations. To the extent that Aslani seeks to disturb, review, or impugn the Michigan trial court's actions with regard to the issuance of a written order and the failure of his appeal, the *Rooker-Feldman* doctrine deprives this court of jurisdiction. "Under the doctrine, 'lower federal courts do not have jurisdiction to review a case litigated and decided in state court; only the United States Supreme Court has jurisdiction to correct state court judgments.'" *Robinson v. Wheeling & Lake Erie Ry. Co.*, 2009 WL 1015344, *2 (W.D. Mich. Apr. 15, 2009) (Maloney, C.J.) (quoting *Gottfried v. Med. Planning Servs.*, 142 F.3d 326, 330 (6th Cir. 1998)).

"This is equally true in constitutional cases brought under § 1983, since federal courts must give 'full faith and credit' to the judicial proceedings of state courts." *Gottfried*, 142 F.3d at 360. Thus, even if the challenge is that the state court's action was unconstitutional, this court may not entertain the challenge. *Robinson*, 2009 WL 1015344 at *2 (citing *D.C. Ct. of Apps. v. Feldman*, 460 U.S. 462, 485-86 (1983)). *See, e.g.,* Aslani's Recon. Mot. at 9 ("The said transcript, however, not

only was provided to the Plaintiff intentionally 293 days dilatorily, but also had failed to constitute a verbatim recording of the said hearing in violation of MCR 8.108(8), and thereby it has caused further denial of the Plaintiff's established rights, inter alia, under the due process of law and equal protection clauses of the Fourteenth Amendment causing additional obstruction of justice in perfecting and prosecuting his meritorious appeal in order to establish his innocence."); *id.* at 12 (Michigan trial court's failure to issue written order and Michigan appellate courts' refusal to entertain appeal violated his constitutional right to due process of law).

Nor, of course, does this court have jurisdiction to review the decisions of the United States Supreme Court. Specifically, this court cannot excuse Aslani's failure to show that the underlying criminal proceedings terminated in his favor, by finding that the U.S. Supreme Court wrongly prevented him from overturning his conviction at that level. Aslani complains as follows:

> [T]his Court correctly stated that the Plaintiff's writ of certiorari had been denied on December 1, 2008. Furthermore, this Court on pages 26-27 has stated that the Plaintiff had 25 days to file a petition for rehearing and the time expired on December 27, 2008, and "Aslani did not seek rehearing."
>
> This Court, however, has failed to take into its judicial consideration that the Plaintiff became in receipt of the denial of his writ from the United States Supreme Court nineteen days dilatorily, and that when he contacted the clerk of that court to advise her of the dilatory mailing, she became extremely hostile towards the Plaintiff and would not grant him any extension of time to file a motion for rehearing and in fact she hung up on him when the Plaintiff attempted to reason with her. Be that as it may, under the attendant circumstances in hindsight it appears to the Plaintiff that filing any motion for rehearing, would have amounted to another exercise in futility.

Aslani's Recon. Mot. at 10 n.9 (¶ break added). Substantively, this court lacks authority to credit Aslani's disagreement with the U.S. Supreme Court's denial of his petition for a writ of *certiorari*. Procedurally, this court lacks authority to credit Aslani's allegation that that Court was dilatory in mailing the denial to him. Finally, Aslani has not provided a basis for this court to find that it would

have been futile for him to file an application for rehearing with the U.S. Supreme Court.

In short, the fact remains that the Michigan state courts and the U.S. Supreme Court did not terminate the underlying criminal proceedings in Aslani's favor. That consigns his malicious-prosecution claim to dismissal for failure to state a claim under Michigan common law.

### Aslani Does Not Challenge the Substitution of the City for the LPD

In *Aslani 2*, this court dismissed the Lansing Police Department for lack of personal jurisdiction because it is not an entity suable *in eo nomine* under Michigan state law, and substituted the City of Lansing as a party defendant in its stead. *See Aslani v. Sparrow Health Sys. et al.*, No. 1:2008-cv-298, 2009 WL 736654, *13-14 (W.D. Mich. Mar. 12, 2009) (Maloney, C.J.) ("*Aslani 2*"). Aslani does not seek reconsideration of this ruling.

