UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DAVID ASLANI, <br>     Plaintiff, <br><br> v. <br><br> SPARROW HEALTH SYSTEMS, <br> KEN HAMKAMD, individually and as <br> security officer of Sparrow Health System, <br> DENNIS SWAN, individually and as administrator in <br> charge of Sparrow Health System, <br> RICHARD LIEBELT, individually and as <br> registered nurse of Sparrow Health System, <br> RACHEL LATUNSKI, individually and as <br> registered nurse of Sparrow Health System, <br> KARL ENGLER, individually and as <br> registered nurse of Sparrow Health System,[1] <br> GREYHOUND BUS LINES, INC., <br><br> CAPITAL AREA TRANSPORTATION AUTHORITY, <br> JOSEPH M. BECKER, individually & as security officer <br> for the Capital Area Transportation Authority in Mich., <br><br> CITY OF LANSING[2], *et al.*, <br>     Defendants. | Case No. 1:08-cv-298 <br><br> Chief Judge Paul L. Maloney <br><br> Magistrate Judge Ellen Carmody |

---

[1]

    The following four persons are named as parties defendant in the amended complaint, but they have not been served. Accordingly, they will not be listed in the caption until and unless Aslani provides proof that he has effected valid service of process upon them:

    "ED LEWIS, individually and as bus driver of Greyhound Bus Lines, Inc."
    "DR. STEVEN OWENS, individually and as physician of Sparrow Health System"
    "DR. JAMES CAGLE, individually and as physician of Sparrow Health System"
    "MATTHEW FOWLER, individually & as security officer for the Capital Area Transportation Authority in Mich."

[2]

    The court dismissed the LPD because it is not a juridical entity. In its stead, the court substituted the City of Lansing, because both claims against a police department, and official-capacity claims against its employees, are considered claims against the City.

# OPINION AND ORDER
## *"Aslani 4"*

## Denying the Plaintiff's Motions for Reconsideration
## Adhering to Prior Rulings:

Granting the Lansing Defendants' Motion to Dismiss, and Dismissing
Counts 1, 7 & 8 (Federal Claims) and Count 5 (IIED) as to Police Defendants as Untimely;
Counts 2, 3 and 4 (False Arrest, False Imprisonment, A&B) as to All Defendants as Untimely;
Count 6 (Malicious Prosecution) as to All Defendants for Failure to State a Claim;
Count 9 (International Law) for Failure to State a Claim

Denying without prejudice the Sparrow Health Defendants' Motion for Summary Judgment:
Denying Without Prejudice Greyhound's Motion to Dismiss Count 1 (42 USC 1981) and Count 5 (IIED)
Allowing All Parties to File Summary-Judgment Motions After Close of Discovery

Denying Aslani Motion for Extension / Leave to File a Sur-Reply Opposing Police Dispositive Motion;
Denying Aslani Motion for Extension of Time to File Brief Opposing Greyhound's Dispositive Motion

Denying Other Requests that are Inappropriate on Reconsideration or Beyond Court's Jurisdiction

Plaintiff David Aslani ("Aslani"), a naturalized United States citizen who claims Iranian heritage and Muslim faith, brings this federal civil-rights action, with one pendent state-law tort claim remaining. The factual background of Aslani's encounter with employees of defendants Greyhound Bus Lines, Inc. ("Greyhound"), Capital Area Transportation Authority ("CATA"), and Sparrow Health Systems, Inc. ("Sparrow"), their alleged discriminatory and abusive behavior towards Aslani, and Aslani's arrest, are found at *Aslani v. Sparrow Health Sys. et al.*, No. 1:2008-cv-298, 2009 WL 736654, *2-3 (W.D. Mich. Mar. 12, 2009) (Maloney, C.J.) ("*Aslani 2*").

Aslani's amended complaint asserted nine claims. Numerous defendants filed dispositive motions. First, the court dismissed the Lansing Police Department ("LPD") because it is not a juridical entity. *Aslani 2*, 2009 WL 736654 at *13-14. Second, the court dismissed the individual Lansing Police Officers, because all nine claims are meritless or untimely as to them. *Id.* at *7-8. Aslani acknowledged numerous claims were time-barred absent equitable tolling, and this court

determined that he had not shown entitlement to that extraordinary measure. *Id.* at *9-12.

