UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| |
| --- |
| DAVID ASLANI, |
|     Plaintiff, |
| |
| v. |
| |
| SPARROW HEALTH SYSTEMS, |
| KEN HAMKAMD, individually and as |
| security officer of Sparrow Health System, |
| DENNIS SWAN, individually and as administrator in |
| charge of Sparrow Health System, |
| RICHARD LIEBELT, individually and as |
| registered nurse of Sparrow Health System, |
| RACHEL LATUNSKI, individually and as |
| registered nurse of Sparrow Health System, |
| KARL ENGLER, individually and as |
| registered nurse of Sparrow Health System, |
| DR. STEVEN OWENS, |
| individually and as physician of Sparrow Health System,[1] |
| |
| GREYHOUND BUS LINES, INC., |
| |
| CAPITAL AREA TRANSPORTATION AUTHORITY, |
| JOSEPH M. BECKER, individually & as security officer |
| for the Capital Area Transportation Authority in Mich., |
| MATTHEW FOWLER, individually & as security officer |
| for the Capital Area Transportation Authority in Mich., |
| |
| and CITY OF LANSING, |
| |
|     Defendants. |

Case No. 1:08-cv-298

Chief Judge Paul L. Maloney

Magistrate Judge Ellen Carmody

## OPINION AND ORDER
*" Aslani 5 "*

Affirming Magistrate Judge's Order of January 8, 2010 (Doc. 200) over Plaintiff's Appeal
(granting in part and denying in part plaintiff's motion to extend the time for expert discovery)

---

[1] The following are named as defendants in the amended complaint but have not been served, so they are not listed in the caption: "ED LEWIS, individually and as bus driver of Greyhound Bus Lines" and "DR. JAMES CAGLE, individually and as physician of Sparrow Health System."

Plaintiff David Aslani brings this federal civil-rights action claiming hat he was subjected to discriminatory and abusive behavior by employees of defendants Greyhound Bus Lines, Inc. ("Greyhound"), Capital Area Transportation Authority ("CATA"), and Sparrow Health Systems, Inc. ("Sparrow"). Aslani's amended complaint asserted nine claims, but only four survived dispositive motions. The court substituted the City for the LPD, *id.* at *13-14, and dismissed the police officers because all claims were meritless or untimely as to them. *Id.* at *7-8. Aslani acknowledged numerous claims were time-barred absent equitable tolling, and he did not show that he was entitled to tolling. *Id.* at *9-12. **The court dismissed five counts as to all defendants:**

– Counts 2-4 (false arrest, false imprisonment, assault & battery) were barred by a Michigan two-year statute of limitations, which will not be equitably tolled here, *id.* at *8.

– Count 6 (malicious prosecution) failed to state a claim on which relief can be granted, as the underlying criminal proceedings did not terminate favorably to Aslani, *id.* at *12-13;

– Count 9 (UN Convention Against Torture & Universal Declaration of Human Rights claims) failed to state a claim on which relief can be granted, because neither the Supreme Court nor our Circuit has held these claims cognizable in American courts, *id.* at *8.

This court held that Aslani could proceed, for the time being, on four claims, all apparently governed by a three-year statute of limitations under Michigan law:

Counts 1, 7 and 8 (civil-rights claims under 42 U.S.C. §§ 1981, 1983, 1985(3));

Count 5 (intentional infliction of emotional distress, IIED), *Aslani 2*, 2009 WL 736654 at *8.


**BACKGROUND**

The court incorporates this summary of the facts and procedural history from *Aslani 2*:

Aslani describes himself as a Muslim and "an Iranian-born naturalized citizen of the United States" who "is olive-skinned and outwardly appears to be of Middle Eastern descent." Aslani had a valid Greyhound bus ticket for a round trip from Detroit to Lansing and back. **On April 1, 2005**, Aslani was attempting to use the return portion of that ticket, going from Lansing to Detroit. Aslani urgently needed to get home because his wife was waiting for him with his blood-pressure medication, which he had forgotten to take with him on the trip.