### Aslani Does Not Challenge the Denial Without Prejudice of Sparrow's Motion

In *Aslani 2*, this court denied the Sparrow Health Defendants' motion for summary judgment without prejudice as premature in light of the fact that Aslani had not yet had an opportunity to conduct adequate discovery to resist such a motion. *See Aslani v. Sparrow Health Sys. et al.*, No. 1:2008-cv-298, 2009 WL 736654, *14-15 (W.D. Mich. Mar. 12, 2009) (Maloney, C.J.) ("*Aslani 2*"). Obviously Aslani does not seek reconsideration of this ruling.

### DISCUSSION:
### The Court's Rulings Stand with Regard to the Greyhound Defendants

Aslani's first amended complaint asserts four claims against Greyhound and unserved putative defendant Ed Lewis, who was allegedly driving the bus on which part of the incident

occurred: count 1 (a claim under section 1983), count 3 (state-law false imprisonment), count 5 (state-law intentional infliction of emotional distress), and count 9 ("international law"). In *Aslani 2*, this court dismissed count 3 (state-law false imprisonment) as time-barred as to Greyhound and all other defendants. *See Aslani v. Sparrow Health Sys. et al.*, 2009 WL 736654, *14-15 (W.D. Mich. Mar. 12, 2009) ("*Aslani 2*"). The court explained above why it denies reconsideration as to the untimeliness of the state-law claims in counts 2, 3 and 4 as to all defendants.

This court then denied without prejudice Greyhound's motion to dismiss count 1 (section 1983) and count (IIED) because Aslani had not yet had an opportunity to conduct full discovery. *See Aslani v. Sparrow Health Sys. et al.*, No. 1:2008-cv-298, 2009 WL 736654, *16 (W.D. Mich. Mar. 12, 2009) (Maloney, C.J.) ("*Aslani 2*"). Obviously Aslani has not challenged this ruling.

## DISCUSSION:
### This Court Still Holds that Count 9 (International Law) Fails to State a Claim

Finally, in *Aslani 2*, this court dismissed count 9 (international law) for failure to state a claim as to all defendants. In support of that ruling, this court stated as follows:

> **As for Count 9, Greyhound contends that claims under the Universal Declaration of Human Rights ("UDHR") and the United Nations Convention Against Torture ("CAT") are not cognizable,** because there is no authority that those treaties are self-executing and enforceable in United States federal courts. This court agrees and will dismiss count 9 on that basis.
>
> It is true that treaties entered into by the United States become the law of the land. *US v. Renkel*, 456 F.3d 640, 642 (6th Cir.) (McKeague, J.) (citing U.S. CONST. Art. VI, cl. 2), *reh'g & reh'g en banc denied* (6th Cir Dec. 6, 2006). Generally, "'treaties have the same legal effect as statutes.'" *Renkel*, 456 F.3d at 642-43 (citing *US v. Emuegbunam*, 268 F.3d 377, 389 (6th Cir. 2001) (citing *Whitney v. Robinson*, 124 U.S. 190, 194 (1888) and *US v. Page*, 232 F.3d 536, 540 (6th Cir. 2000)).
>
> "Yet treaties, like some statutes, do not always directly create rights that a private citizen can enforce in court." *Renkel*, 456 F.3d at 643 (citing *Tel-Oren v. Libyan*

*Arab Republic*, 726 F.2d 774, 808 (D.C. Cir. 1984) (Robert Bork, J., concurring)).
This is because

> [a] treaty is primarily a compact between independent nations. It
> depends for the enforcement of its provisions on the interest and
> honor of the governments which are parties to it. If these fail, its
> infraction becomes the subject of international negotiations and
> reclamation, so far as the injured parties choose to seek redress, which
> may in the end be enforced by actual war. It is obvious that with all
> this the judicial courts have nothing to do and can give no redress.

*Renkel*, 456 F.3d at 643 (quoting *Emuegbunam*, 268 F.3d at 389 (quoting *Edye v.
Robertson (Head Money Cases)*, 112 U.S. 580, 598 (1884) (Miller, J., for a
unanimous Court))). Put another way,

> the judiciary is not that department of the government, to which the
> assertion of its interests against foreign powers is confided; and its
> duty commonly is to decide upon individual rights, according to those
> principles which the political Departments of the nation have
> established.