The court dismissed five counts as to all defendants:

– Counts 2-4 (false arrest, false imprisonment, assault & battery) were barred by a Michigan two-year statute of limitations, which will not be equitably tolled here, *id.* at *8.

– Count 6 (malicious prosecution) failed to state a claim on which relief can be granted, as the underlying criminal proceedings did not terminate favorably to Aslani, *id.* at *12-13;

– Count 9 (UN Convention Against Torture & Universal Declaration of Human Rights claims) failed to state a claim on which relief can be granted, because neither the Supreme Court nor our Circuit has held these claims cognizable in American courts, *id.* at *8.

This court held that Aslani could proceed, for the time being, on four claims, all apparently governed by a three-year statute of limitations under Michigan law:

Counts 1, 7 and 8 (civil-rights claims under 42 U.S.C. §§ 1981, 1983, 1985(3));

Count 5 (intentional infliction of emotional distress, IIED), *Aslani 2*, 2009 WL 736654 at *8.


**BACKGROUND**

The court incorporates this summary of the facts and procedural history from *Aslani 2*:

Aslani describes himself as a Muslim and "an Iranian-born naturalized citizen of the United States" who "is olive-skinned and outwardly appears to be of Middle Eastern descent." Aslani had a valid Greyhound bus ticket for a round trip from Detroit to Lansing and back. **On April 1, 2005**, Aslani was attempting to use the return portion of that ticket, going from Lansing to Detroit. Aslani urgently needed to get home because his wife was waiting for him with his blood-pressure medication, which he had forgotten to take with him on the trip.

Aslani approached the Greyhound bus driver, showed him the valid ticket, and, it seems, explained that he needed to get on the next bus, not a later bus, in order to get his medication as soon as possible; Aslani indicated that he would stand in the aisle or "squeeze" himself on a seat with other passengers.

Aslani does not mention whether there was a seat available within the customary, contemplated use of the seats, i.e., with enough room for each person to be reasonably comfortable and not unduly cramped or imposed upon. Nor does he relate

the driver's response, if any, to his request.

While the driver was busy with luggage and talking to other passengers, Aslani boarded the bus and "easily" found a seat. A few minutes later, two City of Lansing police officers boarded the bus, approached Aslani, and "advised him with hostility, anger, and disrespect that he had to get off the bus immediately, otherwise he would be arrested for trespassing." Aslani explained to the police that he had a valid ticket, which he showed them, and that he needed to get back to Detroit urgently to get his blood-pressure medication that he had forgotten to take on the trip, but the police again ordered him to get off the bus or he would be arrested for trespassing, Comp ¶ 8. Aslani claims that he complied and got off the bus. Comp ¶ 9.

Aslani alleges that both Lansing Police Department ("LPD") and Capital Area Transportation Authority ("CATA") security officers directed racial slurs at him, such as "fuckin[g] Arab", while he was at the Greyhound bus terminal. Comp ¶ 11. Aslani alleges that he was then "subjected to monstrous mistreatments, in the form of brutal beating, terrorizing tasering and yes, terrifying torture, with . . . intense cruelty . . . ." Aslani asserts that he was subjected to disparate treatment due to his religion (Islam), as evinced by the fact that CATA or LPD officers told him "pray now" and called him a "fuckin[g] Moslem" while they were beating, throwing, and tasering him, and by the fact that they desecrated his Muslim holy book.

On April 25, 2005, Aslani was charged in the Circuit Court of Ingham County, Michigan, with trespassing, two counts of resisting and obstructing a police officer, and one count of assault and battery, and assigned a court-appointed attorney over his objections. The prosecutor offered a bargain in which Aslani would plead guilty to a simple misdemeanor for trespassing and the State would drop the other charges. Aslani contends that he was wrongfully denied access to surveillance videos from the Greyhound bus terminal, the CATA station, and the Sparrow Hospital emergency room, where he was allegedly "subjected to various savage . . . treatments, including but not limited to, beating, tasering, cathe[te]rization and medical torture, and verbal and physical and psychological abuses."