Aslani approached the Greyhound bus driver, showed him the valid ticket, and, it seems, explained that he needed to get on the next bus, not a later bus, in order to get his medication as soon as possible; Aslani indicated that he would stand in the aisle or "squeeze" himself on a seat with other passengers.

Aslani does not mention whether there was a seat available within the customary, contemplated use of the seats, i.e., with enough room for each person to be reasonably comfortable and not unduly cramped or imposed upon. Nor does he relate the driver's response, if any, to his request.

While the driver was busy with luggage and talking to other passengers, Aslani boarded the bus and "easily" found a seat. A few minutes later, two City of Lansing police officers boarded the bus, approached Aslani, and "advised him with hostility, anger, and disrespect that he had to get off the bus immediately, otherwise he would be arrested for trespassing." Aslani explained to the police that he had a valid ticket, which he showed them, and that he needed to get back to Detroit urgently to get his blood-pressure medication that he had forgotten to take on the trip, but the police again ordered him to get off the bus or he would be arrested for trespassing, Comp ¶ 8. Aslani claims that he complied and got off the bus. Comp ¶ 9.

Aslani alleges that both Lansing Police Department ("LPD") and Capital Area Transportation Authority ("CATA") security officers directed racial slurs at him, such as "fuckin[g] Arab", while he was at the Greyhound bus terminal. Comp ¶ 11. Aslani alleges that he was then "subjected to monstrous mistreatments, in the form of brutal beating, terrorizing tasering and yes, terrifying torture, with . . . intense cruelty . . . ." Aslani asserts that he was subjected to disparate treatment due to his religion (Islam), as evinced by the fact that CATA or LPD officers told him "pray now" and called him a "fuckin[g] Moslem" while they were beating, throwing, and tasering him, and by the fact that they desecrated his Muslim holy book.

On April 25, 2005, Aslani was charged in the Circuit Court of Ingham County, Michigan, with trespassing, two counts of resisting and obstructing a police officer, and one count of assault and battery, and assigned a court-appointed attorney over his objections. The prosecutor offered a bargain in which Aslani would plead guilty to a simple misdemeanor for trespassing and the State would drop the other charges.

Aslani contends that he was wrongfully denied access to surveillance videos from the Greyhound bus terminal, the CATA station, and the Sparrow Hospital emergency room, where he was allegedly "subjected to various savage . . . treatments, including but not limited to, beating, tasering, cathe[te]rization and medical torture, and verbal and physical and psychological abuses."

At a September 2006 state-court hearing, the state prosecutor offered Aslani this deal: plead *nolo contendere* (no contest) to misdemeanor trespassing and misdemeanor resisting and obstructing an officer, and pay a fine up to $200, and in return the prosecution would drop the other charges and vacate the order that had prohibited

Aslani from carrying firearms. Comp ¶ 18.

Feeling pressured, Aslani reluctantly accepted the plea bargain because his attorney led him to believe that a no-contest plea was not an admission that he was guilty of committing any offense. Comp ¶¶ 19-21. The Michigan Court of Appeals denied . . . leave to appeal in October 2007, and the Michigan Supreme Court denied review in April 2008, *see People v. Aslani*, 747 N.W.2d 307 (Mich. 2008).

Aslani filed the original complaint in this court on March 31, 2008, one day less than three years after his allegedly false arrest and imprisonment and the other alleged torts . . . . The original complaint named four institutional defendants – the LPD, Greyhound, CATA, and Sparrow Health Systems – and no individual defendants.

\* \* \* Aslani filed the first amended complaint in July 2008. Because none of the defendants had filed a responsive pleading by that time, Aslani was entitled to amend his complaint once "as of right", i.e., without leave of court or opposing counsel. \* \* \* Accordingly, the court accepted Aslani's amended complaint for filing.