*Renkel*, 456 F.3d at 643 (quoting *Foster v. Neilson*, 27 U.S. (2 Pet.) 253, 307 (1829)
(unanimous)). Relying on these principles, our Circuit has squarely held that there
is no private "cause of action under the Convention Against Torture because it is not
self-executing"[14] and private individuals have no cause of action under any domestic
law implementing the United States' obligations under the Convention, either.
*Renkel*, 456 F.3d at 645. *Accord Pierre v. Gonzales*, 502 F.3d 109, 119-20 (2d Cir.
2007); *Hoxha v. Levi*, 465 F.3d 554, 564 (6th Cir. 2006) ("The United States has
ratified the Torture Convention. The Convention is not self-executing, however, and
therefore does not in itself create judicially enforceable rights.") (internal citation
omitted) (citing *Auguste v. Ridge*, 395 F.3d 123, 132 and n.7 (3d Cir. 2005)); *Saint
Fort v. Ashcroft*, 329 F.3d 191, 202 (1st Cir. 2003).

[*Aslani 2*, footnote 26:] *See, e.g., Mason v. Granholm*, 2008 WL 3538981, *1 (E.D.
Mich. Aug. 12, 2008) (O'Meara, J.) ("Both the ICCPR [International Covenant on
Civil and Political Rights] and the CAT are international treaties that are cognizable
in this court only if they are self-executing or if Congress has passed appropriate
enabling legislation. * * * [T]he ICCPR is not binding on this court, nor is CAT.")

---

[14]

The court now adds this note to the *Aslani 2* discussion: "'The label self-executing usually
is applied to any treaty that according to its terms takes effect upon ratification and requires no
separate implementing statute.'" *Arraz-Saenz v. State of Colorado*, 2009 WL 3162258, *4 n.4 (D.
Colo. Sept. 29, 2009) (quoting *Mora v. NY*, 524 F.3d 183, 194 n.16 (2d Cir. 2008)).

(n. 2 omitted).

**As for Aslani's purported claim under the Universal Declaration of Human Rights,** the court must begin by adhering to the presumption that the UDHR does not create rights enforceable by a private individual in U.S. courts. *See Renkel*, 456 F.3d at 643 ("'courts *presume* that the rights created by an international treaty belong to a state and that a private individual cannot enforce them.'") (quoting *Emuegbunam*, 268 F.3d at 389) (emphasis in original). The court has located no binding authority, and not even any Sixth Circuit *persuasive* authority, that would rebut this presumption and permit this court to adjudicate Aslani's UDHR claim.

[*Aslani 2*, footnote 27] The United Nations General Assembly adopted the UDHR on December 10, 1948. *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 776 (1961).

[*Aslani 2*, footnote 28] If Congress and the President wish to ensure that private individuals have the right to sue in federal court to enforce the CAT or the UDHR, they can enact implementing legislation that expressly creates such a private cause of action. *See Medellin v. US*, 551 U.S. –, –, 128 S.Ct. 1346, 1366 (2008) (Roberts, C.J., joined by Scalia, Thomas, Kennedy, & Alito, JJ.) (after holding that International Court of Justice decision was not directly-enforceable domestic law, Court remarked, "Congress is up to the task of implementing non-self-executing treaties, even those involving complex [issues]. The judgments of a number of international tribunals enjoy a different status because of implementing legislation enacted by Congress.") (citing federal statutes that expressly create a private right of action in federal court for violation of UN Conventions on the Settlement of Investment Disputes and the Recognition and Enforcement of Foreign Arbitral Awards).

On the contrary, "at the time of its adoption in 1948, it was the explicit position of the United States that the Declaration 'is not a treaty . .. [or] an international agreement' and that 'it is not and does not purport to be a statement of law or of legal obligation.'" *Taylor v. Cleveland Clinic*, 2008 WL 1752140, *2 (N.D. Ohio Apr. 14, 2008) (quoting 19 STATE DEP'T BULLETIN 751 (1948) (remarks of U.S. Representative to the U.N.)); *accord Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 719 (9th Cir. 1992) (referring to UDHR as "a non-binding resolution"); *Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 816 n.17 (D.C. Cir. 1987) . . . . Not surprisingly, then, a plaintiff's

> reliance on the United Nations Universal Declaration of Human Rights as legal footing for his civil rights claim . . . is misplaced. The Supreme Court . . . observed that "the Declaration of its own force impose obligations as a matter of international law", and by itself cannot support creation of a cause of action that a federal district court could hear under the applicable jurisdictional statutes.