At a September 2006 state-court hearing, the state prosecutor offered Aslani this deal: plead *nolo contendere* (no contest) to misdemeanor trespassing and misdemeanor resisting and obstructing an officer, and pay a fine up to $200, and in return the prosecution would drop the other charges and vacate the order that had prohibited Aslani from carrying firearms. Comp ¶ 18.

Feeling pressured, Aslani reluctantly accepted the plea bargain because his attorney led him to believe that a no-contest plea was not an admission that he was guilty of committing any offense. Comp ¶¶ 19-21. The Michigan Court of Appeals denied . . . leave to appeal in October 2007, and the Michigan Supreme Court denied review in April 2008, *see People v. Aslani*, 747 N.W.2d 307 (Mich. 2008).

Aslani filed the original complaint in this court on March 31, 2008, one day less than three years after his allegedly false arrest and imprisonment and the other alleged torts of the defendants. The original complaint named four institutional defendants – the LPD, Greyhound, CATA, and Sparrow Health Systems – and no individual defendants.

Before the defendants filed any response to the original complaint, Aslani filed the first amended complaint in July 2008. Because none of the defendants had filed a responsive pleading by that time, Aslani was entitled to amend his complaint once "as of right", i.e., without leave of court or opposing counsel. * * * Accordingly, the court accepted Aslani's amended complaint for filing.

The amended complaint kept the four institutional defendants and added 16 individual defendants: seven alleged employees of Sparrow (doctors, nurses, and administrators), one alleged Greyhound employee (bus driver Ed Lewis), two alleged CATA employees (security officers Fowler and Becker), and six alleged City of Lansing employees (police officers). **The amended complaint asserts three federal claims, five state-law claims, and one claim under international law:**

| | |
|---|---|
| Count 1, Am Comp ¶¶ 29-48 | 42 U.S.C. § 1981 |
| ~~Count 2, Am Comp ¶¶ 49-61~~ | ~~False Arrest~~ |
| ~~Count 3, Am Comp ¶¶ 62-73~~ | ~~False Imprisonment~~ |
| ~~Count 4, Am Comp ¶¶ 74-83~~ | ~~Assault and Battery / Excessive Force~~ |
| Count 5, Am Comp ¶¶ 84-89 | IIED |
| ~~Count 6, Am Comp ¶¶ 90-106~~ | ~~Malicious Prosecution~~ |
| Count 7, Am Comp ¶¶ 107-114 | 42 U.S.C. § 1983 |
| Count 8, Am Comp ¶¶ 115-122 | 42 U.S.C. § 1985(3) |
| ~~Count 9, Am Comp ¶¶ 123-125~~ | ~~UDHR and CAT~~ |

(The claims listed in "strike-through" font are those which the court dismissed as to all defendants. Count 2-4 were untimely as to all defendants, and Counts 6 and 9 lacked merit as to all defendants.)

*Aslani 2*, 2009 WL 736654, *1-3 (record cites omitted, nn. omitted).[3][4] Aslani filed a motion for

---

[3] In October 2008, seven defendants filed both an answer to the amended complaint and a motion to dismiss ("MTD"): the LPD and Police Officers Beasinger, Schlagel, Thielen, and Osborn; Captain Szymanski; and Chief Alley ("the Police Defendants"). This court denied the Police Defendants' dispositive motion without prejudice for failure to comply with LCIvR 7.1(d). *See Aslani v. Sparrow Health Sys.*, 2008 WL 2642617 (W.D. Mich. Oct. 20, 2008) ("*Aslani 1*").

[4] In his briefs opposing the Police Defendants' dispositive motion, Aslani sought Rule 11

reconsideration, and the court directed defendants to file response briefs; after considering the briefs, the court denied Aslani's motion for reconsideration of *Aslani 2*. *See Aslani v. Sparrow Health dys et al.*, No. 1:08-cv-298, 2009 WL 3711602 (W.D. Mich. Nov. 3, 2009) (Maloney, C.J.) ("*Aslani 3*").