The amended complaint kept the four institutional defendants and added 16 individual defendants: seven alleged employees of Sparrow (doctors, nurses, and administrators), one alleged Greyhound employee (bus driver Ed Lewis), two alleged CATA employees (security officers Fowler and Becker), and six alleged City of Lansing employees (police officers). **The amended complaint asserts three federal claims, five state-law claims, and one claim under international law:**

| | |
|---|---|
| Count 1, Am Comp ¶¶ 29-48 | 42 U.S.C. § 1981 |
| ~~Count 2, Am Comp ¶¶ 49-61~~ | ~~False Arrest~~ |
| ~~Count 3, Am Comp ¶¶ 62-73~~ | ~~False Imprisonment~~ |
| ~~Count 4, Am Comp ¶¶ 74-83~~ | ~~Assault and Battery / Excessive Force~~ |
| Count 5, Am Comp ¶¶ 84-89 | IIED |
| ~~Count 6, Am Comp ¶¶ 90-106~~ | ~~Malicious Prosecution~~ |
| Count 7, Am Comp ¶¶ 107-114 | 42 U.S.C. § 1983 |
| Count 8, Am Comp ¶¶ 115-122 | 42 U.S.C. § 1985(3) |
| ~~Count 9, Am Comp ¶¶ 123-125~~ | ~~UDHR and CAT~~ |

*Aslani 2*, 2009 WL 736654, \*1-3 (record cites omitted, nn. omitted).[2] The court denied Aslani's motion for reconsideration. *See Aslani v. Sparrow Health dys et al.*, No. 1:08-cv-298, 2009 WL 3711602 (W.D. Mich. Nov. 3, 2009) (Maloney, C.J.) ("*Aslani 3*").

---

[2] In October 2008, seven defendants filed both an answer to the amended complaint and a motion to dismiss ("MTD"): the LPD and Police Officers Beasinger, Schlagel, Thielen, and Osborn; Captain Szymanski; and Chief Alley ("the Police Defendants"). This court denied the Police Defendants' dispositive motion without prejudice for failure to comply with LCIVR 7.1(d). *See Aslani v. Sparrow Health Sys.*, 2008 WL 2642617 (W.D. Mich. Oct. 20, 2008) ("*Aslani 1*").

### *Aslani 4*: **Appeals from Magistrate Order #183 (Nov. 30, 2009) and #184 (Dec. 6, 2009)**

Plaintiff obtained a subpoena to depose Judge Economy of the Ingham County Probate Court. *See* Magistrate Judge Order of Nov. 30, 2009 (Doc 183) at 2. The subpoena directed Economy to

> produce and permit inspection and copying of . . . all notes, documents and information available through any media . . . relative to each and all of your activities, functions, duties, privileges, rewards, and the like, as a member of the 2009 Sparrow Health Regional Advisory Committee and as the member of other committee(s) and the like concerning Sparrow Health System, City of Lansing, [LPD], and [CATA] since the date of your membership(s) to the present time.

Doc 183 at 2 (quoting Doc 153, Ex A). Sparrow Health moved to quash, contending that Aslani seeks to depose Economy not for his stated reason – because Economy is on an advisory committee for one of the institutional defendants – but for the improper purpose of retaliating for Economy's rulings in a probate matter where Aslani was or is a party. By order dated November 30, 2009, the Magistrate quashed the subpoena as unduly burdensome, *see* Doc 183, and Aslani appealed. After considering briefs – including a reply and a "supplement" from Aslani, this court affirmed. *See Aslani v. Sparrow Health Systems et al.*, No. 1:2008-cv-298, 2010 WL _____ (W.D. Mich. Feb. 18, 2010) (Maloney, C.J.) ("*Aslani 4*"). Aslani also appealed from the Magistrate's December 7, 2009 Order [Doc 184] declining to enter his proposed protective order and directing him to accept the defendants' proposal instead. After considering briefs – including a reply and "supplement" from Aslani – this court affirmed (with one very minor modification not relevant here). *Id.* at *_____.