> *Reynosa v. MDOC*, 2005 WL 3535061, *6 (W.D. Mich. Dec. 22, 2005) (Bell, C.J.)
> (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 733 (2004)).
>
> Therefore, the UDHR claim must be dismissed as to all defendants. *See Taylor*, 2008
> WL 1752140 at *2 (James Gwin, J.) ("Ms. Taylor cannot rely on the UDHR, which
> is a resolution of the United Nations, and is binding on neither the United States nor
> this court.") and *Taylor v. Taylor*, 2008 WL 906102, *2 (N.D. Ohio Mar. 31, 2008)
> (Jack Zouhary, J.) ("It does not serve as a legal basis for a cause of action.") and
> *Taylor v. Vivid Video*, 2008 WL 744212, *2 (N.D. Ohio Mar. 19, 2008) (Sara Lioi,
> J.) (all citing *Flores v. S. Peru Copper Corp.*, 343 F.3d 140, 165 & n.36, 167-68 &
> n.38, 169 (2d Cir. 2003)).
>
> [*Aslani 2*, footnote 29]  *Cf. also Fulop Family v. US*, No. 90-3294, 919 F.2d 738,
> 1990 WL 198256, *1 (6th Cir. Dec. 10, 1990) (p.c.) (Martin, Jones, D.J. Edgar)
> (affirming, without opinion, the dismissal as frivolous of a complaint alleging
> conspiracy to deprive plaintiffs of their constitutional rights in violation of 42 U.S.C.
> §§ 1981-1985 and 28 U.S.C. §§ 2671-2680 and the UDHR).

*Aslani v. Sparrow Health Sys. et al.*, No. 1:2008-cv-298, 2009 WL 736654, *16-18 (W.D. Mich.

Mar. 12, 2009) (Maloney, C.J.) ("*Aslani 2*").

Aslani's reconsideration brief does not attempt to show that this court's *Aslani 2* analysis of

the count nine international-law claims was palpably defective.  Rather, he merely asks for more

time to conduct research and file a supplemental reconsideration brief on those claims.  *See* Aslani's

Recon. Mot. at 42.  The court denies that request and determines that such an extension would be

futile:  the court finds no precedential case law from the U.S. Supreme Court or the U.S. Court of

Appeals for the Sixth Circuit, issued since *Aslani 2* came out on March 12, 2009, which would alter

this court's conclusion that such claims are not cognizable in an American court.

On the contrary, federal decisions issued after *Aslani 2* continue to emphasize generally that

treaties are not automatically or presumptively judicially enforceable by individuals, and that treaties

and other international agreements are rather presumptively enforceable only by sovereign nations.

*See, e.g., Ayala-Villanueva v. US*, 2009 WL 3443402, *4 (D. Haw. Oct. 23, 2009) (Seabright, J.)

(quoting *Cornejo v. County of San Diego*, 504 F.3d 853, 856 (9th Cir. 2007)) (following unpublished 9th Circuit decision holding that "the only remedies for a violation of the VCCR [Vienna Convention on Consular Relations] are diplomatic, political, or derived from international law" and Supreme Court decision stating that any rights created under the VCCR exist for the benefit of the state, not the individual) (citations omitted); *Abbas v. Dep't of Homeland Security*, 2009 WL 2512844, *2 (W.D. La. Aug. 17, 2009) ("'International agreements, even those directly benefitting private persons, generally do not create private rights or provide for a private cause of action in domestic courts.") (citing RESTATEMENT THIRD OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 907 comment a (1987)) (holding that because United Kingdom had not protested or otherwise brought a claim on behalf of plaintiff British national under an extradition treaty, he could not sue in federal court to redress alleged violation of said treaty); *Yosef v. Killian*, – F. Supp.2d –, –, 2009 WL 2244643, *4 (S.D.N.Y. Aug. 4, 2009) (plaintiff Israeli national could not sue in federal court for specific enforcement of the Convention on the Transfer of Sentenced Persons, even though both Israel and the United States were parties to that treaty); *In re Extradition of Hurtado*, 622 F. Supp.2d 1354 (S.D. Fla. 2009) (John O'Sullivan, U.S.M.J.) (individual could not sue in federal court to enforce provision of International Covenant of Civil and Political Rights which barred trial of person who had already been finally acquitted or convicted of same offense, to prevent his extradition to Peru to face charges of which he had already been acquitted in that country, as ICCPR was non-self-executing and did not give rise to domestically judicially enforceable federal law).