**Appeal from Magistrate Order #183 (November 30, 2009) re: Economy Deposition**

On September 2, 2009, plaintiff obtained a subpoena to depose Judge R. George Economy of the Ingham County, Michigan Probate Court. *See* Magistrate Judge Order of Nov. 30, 2009 (Doc 183) at 2. The subpoena also included the broad directive to

> produce and permit inspection and copying of the following documents . . . Each and all notes, documents and information available through any media, be it in print, audio, and/or video, relative to each and all of your activities, functions, duties, privileges, rewards [sic], and the like, as a member of the 2009 Sparrow Helath Regional Advisory Committee and as the member of other cfommittee(s) and the like concerning Sparrow Health System, City of Lansing, Lansing Police Department, and Capital Area Transportation Authority since the date of your membership(s) to the present time.

Doc 183 at 2 (quoting Doc 153, Ex A). Defendant Sparrow Health moved to quash, contending that Aslani seeks to depose Judge Economy not for his stated reason – because Economy is on the advisory committee for one of the institutional/corporate defendants – but for the improper purpose of retaliating for Economy's rulings in a probate matter where Aslani was or is a party. By order dated November 30, 2009 [Doc 183], the Magistrate quashed the deposition subpoena. After rejecting Aslani's argument that Sparrow lacked standing to challenge the deposition subpoena, *see* Doc 183 at 3, the Magistrate's order to quash stated as follows:

---

sanctions against them. This court denied Aslani's request for sanctions, *see Aslani 2,* 2009 WL 736654 at *6-7, and he did not seek reconsideration of that ruling.

> Federal Rule of Civil Procedure 45 provides that the issuing court "must" quash or modify a subpoena that "subjects a person to undue burden."
>
> Whether a subpoena subjects a witness to undue burden "usually raises a question of the reasonableness of the subpoena." Wright and Miller Federal Practice and Procedure § 2463.1. Reasonableness, in turn, is assessed by balancing "the interests served by demanding compliance with the subpoena against the interests served further by quashing it; this process of weighing a subpoena's benefits and burdens calls upon the trial court to consider whether the information is necessary and whether it is available from any other source." *Id.*
>
> The Court finds that the subpoena in question is absolutely unreasonable. Plaintiff has failed to demonstrate that Judge Economy possesses *any* relevant knowledge concerning the claims in this matter or the events giving rise to such. Plaintiff allegedly seeks to depose Judge Economy because of his participation in the 2009 Sparrow Regional Health Advisrory Committee. However, the actions giving rise to the present action occurred in 2005. The Court discerns no rational connection between Judge Economy'sparticipation, in 2009, on [the] Advisory Committee and the events giving rise to Plaintiff's claims.
>
> The Court further finds no likelihood that deposing Judge Economy would reasonably lead to the discovery of any relevant or admissible evidence. The document request that accompanies the subpoena in question likewise requests documents that are irrelevant in this matter. The Court further finds that Plaintiff's document request, almost limitless in nature, is unreasonable, oppressive, and unduly burdensome. Moreover, even if the Court were to assume that a member of the 2009 . . . Committee possessed any information relevant in this matter, Plaintiff has not demonstrated why such must be obtained from a judge who presides over a probate court matter in which Plaintiff is an interested party, as opposed to any of the other members of the 14-member committee. In sum, the interests served by quashing the subpoena *far* outweigh the interests served y permitting such.

Doc 183 at 3-4 (italics in original). In his appeal from this order, Aslani notes that he timely and properly served the subpoena on Judge Economy at 2:00 in the afternoon; that he offered him a $70 money order to compensate for his travel and other appearance expenses; and that he is in ill health and suffered "severe privation" in arranging the deposition and service of the subpoena, and has been hospitalized a number of times for dangerously high blood pressure caused by his injuries from the instant incident and due to the conduct of some of defense counsel, *see* Aslani App from Doc 183

at 3-4. These facts have no bearing on the likelihood that Economy would have relevant information, let alone on Aslani making a showing that he could not realistically obtain that information from other sources who do not happen to be sitting judges (and sitting judges presiding over matters in which he is a party, at that). Nor does Aslani show any defect in the Magistrate's order quashing the subpoena merely by speculating that Sparrow's counsel filed the motion to quash because they were intentionally malicious given his dire medical condition and the stress he was experiencing. *See* Aslani App from Doc 183 at 4 and 5-6.