### *Aslani 5*: **Plaintiff Now Appeals from Magistrate Order #200 (Jan. 8, 2010)**

The Magistrate's June 2009 scheduling order (Doc 111) required plaintiff to identify his expert witnesses by December 31, 2009 and the defendants to identify theirs by January 31, 2010. On December 29, 2009, Aslani moved to extend his expert-identification deadline by four months,

until April 30, 2010; the Magistrate extended that deadline by about three weeks for each side: Aslani had to identify his experts by January 22, 2010 and the defendants had to identify their experts by February 22, 2010. The court finds the Magistrate's reluctance to grant a longer extension understandable, given that, as the Magistrate noted, Aslani had known for about six months that he had to identify all his experts by the end of 2009, and he has not identified any valid reason for needing an additional four months beyond that to accomplish the task.[3]

Aslani's appeal brief still does not identify any facts which make the Magistrate's refusal to further extend the expert-discovery period reversible error. He alleges that he "has been suffering of late from a stroke," *see* Appeal (Doc 200) at 2, yet it appears that he did not present actual medical evidence or physician documentation to verify the occurrence of a stroke (transient ischemic attack), let alone competent medical opinion as to the nature and extent of the relevant physical and/or mental limitations which the stroke's effects imposes on him. Aslani also mentions his hypertension, but again it appears that he did not submit to the Magistrate any medical documentation or competent medical expert opinion as to any relevant physical and/or mental limitations which the hypertension effects imposes on him. In any event, it is Aslani who chose to file this lawsuit *pro se*, and our Circuit holds that "'[a] willfully unrepresented plaintiff volitionally assumes the risk and accepts the hazards that accompany self-representation.'" *Zanke-Jodway v. Capital Consultants, Inc., et al.* No. 1:2008-cv-930, 2010 WL _____, *___ (W.D. Mich. Feb. ____, 2010) (Maloney, C.J.) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) (citing *McNeil v. US*, 508 U.S. 106, 113 (1993) (unanimous))).

Aslani makes several other statements which do nothing to advance his contention that the Magistrate committed reversible error in granting an expert-discovery extension far shorter than the

---

[3]Aslani did file a supplemental identification of experts on the extended deadline, January 22, 2010, *see* Doc 202.

four-month extension he sought. First, he charges that the Magistrate "acts in mysterious and prejudicial ways against the Plaintiff's established rights", Doc 200 at 2, a charge he has made frequently in his filings in this case, often citing merely Magistrate rulings which were adverse to Aslani's legal position on an issue.

Second, Aslani complains that the Magistrate (actually, the Clerk's Office at our Grand Rapids courthouse) was dilatory and in violation of Fed. R. Civ. P. 77(d)(1)'s requirement that the court immediately notify all non-defaulted parties of a ruling, because the order on appeal was issued January 8, 2010 but not mailed until January 11, 2010, *see* Doc 200 at 2 with n.2 (citing Ex A) and *id.* at 3. Aslani conveniently neglects to mention, however, that January 8 was a Friday, meaning that the Clerk's Office mailed the order on the first court-business day after the Magistrate issued it; nor does Aslani explain how this alleged delay prejudiced him, as he filed this appeal and this court treated it as timely and is considering its merits. Moreover, if Aslani is dissatisfied with the time that it takes for court orders and opinions to reach him by U.S. paper mail, he can simply provide the court with an e-mail address, which would enable him to receive same-day electronic notification that an order or opinion has been issued and is available for viewing and printing on the court's Electronic Case Filing ("ECF") system. Because Aslani has for some reason chosen not to provide an e-mail address, he must live with the obvious consequence that the court must send orders and opinions to him by paper mail. Aslani also alleges that defense counsel typically serve their filings on him in "dilatory" fashion (Doc 200 at 3), which, even if true, has no bearing on whether the Magistrate committed reversible error in denying most of his requested expert-discovery extension.