As to Aslani's claim under the UN's Universal Declaration of Human Rights specifically, the court finds no new Supreme Court or Sixth Circuit precedent to rebut the presumption that the rights created by an international treaty (if the UDHR were even a treaty, properly speaking)

"'belong to a state and that a private individual cannot enforce them'", *Renkel*, 456 F.3d at 643 (quoting *Emuegbunam*, 268 F.3d at 389).

As to Aslani's CAT claim specifically, this court remains bound by our Circuit's holding that there is no private "cause of action under the Convention Against Torture because it is not self-executing" and that private individuals have no cause of action under any domestic law implementing the United States' obligations under the Convention, *Renkel*, 456 F.3d at 645, because neither our Circuit sitting *en banc* nor the Supreme Court has disturbed those holdings.

Accordingly, with or without a supplemental reconsideration brief from Aslani, there is no basis for reconsidering the Rule 12(b)(6) dismissal of his international-law claims in count nine.

Lastly, Aslani seeks relief which goes beyond mere reversal of this court's rulings on March 12, 2009 and so are inappropriate on a motion for reconsideration of that order. For example, the reconsideration motion is not a permissible avenue for Aslani to seek entry of default or default judgment against any party, let alone against parties who have been dismissed from the case. *See* Aslani's Recon. Mot. at 4-5 ("On page 7 of the said opinion and order, this Honorable Court erroneously has stated that 'On October 8, 2008, seven defendants filed both an answer [the Lansing Police Department and six Lansing Police Officers, all dismissed from the case by the March 12, 2009 order] to the first amended complaint, and a motion to dismiss (MTD) the first amended complaint; however, as the civil docket in this case would readily attest, the fact of the matter is that to date of this filing the concerned party Defendants have failed to file any answer to the Plaintiff's First Amended Complaint, and thereby for such a failure this Court under Federal Rule of Civil Procedure 12(a)(4)(A) should have entered a default against them.").

## DISCUSSION

### Denial of Aslani's Motion for Extension of Time to File Supplemental Opposition Brief and/or Sur-Reply Brief Opposing the Lansing Police Defendants' Motion to Dismiss

On March 16, 2009 [document #76], this court denied Aslani's motion for an extension of time [document #47] in which to file a response to the Lansing Police Defendants' reply brief in support of their renewed motion to dismiss [document #32]. In other words, Aslani asked for an extension of time in which to file a sur-reply brief. It is well-established that parties do not have a right to file a sur-reply brief, whether under the Federal Rules of Civil Procedure or the Local Civil Rules of our district,[15] and both this court and other federal courts rarely grant leave to file a sur-reply. Nothing in Aslani's motion for reconsideration of the March 16, 2009 persuades the court of the extraordinary proposition that it was a palpable defect for this court, following customary practice, to deny him leave to file a sur-reply brief – particularly because his motion for an extension (and effectively, for leave to file a sur-reply) failed to identify any substantive defects or misrepresentations in the Police Defendants' reply brief which had any bearing on this court's disposition of their motion to dismiss.

Nor did Aslani's motion for an extension identify any new issues, theories or arguments which the Lansing Police Defendants raised for the first time in their reply brief, which is ordinarily the basis for permitting a sur-reply brief. *See Harwood v. US*, 2009 WL 2215080, *6 (**S.D. W.Va.** July 23, 2009) (Vandervort, U.S.M.J.) (adopting party's statement that "'[s]urreplies are generally

---

[15]

*Accord Thompson v. Reynoso*, 2009 WL 1924754, *1 (**E.D. Cal.** July 2, 2009) (Snyder, U.S.M.J.) ("Plaintiff does not have a right to file a sur-reply under the Local Rules or the Federal Rules of Civil Procedure . . . .");

*Roberts v. Salano*, 2009 WL 1514440, *1 n.2 (**E.D. Cal.** May 27, 2009) (Austin, U.S.M.J.) ("[T]here is no right to file a surreply and the Court did not grant leave to file one. Therefore, the surreply is disregarded . . . ."), *R&R adopted*, 2009 WL 2136890 (E.D. Cal July 16, 2009);

not allowed and when allowed only with leave of court for rare circumstances as where a movant improperly raises new arguments in a reply'") (quoting *King v. Knoll*, 399 F. Supp.2d 1169, 1174 (**D. Kan.** 2005) (Robinson, J.)); *Crane v. Mem. Hosp.*, 2009 WL 742567, *4 (**D. Utah** Mar. 20, 2009) ("[S]urreplies . . . are typically not allowed. Instead, surreplies are permitted only in rare cases where a movant improperly raises new arguments in a reply.") (citing *King*, 399 F. Supp.2d at 1174). Therefore, whatever Aslani wished to say in his desired sur-reply brief, he could and should have said in his opposition brief.

The same March 16, 2009 order [document #76] denied Aslani's motion for an extension of time [document #70] in which to file a brief opposing Greyhound's motion to dismiss. Aslani's extension motion had alleged that he did not receive Greyhound's motion to dismiss by mail until well after Greyhound's counsel claimed to have mailed it to him. He seeks reconsideration of this aspect of the March 16, 2009 order as well, and the court again denies reconsideration. Aslani cannot have been prejudiced by the denial of an extension in which to file an opposition to Greyhound's motion to dismiss.

Aslani's amended complaint asserted four claims against Greyhound: counts one, three, five, and nine. Two of the four claims were dismissed for reasons applicable to all defendants: count 3 (state-law false imprisonment) was barred by the applicable Michigan statute of limitations, and count 9 ("international law") asserted CAT and UDHR claims which are not cognizable in American courts. There were, and still are, no precedents supporting Aslani's arguments against the dismissal of those counts, and no number of additional briefs can change that fact.

Likewise, Aslani cannot have been prejudiced by the lack of more time to oppose Greyhound's motion to dismiss count 1 (a claim under section 1981) and count 5 (state-law

intentional infliction of emotional distress), because the court *denied* Greyhound's motion without prejudice as to those two claims.

**ORDER**

Plaintiff's motion for reconsideration of document #75 (*Aslani v. Sparrow Health et al.*, 2009 WL 736654 (W.D. Mich. Mar. 12, 2009)) **[doc. # 101] is DENIED**.[16]

Plaintiff's motion for reconsideration of document #76 (the March 16, 2009 order denying extensions of time for him to file a brief opposing Greyhound's dispositive motion and a sur-reply brief opposing the Lansing Police Defendants' dispositive motion) **[doc. # 103] is DENIED.**

The parties are free to file motions for summary judgment on the remaining claims[17] after the completion of discovery, **no earlier than April 1, 2010.**

This is <u>not</u> a final and immediately appealable order. *See Griffin v. Reznick*, – F. Supp.2d –, 2008 WL 5110528, *10 (W.D. Mich. 2008) (Maloney, C.J.) (citing, *inter alia*, *Tanner Co. v. US*,

---

[16]

These five claims remain dismissed as to all defendants:
~~Count 2        Michigan common-law claim for False Arrest (time-barred)~~
~~Count 3        Michigan common-law claim for False Imprisonment (time-barred)~~
~~Count 4        Michigan common-law claim for Assault & Battery (time-barred)~~
~~Count 6        Michigan common-law claim for Malicious Prosecution (lacks merit)~~
~~Count 9        Claims under Treaty and "International Law" (not cognizable)~~

[17]

These four claims remain extant as to all served defendants other than City of Lansing:
Count 1        Federal civil-rights claim under 42 U.S.C. § 1981
Count 5        Michigan common-law claim for IIED
Count 7        Federal civil-rights claim under 42 U.S.C. § 1983
Count 8        Federal civil-rights claim under 42 U.S.C. § 1985(3)

As to the City of Lansing, only count 5 (IIED) remains.

-38-

575 F.2d 101, 102 (6th Cir. 1978)).[18]

**IT IS SO ORDERED this 3rd day of November 2009.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge

---

[18]

    If Aslani ever appeals the denial of these motion for reconsideration, the denials will be reviewed for abuse of discretion.  *See US v. Lewis*, 166 F. App'x 803, 806 (6th Cir. 2006) (p.c.) (Nelson, Daughtrey, Sutton) (citing *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted))), *reh'g en banc denied* (6th Cir. May 4, 2006).