Aslani's first appeal next complains about Sparrow's conduct in discovery, *see* Aslani App from Doc 183 at 4-5 and n.1, but this appeal is not an appropriate vehicle for such complaints. Aslani should file a separate motion to compel discovery if he has sound basis under the law for believing that such a motion is necessary to induce defendants to disclose information to which he is entitled under the Federal Rules of Civil Procedure

Aslani next complains that Sparrow did not consult him to seek concurrence in the motion to quash it before filing it, as required by our local Civil Rule 7.1(d). *See* Aslani's App from Doc 183 at 6and 12. Even if this is accurate, the court will not disturb the Magistrate's well-reasoned order and deny or dismiss a motion (Sparrow's motion to quash) which has already been found meritorious, and which Aslani has had an opportunity to address in filings with this court.

Aslani expresses disagreement with the Magistrate's ruling that Sparrow had standing to move to quash the deposition subpoena aimed at Judge Economy, *see* Aslani's App from Doc 183 at 6-11, but he does so unpersuasively. *See* Aslant's Opp from Doc 183 at 7-11. In any event, as the Magistrate correctly noted, the court has the inherent authority on its own initiative to prevent abusive or inappropriate discovery practices, and the court approves of the Magistrate's invocation

and use of that inherent authority as an alternative to relying on Sparrow's motion to quash.

Finally, Aslani's appeal fails to show that the Magistrate made any clearly erroneous factual finding or any legal determination contrary to law in concluding that Aslani did not show he could not obtain the alleged information from some other advisory committee member or some other source entirely. Rather than provide some logical reason to believe that Economy had some peculiar knowledge or information relevant to the year-2005 events at issue in this lawsuit when compared to other advisory committee members or other sources at Sparrow, Aslani simply asserts as follows:

> [To] make her point in denying the Plaintiff's legitimate right to depose the Deponent, who had been subpoenaed quite lawfully, the magistrate judge has argued that all of the fourteen Members of the Regional Advisory Committee, including Judge Economy and the Chief of the Lansing Police Department and all of the other twelve members have the same knowledge and information about the Defendant Sparrow Health System (please see p4 of Dkt. 183) Then the provocative question becomes: Why fourteen members and why not just one member? Are the thirteen members of the Regional Advisory Committ redundant?
>
> Be that as it may, the Plaintiff has the right to depose even a judge who apparently has been chosen as a member of its said committee for his legal knowledge and expertise thereof. It is of note that the plaintiff being Iranian-born or Moslem or Arab-looking is not required under the law to reveal his deposition questions to the opposition before deposing any deponent in this case!

Aslani App from Doc 183 at 11. Aslani also complains that the Magistrate did not know whether Economy was serving on the Sparrow Advisory Committee back in 2005, when the incident at issue in this lawsuit occurred. But Aslani makes no attempt to show that Economy was on the committee in 2005, let alone the more important showing that, whenever Economy was on the committee, it is necessary to depose him specifically rather than some other member of the committee or some other source entirely.

Overall, Aslani fails to provide any basis for disturbing the Magistrate's November 30, 2009 ruling even under a *de novo* standard, let alone the very deferential standard of review which governs

a Magistrate's rulings on nondispositive matters.

**Appeal from Magistrate Order #184 (December 7, 2009) Re: Protective Order**

By order dated December 7, 2009 [Doc 184], the Magistrate Judge denied Aslani's motion for entry of an order approving of his proposed stipulated protective order [Doc 126]. The Magistrate Judge cogently explained as follows:

> The claims asserted by the plaintiff in this matter implicate his medical condition. Accordingly, the Court instructed the parties to jointly draft and enter a protective order concerning the discovery of Plaintiff' medical records. Defendants drafted a proposed protective order which Plaintiff subsequently rejected. Plaintiffs then drafted a proposed protective order which Defendants rejected. Plaintiff now requests that the Court approve and enter his proposed protective order.
>
> Plaintiff's proposed protective order is inappropriate for several reasons. The most significant deficiency therein relates to Plaintiff's assertion that Defendants are entitled to discover "only the germane medical records of the Plaintiff." It is clear from Plaintiff's pleadings that he considers himself the only individual qualified to determine which medical records are "germane." Plaintiff's proposed language will certainly result in additional discovery disputes which only serve to further waste this Court's limited resources.
>
> Plaintiff's proposal also provides that Defendants may divulge his medical records only to "professionals . . . who have reputations in honesty and integrity in their fields of expertise." This language is unnecessary and simply invites Plaintiff to further hinder the discovery process by challenging the professionalism and/or honesty of the individuals that Defendants seek to employ in this matter. In sum, Plaintiff's proposed protective order is unacceptable. Accordingly, Plaintiff's motion is denied.
>
> Furthermore, the Court finds that that the proposed protective order drafted by Defendants, (dkt. #131, exhibit A), is appropriate and sufficiently protects Plaintiff's legitimate privacy interests. Accordingly, the Court orders Plaintiff to accept Defendants' proposed protective order. Plaintiff is hereby ordered to agree to the entry of this protective order (or any other protective order to which the parties all stipulate no later than December 14, 2009). Should Plaintiff fail to comply with this order, the undersigned will enter a Report and Recommendation that Plaintiff's claims be dismissed for failure to prosecute and failure to cooperate in discovery.

**Magistrate Judge Order of Dec. 7, 2009 (Doc 184)** at 1-2 (paragraph break added).

**In his appeal from this order, Aslani** devotes much space to matters that have no bearing on the propriety of defendants' proposed protective order (which the Magistrate was to issue if the parties did not file a different jointly stipulated protective order): the Magistrate's alleged personal bias and animus, Aslani's dissatisfaction with how quickly the Magistrate conducted proceedings and ruled on his protective-order motion, Aslani's dissatisfaction with how long it took for the Clerk's Office to mail the Magistrate's instant order to him, whether he was accorded enough time to file objections or an appeal, and Aslani's belief that the defendants and their attorneys personally hate him and intend to harass him at every opportunity. *See* Plaintiff David Aslani's Brief in Support of Appeal from Magistrate Judge's Order of December 7, 2009, Document Number 184 ("Aslani App from Doc 184") at 1-3 and 5; *see* Plaintiff David Aslani's Reply Brief in Support of Appeal from Magistrate Judge's Order of December 7, 2009 ("Aslani's Reply for App from Doc 184") at 1-3.

Aslani next notes that the Defendants' proposed protective order (which the Magistrate presumptively intends to enter) has typographical errors, refers to this court as a circuit instead of district court, misstates the middle initial of this judge, and misstates or mis-spells party and attorney names. *See* Aslani App from Doc 184 at 3; *see also* Aslani's Reply for App from Doc 184 at 3-4. If such errors exist, obviously they should and can be readily corrected before the Magistrate enters the Defendants' proposed order; they do not constitute or evidence any error in her decision to adopt that order as appropriate for its purposes.

**Aslani next complains that the protective order should require the defendants to return medical records to him by certified mail, instead of regular first-class U.S. mail.** *See* **Aslani**

**App from Doc 184 at 3-4. The court agrees with Aslani that this measure is appropriate to safeguard Aslani's privacy with such sensitive medical and personal information.** *See, e.g., Samuels v. Heckler*, 668 F. Supp. 656 (W.D. Tenn. 1986) (McRae, J.) (specifically requiring that class members be sent notice by certified mail); *Fleet Aerospace Corp. v. Holderman*, 637 F. Supp.2d 742, 748 n.6 (S.D. Ohio 1986) (Holschuh, J.). And, in the context of litigation costs and ordinary costs of business postage, it should not prove unduly costly for a single individual's medical records to be mailed by certified mail within the continental United States (perhaps entirely within Michigan).

Aslani takes offense at the Magistrate's "unwarranted" and "abusive" comment that he apparently "considers himself the only individual qualified to determine which medical records are germane." *Id.* at 4. The court finds no legal error in this comment, and notes Aslani's acknowledgement that the court and not he will decide which medical records are relevant. *Id.* at 4. There is no legal or factual error in the Magistrate entering a protective order which does not expressly mention "germane" or "relevant" as qualifers for "medical records." If Aslani receives a discovery request which he believes is asking for irrelevant medical records or is otherwise inappropriate or unduly burdensome under the Federal Rule of Civil Procedure, he remains free to file a motion with the court seeking leave not to comply with the request.

Aslani also complains about the Magistrate's ruling quashing this intended deposition of Geoge Economy (who is apparently a member of the Regional Advisory Committee of the defendant Sparrow Health Systems, and also a sitting judge), and about the alleged deceptive and fraudulent practices employed by defense counsel and the Lansing Chief of Police with regard to the deposition of Economy and allegedly the Chief of Police. *See* Aslani App from Doc 184 at 4-5. That is the

subject of a different Magistrate order and a different Aslani appeal, *see infra*.

On the merits of the protective-order dispute, Aslani explains that he proposed the language requiring his records to be disclosed only to medical "professionals . . . who have reputations in honesty and integrity in their fields of expertise" because of his harrowing experience being "barbarously . . . tortured and abused" by Sparrow and its security staff and healthcare providers. *See* Aslani App from Doc 184 at 5. This court agrees with the Magistrate that inserting such qualifying language is not necessary to protect Aslani's privacy and dignity, and would invite and almost guarantee discovery disputes which would add delay, cost, and inefficiency to these proceedings.

Finally, the court rejects Aslani's request for additional days *now* in which to file his briefs in the instant two appeals. *See* Aslani App from Doc 184 at 5-6. If Aslani truly had additional argument, authority, or evidence that he could have mustered in these appeals if afforded only a few more days more, he could and should have proven that by submitting it (or seeking permission to submit it) within some reasonable time after he did file his appeals. Granting Aslani a retroactive "extension" of nominally "several days" would effectively give him an extension lasting many weeks (all the weeks between the date he believes should have been the deadline for his appeals, and today). Nor does the court have any reason to believe that additional evidence or argument in support of specious, irrelevant, or meritless assignments of error would make them any less specious, irrelevant or meritless.

Moreover, it was plaintiff's choice to provide the court with a post office box address (which one might not check every day) instead of a home street address (where one presumably ordinarily would receive mail every day). The Sparrow defendants reason persuasively as follows:

> A first response is that, according to electronic filing notices served by the court, the Order was sent to plaintiff on December 8, 2009, the day after it was entered. There is no realistic argument that this was anything other than timely served. * * *
>
> The Court should also note that Plaintiff has failed to provide any proof that he did not receive the order until December 12. Given that it was mailed on December 8, the most logical explanation for Plaintiff's failure to timely receive it is his failure to check the post office box which he has provided to the court for service. It takes no specialized knowledge or expertise to recognize that, in the ordinary course of business, it would not take four days for mail to travel from the Court [in Kalamazoo, southwestern Michigan] to Plaintiff [in eastern Michigan]. Further, given Plaintiff's repeated resort to this excuse in the past, his current argument can only be valid if one is to accept the premise that, for some unknown reason, the postal service chooses to regularly delay deliver[y] of Plaintiff's mail. As there is no realistic possibility that this has occurred, the only plausible explanation which remains is that Plaintiff simply does not pick up his mail in a timely fashion.

Defs' Response to Aslani App from Doc 184. And it was also plaintiff's choice to refuse to provide the court with an e-mail address. The Sparrow defendants point out that "[t]he Court has previously warned Plaintiff that, if he refuses to provide a means of electronic service, his complaints about untimely service will lack credibility and will not serve as a basis for relief." Defs' Response to Aslani App from Doc 184.[5]

---

[5]

The Sparrow defendants contend that Aslani should be sanctioned for resisting reasonable requests, flagrantly disobeying court orders, and repeatedly insulting the court, the defendants, and defense counsel; they suggest dismissal of the entire action would be an appropriate sanction. *See* Sparrow's Response to Aslani App from Doc 183 at 7-8; *see also* Sparrow's Response to Aslani app from Doc 1834at 7-8. An appeal from a ruling regarding a protective order is an appropriate vehicle for a sanctions request. Sparrow remains free to file a separate motion for sanctions, supported by legal authority, if it wishes.

Conversely, Aslani's reply brief raises concerns about the compromise of his privacy by the fact that the medical records often contain his social security number and birthdate. *See* Aslani's Reply for App from Doc 184 at 6-7. For one thing, Aslani did not raise this issue in his opening brief on appeal, and this court ordinarily does not entertain arguments raised for the first time in a reply brief. *See US v. Lockett*, No. 07-6403, – F. App'x –, 2009 WL 5084096, *14 (6th Cir. Dec. 29, 2009) (C.J. Batchelder, Gibbons, <u>Chief D.J. Maloney</u>) ("'This argument was raised or the first time in Oracle's reply brief, and *this court has consistently held that we will not consider such arguments*.'") (quoting *American Trim, LLC v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004)

**ORDER**

Plaintiff's appeal **[document #185] is DENIED.**

The Magistrate Judge's order of November 30, 2009 (quashing plaintiff's proposed deposition of Judge George Economy) **[document #183] is AFFIRMED**.

Plaintiff's appeal **[document #186] is DENIED.**

The Magistrate Judge's order of December 7, 2009 (denying plaintiff's motion for entry of his proposed protective order) **[document #184] is AFFIRMED** with one modification:

– when a defendant returns medical records to Aslani following the termination of that defendant's involvement as a party in the case, the defendant must send the records to Aslani by *certified* U.S. Postal mail.

This is <u>not</u> a final and immediately appealable order. *Griffin v. Reznick*, 2008 WL 5110528, *10 (W.D. Mich. 2008) (citing, *inter alia*, *Tanner Co. v. US*, 575 F.2d 101, 102 (6th Cir.

---

(citation omitted)). Moreover, the appeal from the protective-order ruling is not a proper vehicle to resolve this issue; Aslani remains free to file a redaction motion with the Magistrate or potentially negotiate redaction with the defense counsel.

Finally, Aslani asks the magistrate judge to *sua sponte* recuse herself because of her alleged bias and personal animosity towards him. *See* Aslani Reply for App from Doc 183 at 4. Again, a purported appeal from specific rulings regarding a quashed deposition and a protective order, is not the proper vehicle for recusal requests. Such requests should be made by separate motion, and should state the statutory or other authority for requesting recusal. *See generally Creusere v. Weaver*, 2009 WL 170667, *4 (6th Cir. Jan. 26, 2009) (<u>Gibbons</u>, Cook, D.J. Steeh) (for recusals *not* based on allegation of personal bias/prejudice per 28 U.S.C. § 144, the standard of *Armco, Inc. v. United Steelworkers of America*, 280 F.3d 669 (6th Cir. 2002), and stating, "Recusal is an objective standard and is not based on the subjective viewpoint of a party.") (citing *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989)), *cert. denied*, – U.S. –, 130 S.Ct. 278, *reh'g denied*, – U.S. –, 130 S.Ct. 791 (2009). *See, e.g., In re Saffady*, 524 F.3d 799, 805 (6th Cir. 2008) (discussing recusal for personal bias under 28 U.S.C. § 144), *reh'g & reh'g en banc denied* (6th Cir. July 15, 2008).

1978)).[6]

  **IT IS SO ORDERED this   18th   Day of February 2010.**

                /s/ Paul L. Maloney
                Honorable Paul L. Maloney
                Chief United States District Judge

---

[6] If Aslani ever appeals the denial of these motion for reconsideration, the denials will be reviewed for abuse of discretion. *See US v. Lewis*, 166 F. App'x 803, 806 (6th Cir. 2006) (p.c.) (Nelson, Daughtrey, Sutton) (citing *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted))), *reh'g en banc denied* (6th Cir. May 4, 2006).