Third, Aslani repeats the allegation from his complaint that "some of the defendants have subjected the Plaintiff to barbarous and monstrous abuses, such as savage beatings and brutal torturesand vicious tasering, and thereby had committed hate crimes, and they had intended even to

murder him in cold blood." Doc 200 at 3. But this allegation goes to the merits of Aslani's claims, not the propriety of the Magistrate's partial denial of his expert-discovery extension motion.

**Aslani also complained about being required to identify his experts before the defendants identify theirs.** *See* Doc 189. As for the sequence of expert identifications, the Magistrate accurately explained that this sequence is customary and logical, because the defense experts typically are called upon to rebut evidence, opinions, or theories which are first raised by the plaintiff. This is widespread practice in our district and elsewhere in the federal judicial system – not, as Aslani charges, the Magistrate's "personally tailored custom" (Doc 200 at 4) designed to disadvamtage him or plaintiffs generally. Aslani presents no Sixth Circuit precedent – or even persuasive authority from district courts or from other circuits – suggesting that this sequence of expert-identification deadlines unduly prejudices the plaintiff, and the court agrees with the Magistrate that it does not.

Next, Aslani expresses his opinion that "the present American political culture" is biased against and hostile to Iranians and/or Arabs and/or Muslims, which racial/ethnic and religious bias he says has given him "a hell of a time" to find medical experts willing to examine or treat him and assist in his prosecution of this case. *See* Doc 200 at 6-7.

Aslani also explains that he suffers from a knee injury and that "should his physician decide that an operation is necessary, he might need weeks for his surgery and recuperation, standing alone." Doc 200 at 7. The court advises Aslani that if he undergoes said surgery, or any other medical procedure or treatment which he contends substantially impairs his ability to perform litigation tasks in a customary period of time, he may so advise the court – *providing medical documentation to substantiate the treatment and the physical/mental limitations it or its aftermath impose on him* – and the court will fairly consider whether deadlines should be moved back accordingly. Obviously a surgery which may take place in the future has no bearing on whether

Aslani was entitled to an extension of expert discovery beyond the original December 31, 2009 deadline or the extended January 22, 2010 deadline.

Next, Aslani cites case law stating that the Federal Rules of Civil Procedure afford a district court "great leeway" in granting enlargements, *see* Doc 200 at 8The court agrees, but notes that this discretion allows a district court to *deny* an extension motion, under appropriate circumstances, not just the discretion to always grant such motions, which would not be "discretion" in the ordinary sense of the word. Finally, Aslani calls on the Magistrate to recuse herself because of her alleged personal bias and animosity against him, *see* Doc at 9-10. The court notes that if Aslani wishes the Magistrate to recuse herself, he must do so by separate motion and in accordance the substantive requirements for such motions. *See also generally Bethel v. Town of Loxley*, 2006 WL 3361402, *2 (S.D. Ala. Nov. 20, 2006) ("Mere adverse rulings do not constitute the sort of pervasive bias that necessitates recusal.") (citing *Loranger v. Stierheim*, 10 F.3d 776, 780 (11th Cir. 1994)), *recon. denied*, 2006 WL 3449140 (S.D. Ala. Nov. 29, 2006); *Hoffenberg v. US*, 333 F. Supp.2d 166, 178 (S.D.N.Y. 204) ("[A]dverse judicial rulings, whether over the course of the same proceeding or in other litigation involving the party seeking recusal, do not constitute a basis for recusal.") (citing *Liteky v. US*, 510 U.S. 540, 555 (1994)).

## ORDER

Plaintiff's appeal **[document #200] is DENIED.**

The Magistrate Judge's order of January 8, 2010 (granting in part and denying in part the plaintiff's motion for an extension of expert discovery) **[document #199] is AFFIRMED**.

This is not a final, immediately appealable order. *Griffin v. Reznick*, 2008 WL 5110528, *10 (W.D. Mich. 2008) (citing, *inter alia*, *Tanner Co. v. US*, 575 F.2d 101, 102 (6th Cir. 1978)).

**IT IS SO ORDERED this 25th day of February 2010.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge