## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

| |
DAVID ASLANI, | Case No. 1:08-cv-298
| |
      Plaintiff, | Chief Judge Paul L. Maloney
| |
      v. | Magistrate Judge Ellen Carmody
| |
SPARROW HEALTH SYSTEMS, |
KEN HAMKAMD, individually and as |
security officer of Sparrow Health System, |
DENNIS SWAN, individually and as administrator in |
charge of Sparrow Health System, |
RICHARD LIEBELT, individually and as |
registered nurse of Sparrow Health System, |
RACHEL LATUNSKI, individually and as |
registered nurse of Sparrow Health System, |
KARL ENGLER, individually and as |
registered nurse of Sparrow Health System, |
DR. STEVEN OWENS, |
individually and as physician of Sparrow Health System,[1] |
| |
GREYHOUND BUS LINES, INC., |
| |
CAPITAL AREA TRANSPORTATION AUTHORITY, |
JOSEPH M. BECKER, individually & as security officer |
for the Capital Area Transportation Authority in Mich., |
MATTHEW FOWLER, individually & as security officer |
for the Capital Area Transportation Authority in Mich., |
| |
and CITY OF LANSING, |
| |
      Defendants. |

## OPINION AND ORDER
### *" Aslani 7 "*

_____

[1] The following are named as defendants in the amended complaint but have not been served, so they are not listed in the caption: "ED LEWIS, individually and as bus driver of Greyhound Bus Lines" and "DR. JAMES CAGLE, individually and as physician of Sparrow Health System."

**Holding Plaintiff Liable for Fees/Costs Caused by His Failure to Appear at His Own Deposition;**
Directing the Defendants to File Lists of Attorney Fees/Costs Occasioned by Said Failure

**Directing Plaintiff to Do the Following on or Before Friday, June 18, 2010:**
Sign all Medical Disclosure Authorization Forms and Tender Them to Defendants;
Identify all Treating Physicians in a Signed, Dated Writing;
Sign the Protective Order and File It with the Court;
**Directing Defendants to Advise the Court of Plaintiff's Compliance by Wed. June 23, 2010**

**Warning Plaintiff that Noncompliance May Result in Consequences Including Dismissal**

The plaintiff, Mr. David Aslani ("Aslani"), brings this federal civil-rights action claiming that he was subjected to discriminatory and abusive behavior by employees of defendants Greyhound Bus Lines, Inc. ("Greyhound"), Capital Area Transportation Authority ("CATA"), and Sparrow Health Systems, Inc. ("Sparrow"). Aslani's amended complaint asserted nine claims, but only four survived dispositive motions. The court substituted the City for the LPD, and dismissed the police officers because all claims were meritless or untimely as to them. **The court dismissed five counts as to all defendants:**

– Counts 2-4 (false arrest, false imprisonment, assault & battery) were barred by a Michigan two-year statute of limitations, which will not be equitably tolled here, *id.* at *8.

– Count 6 (malicious prosecution) failed to state a claim on which relief can be granted, as the underlying criminal proceedings did not terminate favorably to Aslani, *id.* at *12-13;

– Count 9 (UN Convention Against Torture & Universal Declaration of Human Rights claims) failed to state a claim on which relief can be granted, because neither the Supreme Court nor our Circuit has held these claims cognizable in American courts, *id.* at *8.

This court held that Aslani could proceed, for the time being, on four claims, all apparently governed by a three-year statute of limitations under Michigan law:

Counts 1, 7 and 8 (civil-rights claims under 42 U.S.C. §§ 1981, 1983, 1985(3));
Count 5 (intentional infliction of emotional distress, IIED)

*Aslani 2*, 2009 WL 736654 at *8.

# BACKGROUND

The court incorporates this summary of the facts and procedural history from *Aslani 2*:

Aslani describes himself as a Muslim and "an Iranian-born naturalized citizen of the United States" who "is olive-skinned and outwardly appears to be of Middle Eastern descent." Aslani had a valid Greyhound bus ticket for a round trip from Detroit to Lansing. On April 1, 2005, Aslani was attempting to use the return portion of that ticket, going from Lansing to Detroit. Aslani urgently needed to get home because his wife was waiting for him with his blood-pressure medication, which he had forgotten to take with him on the trip.

Aslani approached the Greyhound bus driver, showed him the valid ticket, and, it seems, explained that he needed to get on the next bus, not a later bus, in order to get his medication as soon as possible; Aslani indicated that he would stand in the aisle or "squeeze" himself on a seat with other passengers.

Aslani does not mention whether there was a seat available within the customary, contemplated use of the seats, i.e., with enough room for each person to be reasonably comfortable and not unduly cramped or imposed upon. Nor does he relate the driver's response, if any, to his request.

While the driver was busy with luggage and talking to other passengers, Aslani boarded the bus and "easily" found a seat. A few minutes later, two City of Lansing police officers boarded the bus, approached Aslani, and "advised him with hostility, anger, and disrespect that he had to get off the bus immediately, otherwise he would be arrested for trespassing." Aslani explained to the police that he had a valid ticket, which he showed them, and that he needed to get back to Detroit urgently to get his blood-pressure medication that he had forgotten to take on the trip, but the police again ordered him to get off the bus or he would be arrested for trespassing, Comp ¶ 8. Aslani claims that he complied and got off the bus. Comp ¶ 9.

Aslani alleges that both Lansing Police Department ("LPD") and Capital Area Transportation Authority ("CATA") security officers directed racial slurs at him, such as "fuckin[g] Arab", while he was at the Greyhound bus terminal. Comp ¶ 11. Aslani alleges that he was then "subjected to monstrous mistreatments, in the form of brutal beating, terrorizing tasering and yes, terrifying torture, with . . . intense cruelty . . . ." Aslani asserts that he was subjected to disparate treatment due to his religion (Islam), as evinced by the fact that CATA or LPD officers told him "pray now" and called him a "fuckin[g] Moslem" while they were beating, throwing, and tasering him, and by the fact that they desecrated his Muslim holy book.

On April 25, 2005, Aslani was charged in the Circuit Court of Ingham County, Michigan, with trespassing, two counts of resisting and obstructing a police officer,

and one count of assault and battery, and assigned a court-appointed attorney over his objections. The prosecutor offered a bargain in which Aslani would plead guilty to a simple misdemeanor for trespassing and the State would drop the other charges.

Aslani contends that he was wrongfully denied access to surveillance videos from the Greyhound bus terminal, the CATA station, and the Sparrow Hospital emergency room, where he was allegedly "subjected to various savage . . . treatments, including but not limited to, beating, tasering, cathe[te]rization and medical torture, and verbal and physical and psychological abuses."

At a September 2006 state-court hearing, the state prosecutor offered Aslani this deal: plead *nolo contendere* (no contest) to misdemeanor trespassing and misdemeanor resisting and obstructing an officer, and pay a fine up to $200, and in return the prosecution would drop the other charges and vacate the order that had prohibited Aslani from carrying firearms. Comp ¶ 18.

Feeling pressured, Aslani reluctantly accepted the plea bargain because his attorney led him to believe that a no-contest plea was not an admission that he was guilty of committing any offense. Comp ¶¶ 19-21. The Michigan Court of Appeals denied . . . leave to appeal in October 2007, and the Michigan Supreme Court denied review in April 2008, *see People v. Aslani*, 747 N.W.2d 307 (Mich. 2008).

Aslani filed the original complaint in this court on March 31, 2008, one day less than three years after his allegedly false arrest and imprisonment and the other alleged torts . . . . The original complaint named four institutional defendants – the LPD, Greyhound, CATA, and Sparrow Health Systems – and no individual defendants.

* * * Aslani filed the first amended complaint in July 2008. Because none of the defendants had filed a responsive pleading by that time, Aslani was entitled to amend his complaint once "as of right", i.e., without leave of court or opposing counsel. * * * Accordingly, the court accepted Aslani's amended complaint for filing.

The amended complaint kept the four institutional defendants and added 16 individual defendants: seven alleged employees of Sparrow (doctors, nurses, and administrators), one alleged Greyhound employee (bus driver Ed Lewis), two alleged CATA employees (security officers Fowler and Becker), and six alleged City of Lansing employees (police officers)**. The amended complaint asserts three federal claims, five state-law claims, and one claim under international law:**

| | | |
|---|---|---|
| Count 1, Am Comp ¶¶ 29-48 | 42 U.S.C. § 1981 | |
| ~~Count 2, Am Comp ¶¶ 49-61~~ | ~~False Arrest~~ | |
| ~~Count 3, Am Comp ¶¶ 62-73~~ | ~~False Imprisonment~~ | |
| ~~Count 4, Am Comp ¶¶ 74-83~~ | ~~Assault and Battery / Excessive Force~~ | |
| Count 5, Am Comp ¶¶ 84-89 | IIED | |

| ~~Count 6, Am Comp ¶¶ 90-106~~ | ~~Malicious Prosecution~~ |
|---|---|
| Count 7, Am Comp ¶¶ 107-114 | 42 U.S.C. § 1983 |
| Count 8, Am Comp ¶¶ 115-122 | 42 U.S.C. § 1985(3) |
| ~~Count 9, Am Comp ¶¶ 123-125~~ | ~~UDHR and CAT~~ |

*Aslani 2*, 2009 WL 736654, *1-3 (record cites omitted, nn. omitted).[2] The court denied Aslani's

motion for reconsideration. *See Aslani v. Sparrow Health Sys. et al.*, No. 1:08-cv-298 Doc 180, 2009

WL 3711602 (W.D. Mich. Nov. 3, 2009) (Maloney, C.J.) ("*Aslani 3*").


### *Aslani 4*: Denying Appeals from Magistrate Orders #183-184 (Nov. and Dec. 2009)

Plaintiff obtained a subpoena to depose Judge Economy of the Ingham County Probate Court.

*See* Magistrate Judge Order of Nov. 30, 2009 (Doc 183) at 2. The subpoena directed Economy to

> produce and permit inspection and copying of . . . all notes, documents and
> information available through any media . . . relative to each and all of your
> activities, functions, duties, privileges, rewards, and the like, as a member of the 2009
> Sparrow Health Regional Advisory Committee and as the member of other
> committee(s) and the like concerning Sparrow Health System, City of Lansing,
> [LPD], and [CATA] since the date of your membership(s) to the present time.

Doc 183 at 2 (quoting Doc 153, Ex A). The Magistrate granted Sparrow Health's motion to quash

the subpoena as unduly burdensome and unnecessary, *see* Doc 183, and Aslani appealed. After

considering briefs – including a reply and a "supplement" from Aslani, this court affirmed. *Aslani*

*v. Sparrow Health Systems et al.*, No. 1:2008-cv-298 Doc 210, 2010 WL 623673, *3-6 (W.D. Mich.

Feb. 18, 2010) (Maloney, C.J.) ("*Aslani 4*"). Aslani also appealed from the Magistrate's December

7, 2009 Order [Doc 184] declining to enter his proposed protective order and directing him to accept

---

[2] In October 2008, seven defendants filed both an answer to the amended complaint and a
motion to dismiss ("MTD"): the LPD and Police Officers Beasinger, Schlagel, Thielen, and
Osborn; Captain Szymanski; and Chief Alley ("the Police Defendants"). This court denied the
Police Defendants' dispositive motion without prejudice for failure to comply with LCIvR 7.1(d).
*See Aslani v. Sparrow Health Sys.*, 2008 WL 2642617 (W.D. Mich. Oct. 20, 2008) ("*Aslani 1*").

the defendants' proposal instead. After considering briefs – including a reply and "supplement" from Aslani – this court affirmed (with one very minor modification not relevant here). *Id.* at *6-8.

### *Aslani 5*:  Denying Plaintiff's Appeal from Magistrate Order #200 (Jan. 8, 2010)

The Magistrate's June 2009 scheduling order (Doc 111) required plaintiff to identify expert witnesses by December 31, 2009 and defendants to identify theirs by January 31, 2010.  On December 29, 2009, Aslani moved to extend his expert-identification deadline by four months, until April 30, 2010; the Magistrate extended that deadline by about three weeks for each side:  Aslani had to identify his experts by January 22, 2010 and the defendants by February 22, 2010.  This court found the Magistrate's reluctance to grant a longer extension understandable, given that, as the Magistrate noted, Aslani had known for about six months that he had to identify all his experts by the end of 2009, and he did not identify any valid reason for needing an additional four months beyond that to accomplish the task.  (Aslani did file a supplemental identification of experts on the extended deadline, January 22, 2010, *see* Doc 202.)  The court also rejected Aslani's complaint about being required to identify his experts before the defendants identify theirs, and various other complaints and remarks by Aslani.  This court denied plaintiff Aslani's appeal (Doc 200) and affirmed the Magistrate's order of January 8, 2010, granting in part and denying in part plaintiff's motion to extend expert discovery (Doc 199).  *See Aslani v. Sparrow Health Systems et al.*, No. 1:2008-cv-298 Doc 222, 2010 WL 774947  (W.D. Mich. Feb. 25, 2010) (Maloney, C.J.) ("*Aslani 5*").

### *Aslani 6* and The Instant Order, Issue One:  Plaintiff's Motion for a Medical Stay

On March 3, 2010, Aslani filed a motion to stay all proceedings due to his medical condition

and upcoming necessary surgeries, treatment, and recovery therefrom. *See* Doc 224 ("the first

stay/extension motion"). Aslani's first stay/extension motion states as follows, in pertinent part,

> 3. [T]he plaintiff has been in serious ill-health condition, and since the commencement of these proceedings in this Court, his ill-health has considerably deteriorated; in fact, last year it was medically determined by Dr. Lawrence Konst that he had suffered a stroke.

> 4. That ever since the occurrence of the infamous incident, the Plaintiff has been in such a sorry state of ill health by experiencing relentless pain and suffering that he would not have been able to function at all had it not been for the vigilant attendant care that his spouse had rendered to him around the clock as to his need for continued medical and therapeutic treatments, among others.

> 5. [T]he Plaintiff has been suffering from entrenched post-traumatic stress disorder and a chronic case of high blood pressure, that under undue pressure and severe pain gets elevated to very dangerously life-threatening levels, which result in thrombosis and/or heart attack and/or cause renal failure, among the failure of his other organs.
> * * *

> 7. [T]he Plaintiff due to his highly pressing ill-health condition had already been admitted to a hospital since Saturday, February 20, 2010, under the professional demand of medical experts in their field, as the Plaintiff has been suffering from debilitating back pain and an excruciating knee injury, both of which are in urgent need of surgical operations. Such surgeries will require prolonged rehabilitation, including physical therapy and pain management. At the moment the plaintiff is suffering from such excruciating pain that he has to be treated with increasing dosages of morphine, and thereby he is not permitted medically to leave the hospital until the said injuries are subject to surgical operations.

> 8. [A]ccording to Dr. Glenn J. Minster, who is an outstanding orthopedic surgeon and who will perform back surgery on the Plaintiff, the surgical operation, itself, will take anywhere from 5 to 8 hours and the recuperation with necessary therapeutic treatments and the like will take seven to eight months, barring any unexpected complications in the course of surgery or thereafter.

> 9. Plaintiff's said acute back injuries have been caused as the result of severe aggravation of his prior back injury. However, his acute knee injury with chronic pain has been the direct result of [misconduct by defendants].

10. [S]urgical operation . . . will take place in the first week in March after all the conditions . . . particularly his high blood pressure level, have been stabilized . . . * * *

11. That the Plaintiff also has sustained an injury to his left knee causing him suffering due to the brutal treatment . . . that will require an urgent surgical operation, as well.

12. [A]s a consequence of all the injuries . . . , he has been compelled to live a sedentary life and thereby he might also need a hemorrhoid operation.

13. That the Plaintiff has developed blurred vision in his left eye that could be a consequence related to said injuries.

14. [W]ithout these operations the Plaintiff will not be able to function in any capacity whatsoever, particularly he definitely would be unable to perfect and prosecute his meritorious claims against all the Defendants . . . .

* * *

16. That the plaintiff will be able to provide a proper statement from his treating physicians and surgeons regarding the above-referenced surgical operations . . . and should it be necessary, he will be able to obtain proper information relative to the said surgical operations at a later date.

Doc 224 at 2-4. Defendant CATA filed a response to the motion for medical stay (Doc 241), as did the City of Lansing (Doc 239) and the Sparrow Health System Defendants (Doc 240). Aslani did not file a reply brief in support of his first motion for a medical stay/extension within the time allotted by the Local Civil Rules and Federal Rules of Civil Procedure. Nonetheless, this court stated that

[a] sense of fairness and compassion towards all litigants impels the court to afford Aslani a full opportunity to substantiate his allegations with medical expert opinion evidence.

No later than Monday, May 10, 2010, plaintiff MAY FILE, in support of his request for a stay of this case due to medical issues, signed and dated letters or affidavits from two physicians who are licensed to practice medicine in the State of Michigan or other State in the USA, at least one of whom has treated or examined the plaintiff in connection with said issues.

The letters and/or affidavits SHALL explain specifically the conditions with which

Aslani has been diagnosed, as well as any surgical procedures or treatments which are scheduled or need to be scheduled, and the time needed to recover from the procedure or treatment and recovery therefrom.

*Aslani v. Sparrow Health Sys. et al.*, No. 1:2008-cv-298 Doc 247, 2010 WL 1462496, *2-4 (W.D.

Mich. Apr. 9, 2010) (Maloney, C.J.) ("*Aslani 6*") (boldface omitted).

In response to the court's order, Aslani timely submitted an April 2010 letter from treating

physician Glenn J. Minster, M.D., an orthopedic specialist, stating as follows:

Mr. Aslani is a patient of mine treated for lumbar disc herniation and spinal stenosis. He recently underwent a lumbar discectomy with decompression and fusion from L2-5 [lumbar vertebrae] on 03/05/2010. He had a significantly complicated postoperative course with a postoperative DVT and pulmonary embolism. The patient had one replacement of IVC filter on 03/13/2010 by Dr. Thomas Gazdecki. The patient [ha]s also been treated with Coumadin, which will be required for approximately six months. He also had problems with a severe flare-up of cholecystitis, which will require a laparoscopic cholecsystectomy on 03/24/2010 [sic, before the date of Dr. Minster's letter] by Dr. Baidoun.

The patient's hospitalization is also complicated by gastroparesis as well as postoperative pneumonia. The patient was seen in the hospital by Dr. Pensler for the pneumonia and PE as well as Dr. Pervez for diabetes and Dr. Malik for gastroparesis. He was also seen by Dr. Garg for posttraumatic stress disorder and Dr. Guyon for rehabilitation evaluation.

He was hospitalized for 47 days due to these conditions. *He will have a significant recovery period related to all these medical issues that he has been treated for. I would anticipate approximately one year of recovery time for these conditions especially his back fusion procedure.* His wife has apparently given him round the clock care, which I feel is necessary for him in recovering from the significant medical problems.

He is also address[ed] to other problems; he would likely need to be treated for [sic] in the future including his left knee, bilateral wrist, as well as possible hemorrhoid surgeries. I advised him that he wait [a] significant amount of time from recovering from knee surgeries for anything further for him unless it is absolutely essential.

The patient does relate [a] history of multiple injuries leading to his current back problems. He had a motor vehicle accident in 2003 and was diagnosed with pinch[ed] nerves in his back. He also relates a history of trauma from [the instant incident] in April 2005. * * *

Doc 269, Ex A (emphasis added).  Plaintiff Aslani also submits a May 7, 2010 letter from Dr. Craig

D. Peppler, D.O., of the Michigan Spine Institute in Troy, Michigan, stating as follows:

> Mr. Aslani has been a patient of mine since June 4, 2009 when he presented to my office seeking treatment for chronic pain.  He gave history [about the November 2003 car accident and the April 2005 incident herein].  * * *
>
> *Very recently, Mr. Aslani was admitted to the hospital for urgent surgical decompression of his lumbar spine which was followed by many **severe and life threatening complications**.*  After 47days of hospitalization he was released and sent home to continue his recovery.  He has currently been diagnosed with and is under treatment for the following conditions:
>
> 1. Multi-level Lumbar Spinal Stenosis
> Status post decompression laminectomy and instrumented fusion
>
> 2. Deep Venous Thrombosis with Pulmonary Embolism
> Status post Greenfield Filter insertion
>
> 3. Resolving Pneumonia
>
> 4. Status Post Cholecystectomy
>
> 5. Iron Deficiency Anemia
>
> 6. Post[-]Traumatic Stress Disorder
>
> 7. Bilateral Carpel Tunnel Syndrome
>
> 8. Degenerative Joint Disease of Bilateral Knees
>
> 9. Uncontrolled Hypertension
>
> Due to the multiplicity and severity of these problems I feel that at the present time, and for the foreseeable future, Mr. Aslani is not physically capable of completing the work and preparation needed for these court appearances.  His recent illnesses have resulted in extreme debility [sic] and a long convalescence will be needed.
>
> In the intervening time period Mr. Aslani will require extensive physical therapy and will be attending to many office visits with all his various doctors.  In addition, he may require further surgery to address his knee and hand problems.  Before any further surgery can be contemplated he must fully recover from the pulmonary complications he experienced after the back surgery.  I anticipate this will take almost

one year.  Recovery from his knee surgeries is estimated at six months.  Therefore, I respectfully request that Mr. Aslani be granted an extension of approximately one and a half (1 ½) years to allow him sufficient recovery time prior to resuming these court proceedings.

Doc 269, Ex B at 1-2 (italics and boldface added).

Aslani filed these expert medical opinions on Monday, May 10, 2010.  This court's previous order gave the defendants ten calendar days to respond.  Because Aslani has chosen not to participate in the Electronic Case Filing ("ECF") system, he sent the medical letters to the defendants by regular first-class mail via the United States Post Office.  Because both Aslani's home and defense counsels' offices are in Michigan, the court presumes that the defendants received the letters three calendar days after they were mailed, i.e., on Thursday, May 13.  Thus, the defendants' ten-day response period began on Friday, May 14.  The tenth day fell on Sunday, May 23, meaning that the defendants had to e-file any response by midnight on Monday, May 24, 2010.

Defendant Capital Area Transit Authority ("CATA") filed a response on Thursday, May 20, 2010, complaining that "it does not appear that Aslani has been *completely* incapacitated since leaving the hospital [the hospital stay that apparently began on February 20, 2010]" (emphasis added), but conceding that "discovery and other dates need to be extended . . . ."  Doc 271 at 3.  CATA objects merely that a stay and/or extension of "two years is too long, and . . . any extension [of discovery] should apply to all parties", not only to Aslani, Doc 271 at 3.[3]  None of the other

---

[3]  Defendant CATA also urges the court to "*require* plaintiff to obtain counsel who shall put in an appearance" within about three months, Doc 271 at 4 (emphasis added).  CATA identifies no precedent authorizing the court to take such a drastic and unusual step, and the court finds none.  Accordingly, the court declines CATA's request to force Aslani to retain counsel, whether as a sanction for his failure to cooperate in discovery or otherwise.

Aslani has the right to seek to vindicate what he perceives as violations of his rights without hiring a lawyer.  *See, e.g., Kunz v. NY State Comm'n on Judicial Conduct*, 356 F. Supp.2d 188, 197

defendants filed a response to Aslani's May 10th filing by the deadline of midnight on Monday, May 24, 2010.

For reasons explained below, the court defers ruling on Aslani's motions for a medical stay and extensions of discovery and other deadlines.

### The Instant Order, Issue Two: Defendants' Motion to Dismiss as Discovery Sanction

On April 28, 2010, defendant Greyhound moved to dismiss the action as a discovery sanction, stating as follows, in pertinent part:

> This case has been litigated for almost two years and not one deposition has been taken, due solely to Mr. Aslani's actions.  * * *
>
> [Aslani filed the original complaint in March 2008 and the amended complaint in July 2008.]  On June 12, 2009, this Court had a Rule 16 scheduling conference . . . . (Doc No. 106.)  Noting that they feared that Aslani would present difficulties in producing information, particularly medical, about himself, the defense attorneys collectively suggested that the parties enter into a Protective Order, to which the Magistrate agreed.
>
> On June 15, 2009, Greyhound, on behalf of all Defendants, presented a Protective

---

(N.D.N.Y. 2005) (in lawyer's section 1983 action claiming that state judicial-conduct commission violated his constitutional rights by refusing to let him withdraw from representation of a judge named Spargo before the commission, court remarked, "Justice Spargo is permitted to proceed *pro se* or to hire another attorney, but the Commission *is not entitled to choose his attorney for him.*") (emphasis added).  *Cf.* Stephen Lease, 12A FLORIDA JURISPRUDENCE 2D, COURTS & JUDGES § 24 (Database updated Feb. 2010) ("A court cannot prevent a litigant in a civil matter from appearing on his or her own behalf unless it is shown that the litigant has abused his or her *pro se* right of access to the court system so as to interfere with the effective administration of justice; thus, *a court order requiring a litigant to be represented by counsel in order to proceed with his or her case is invalid, and a dismissal based on violation of the order is erroneous.*") (emphasis added) (citing *Baker v. Grant*, 497 So.2d 895, 898 (Fla. App. 5th Dist. 1986) ("A civil clamant is not required, barring extraordinary circumstances, to be represented by counsel.") (citing, *inter alia*, *Ray v. Williams*, 55 Fla. 723, 46 So. 158 (Fla. 1908))).

Given that Aslani continues to exercise his right to proceed *pro se*, the court will evaluate his request for a medical stay and discovery extension with the understanding that a *pro se* party's medical condition necessarily impairs his ability to function both as a litigant and as counsel.

Order to Aslani, to which he did not respond, opting instead to file a motion for entry of his own protective order. (Doc. No. 126.) Greyhound responded to Aslani's motion with a cross-motion of its own, requesting that the Court order that their Proposed Order be adopted. On December 7, 2009, the Magistrate entered an order compelling the parties to sign the Protective Order submitted by Defendants. (Doc. No. 184.) Aslani appealed the Magistrate's order to Judge Maloney and, on February 18, 2010, this Court affirmed the Magistrate's order with one modification – that when a Defendant returns records to Aslani, they must be sent by certified mail. Doc. No. 210.) * * *

Greyhound sent Aslani the Protective Order on March 16, 2010 and again on March 18, 2010. (Exhibits C and G) To date, Aslani has not signed the protective Order. In addition, Greyhound served expert interrogatories on Aslani on February 3, 2010. (Exhibit A) To date, Aslani has not provided responses.

In addition, Greyhound sent Aslani authorizations for release of his medical records, asking that he insert the names of any and all persons and/or facilities that have rendered him treatment over the last ten years and return them to Greyhound so that Greyhound could obtain his medical records (Exhibit B). To date, Aslani has not provided the signed authorizations. In addition, Greyhound requested that Aslani provide it with dates for Aslani's experts to be deposed. (Exhibit E). Again, Aslani has not responded.

Finally, and most significantly, Greyhound noticed Aslani's deposition for March 25, 2010, by both certified and regular mail. (Exhibit D). Aslani did not appear for his deposition. On the morning of his scheduled deposition, defense counsel for Greyhound contacted both St. John and Henry Ford Hospitals to determine if Aslani was admitted to either facility. Both facilities indicated that they did not have Aslani listed as a patient for the previous ten days.

* * *

Greyhound recognizes that dismissal of this case is a drastic action; however, it is appropriate considering the fact that discovery closed on March 31, 2010 and Aslani has not responded to a single request for discovery issued by Greyhound, let alone sign the protective order mandated by the Court. Instead, he has wasted this Court's time, and countless dollars in defense costs in defending a case in which he apparently has no plans to litigate.

In fact, Aslani's actions appear to be consistent with his actions from a Wayne County Circuit Court case[4], in which he agreed to an order to appear at his

---

[4]

*See Aslani & Knubbe v. State Farm*, LC No. 06-625234-NF, COA No. 284572, 2009 WL 2952676 (Mich. App. Sept. 15, 2009) (per curiam) (P.J. O'Connor, Talbot, Stephens) (affirming summary disposition for defendant), *app. denied*, No. 139788, 485 Mich. 1044, 776 N.W.2d 909

deposition, but then refused to answer any questions at the deposition, taking the position that he only agreed to *appear* for his deposition, but did not agree to answer any questions. (Exhibit H.) In that case, Aslani claimed that the Court's written Order did not require him to actually answer questions at his deposition, but only to appear. The [Michigan] Court of Appeals noted, in affirming the trial court's dismissal of the case, that Aslani refused to answer any questions regarding his work history or the incident at issue in that case. Aslani also accused State Farm's attorney of harassing him, the same allegations he has repeatedly made [against defense counsel] in this case. The Court also noted that Aslani's attorney also attempted to withdraw in that case, noting that he was tired of Aslani's "shenanigans." Those actions sound all to[o] familiar. Aslani is engaging in the same tactics in this case as he did in the case against State Farm and should not be rewarded for those actions. Clearly, this litigation is nothing more than a game to Aslani.

* * * The "icing on the cake" was Aslani's failure to appear for his own deposition, give an excuse as to why he could not attend, or file objections to the taking of his deposition. Accordingly, dismissal of this case is appropriate given the blatant and abusive violation of the discovery process by Aslani. Alternatively, Greyhound requests that this court enter an Order compelling Aslani to provide answers to Greyhound[']s expert interrogatories, identify his medical treaters and sign the authorizations, and compel Aslani to appear for his deposition.

Doc 253 at 9-11 (footnotes omitted). On April 30, 2010, defendant City of Lansing filed a

concurrence in the motion to dismiss, stating that "Plaintiff's failure to sign the Protective Order for

---

(Mich. Jan. 22, 2010), *recon. denied*, 2010 WL 1707422, 780 N.W.2d 826 (Mich. Apr. 27, 2010).

In addition, it appears that Aslani has initiated at least three other lawsuits in Michigan state court. *See, e.g., Mgmt. Corp. v. Knubbe*, No. 91318, 439 Mich. 887, 478 N.W.2d 156 (Mich. 1991) (denying leave to appeal in COA No. 135518), *recon. denied*, 482 N.W.2d 721 (Mich. 1992);

*Aslani v. Judge Jeanne Stumpien (In re Aslani)*, No. 101438, 449 Mich. 864, 535 N.W.2d 793 (Mich. June 30, 1995) (table entry) (denying leave to appeal in COA No. 178319), *recon. denied*, 539 N.W.2d 507 (Mich. Oct. 31, 1995) (table entry);

*Aslani v. Detroit Pub. Library*, No. 109522, 456 Mich. 953, 577 N.W.2d 683 (Mich. Mar. 31, 1998) (denying leave to appeal in COA No. 190731).

The court intimates no opinion as to the merits of Aslani's claims or the propriety of his litigation/discovery conduct in any of those cases.

medical records as ordered by this court has prejudiced Defendant in defending the case as Defendant cannot obtain medical records absent execution of the protective order after which appropriate authorizations for medical records would also need to be signed." Doc 254 at 2. On May 4, 2010 defendant Joseph Becker filed a concurrence in the motion to dismiss, likewise stating that Aslani's

> refusal to sign the agreed upon and carefully drafted protective order has prohibited all of the Defendants from obtaining <u>any</u> medical and hospital records regarding [his] alleged injuries. Because the Plaintiff has placed his medical condition at issue in this case, he must necessarily allow the Defendants to obtain all of the records regarding his medical history and treatment. Mr. Aslani has refused to sign the authorizations sent to him by Co-Defendant Greyhound, and has thereby precluded all of the Defendants from subpoenaing the various medical and hospital records.

Doc 264 at 2. On May 7, 2010, the Sparrow Health Defendants filed a concurrence in the motion to dismiss, stating as follows:

> FRCivP 26(a)(1)(A) requires a party to disclose witnesses who may possess discoverable information and the substance of that information, documents, and tangible items which may be used to support the claims made, and a computation of damages. Based upon the information which is currently available and the disclosures Plaintiff has made, it appears that he has not done so in this case. Indeed, these Defendants have not received any formal Rule 26 disclosure from Plaintiff.

> FRCivP 26(a)(2) requires disclosure of expert opinions to be used to support the claim, including written reports. Plaintiff has failed to make any effort to comply with this requirement.

> FRCivP 26(b) provides that all parties may obtain discovery into any relevant matter which is not privileged. * * * Plaintiff has brought an action alleging personal injuries, and his medical records are thus relevant. Defendants are thus entitled to discovery into these areas.

> FRCivP 26(e) requires a party to supplement disclosures discussed above if, at any time, it becomes apparent that full disclosure has not been fully [sic] made. In addition to his failure to make any initial disclosure, plaintiff has also failed to provide any supplemental disclosure.

> FRCivP authorizes the deposition of a party. FRCivP 33 authorizes discovery by

-15-

written interrogatories. FRCivP 34 allows for requests for production of documents, electronically stored information, and other tangible evidence. FRCivP 35 provides for an independent physical and/or mental examination of a plaintiff. * * *

<u>The Court has Authority to Order Sanctions Including Dismissal</u>
Much of FRCivP 37 relates to the Court's authority to order discovery and/or sanction a party for failure to comply. Subsection (b)(2) provides for sanctions for failure to comply with a court order. Plaintiff herein has failed to comply with an order to agree to disclosure of medical records in accord with a protective order approved by the Court. Subsection (c) authorizes sanctions for failure to provide initial disclosures. Plaintiff has refused to comply with the requirements for initial disclosure. Subsection (d) relates to the failure of a party to attend a deposition. By implication, the rule allows sanctions for failure to cooperate in arranging a deposition. Plaintiff has failed to cooperate in any sense of the word with efforts to arrange his deposition, and has failed to appear for a properly noticed deposition.

Rule 37 contains provisions regarding the Court's authority to impose sanctions for discovery noncompliance. Possible sanctions include treating certain matters as established, prohibiting a party from supporting or opposing a claim or defense, striking pleadings, dismissing an action in its entirety, and/or awarding costs. * * *
* * *
* * * [T]he discovery noncompliance at issue in Greyhound's motion [to dismiss] relates to basic and initial disclosures which Plaintiff should have voluntarily made at the outset of his actions under Rule 26. Specifically, Plaintiff alleges personal injury but has failed to disclose information regarding his condition and treatment history or sign authorizations for access to medical records, and has failed to appear for a properly noticed deposition. [A]ll defendants . . . are thus utterly frustrated in their efforts to develop this action and move it forward to a conclusion.

[A]ll defendants agreed to the deposition of Plaintiff in . . . Troy, Michigan (a location far more convenient to Plaintiff than the alternative of conducting the deposition in the court facility in Grand Rapids in order to have ready access to the [Magistrate Judge] if disputes should arise). However, Plaintiff did not appear for his deposition, nor did he object, [nor did he] contact any defense counsel to advise of any questions or concerns. Thus, although Defendants attempted to complete the deposition on March 25, only six days before the scheduled close of discovery in this case, Plaintiff has frustrated the efforts of each and every one of them. * * *
* * *
[In addition to Aslani's failure to cooperate with Greyhound's discovery requests], these [Sparrow Health] Defendants have engaged in additional discovery efforts, which plaintiff has likewise refused to comply with. They originally sent medical authorizations to Plaintiff on or about December 9, 2009 (Exhibit A; medical authorizations and cover letter).

They again sent authorizations (this time specifically tailored to 12 physicians identified by Plaintiff as treatment providers) on March 15, 2010 (Exhibit B; cover letter and authorizations).

They even went to the trouble and expense of engaging a professional copy service to obtain authorizations and copies of records (Exhibit C; record copy request) but again to no avail.

These Defendants also noted, in their Rule 26 disclosures, that they had possession of medical records, but were unable to disclose those records until such time as Plaintiff would sign an authorization. Most recently, in their response to Plaintiff's [r]ecent Motion Regarding an Inadequate Discovery (docket entry 245), these Defendants noted that they were frustrated in their efforts to engage in discovery by Plaintiff's noncompliance, in general and particularly as related to Plaintiff's refusal to sign medical authorizations. To date, Plaintiff has failed to provide any response or otherwise cooperate.

Doc 266 at 3-5 (final three paragraph breaks added).

"To justify dismissal as a discovery sanction under Rule 37(b), courts should consider '(1) evidence of willfulness or bad faith; (2) prejudice to the adversary; (3) whether the violating party had notice of the potential sanction; [and] (4) whether less drastic sanctions have been imposed or ordered.'" *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport*, 596 F.3d 357, 370 (6th Cir. 2010) (Norris, Clay, <u>Sutton</u>) (quoting *Phillips v. Cohen*, 400 F.3d 388, 402 (6th Cir. 2005)).

The first factor strongly tends to support imposition of a sanction on plaintiff Aslani. Based on the circumstances, the court finds that plaintiff's failure or refusal to cooperate in arranging and effecting his own deposition was willful and in bad faith. No other state of affairs logically and credibly explains the fact that Aslani not only failed to appear at his properly-noticed deposition, he provided no explanation for his failure to re-schedule the deposition, either before or after the noticed date. Even assuming *arguendo* that Aslani's health problems are as dire and longstanding as he indicates, it strains credulity to believe that he was *unable* (rather than unwilling) to merely send a short note or e-mail, or make a telephone call, to opposing counsel to request a different deposition

date, time or location. *Cf. Dell, Inc. v. Elles*, 2008 WL 4613978, *3 (6th Cir. June 10, 2008) (per curiam) (Boggs, Ryan, Cole) ("Elles alleged that he would have difficulty traveling to the courthouse with a broken leg and that his medication for his pain prevented him from fully participating in a timely manner. However, . . . Elles never communicated to the court that his condition prevented him from attending the hearings . . . ."). The court finds, then, that Aslani's non-cooperation regarding his deposition, the protective order, the list of treating physicians, and the medical-authorization forms, are all willful and in bad faith. Even assuming *arguendo* that Aslani's conduct in these areas did not display "'an intent to thwart judicial proceedings'" – as it appears – at the very least his conduct evinces "'a reckless disregard for the effect of his conduct on those proceedings'", *Shaw-El v. Serra Bros, Inc.*, 2008 WL 40457008, *6 (E.D. Mich. Aug. 7, 2008) (quoting *Wu*, 420 F.3d at 643).

The second factor also strongly tends to support imposition of a sanction on Aslani, as his longstanding unreasonable and unjustified refusal to sign medical-disclosure authorization forms (as well as his refusal to participate in scheduling and attending his own deposition) have substantially prejudiced the defendants. Aslani's refusal to sign those authorizations have prevented, and continues to prevent the defendants from building the record needed to defend this case – a record needed in order to thoroughly advise their clients, and to help the clients reach informed decisions about settlement, dispositive-motion practice, and if necessary, trial.

The third and fourth factors, however, weigh heavily against imposition of a sanction as harsh as dismissal of part or all of the complaint. "[I]n the absence of notice that dismissal is contemplated, a district court should impose a penalty that is short of dismissal unless the derelict has engaged in bad faith or contumacious conduct." *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th

Cir. 1988). Aslani has been not clearly and unequivocally warned that this court was contemplating dismissal of the complaint or would seriously consider that course of action if he persisted in flouting his discovery obligations.[5] *Cf. Badri v. Huron Hosp.*, 2009 WL 1662078, *4 (N.D. Ohio June 15, 2009) (Sara Lioi, J.) ("While the Court is entitled to consider all reasonable sanctions, including dismissal, for even the first instance of misconduct or dereliction by a party, this Order, filed after plaintiff failed to appear for his depositions, cannot be considered prior notice to plaintiff that his ongoing need to reschedule his deposition may lead to dismissal."). Nor has the court imposed any lesser sanctions up to this point.

**Therefore, although Aslani's bad-faith refusal to cooperate in discovery and related matters (protective order) might justify dismissal at this juncture, the court, out of an abundance of caution and fairness to Aslani, will decline the defendants' request to dismiss the complaint as a discovery sanction at this time.** *See Schreiber v. Moe*, 320 F. App'x 312 (6th Cir. 2008) (Kennedy, Batchelder, Griffin) (district court abused discretion by dismissing the remaining count of § 1983 plaintiff's complaint due to failure to file a pretrial memorandum and attend pretrial conference, notwithstanding earlier instances of late filings and late appearance at a court proceeding, as district court did not consider a lesser sanction, there was no evidence of bad faith, and the district court did not first warn the plaintiff of the possibility of dismissal), *aff'd in part &*

---

5

The court might legitimately find that Greyhound's motion to dismiss for lack of discovery cooperation put Aslani on notice that the court might dismiss his complaint if he continued to violate his discovery obligations. *See Kolbe & Kolbe Millwork, Inc. v. Deles Indus., Ltd.*, 2007 WL 1384960, *2 (W.D. Mich. May 8, 2007) (Quist, J.) ("Here, the Defendant's motion for dismissal gave the Intervening Plaintiff adequate notice that the Court would consider dismissal and sanctions under Rule 37."). Again out of an abundance of caution and fairness, however, the court will not treat Greyhound's motion to dismiss as putting Aslani adequately on notice of the possibility of Rule 37 dismissal. *Today's order* puts Aslani inarguably on notice of that possibility.

*rev'd in part on other grounds*, 596 F.3d 323 (6th Cir. 2010); *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (reversing dismissal of complaint as sanction, where district court had not warned plaintiff that such a sanction might be imposed).

This does not mean, however, that Aslani's egregious, prolonged, willful refusal to cooperate in discovery – flouting his obligations under the Federal Rules of Civil Procedure and, even more seriously, his obligations under this court's orders – can go unpunished indefinitely, at increasing cost to the defendants in time, effort, expense, and uncertainty. The court will order Aslani to *promptly* sign *all* forms needed to authorize the defendants and others to both disclose and obtain all of his medical records and information, though *at this point* it will not require him to reimburse the defendants for costs they incurred in litigating the medical-authorization and protective-order issues. "Promptly" means that all authorization forms must be signed and in the possession of each and every defendant no later than Friday, June 18, 2010. The court will also require Aslani to sign the protective order which was negotiated, litigated, and modified under the auspices of the Magistrate Judge, by that same date.

But the court *will* require Aslani to reimburse the defendants for the attorneys fees and other costs which they incurred to have their counsel to attend his deposition (including counsel's billable time spent traveling to the deposition site in Troy, a reasonable period of time spent waiting at the deposition site for Aslani to appear or at least communicate his inability to attend, and traveling from the deposition site back to each counsel's office). *See generally Hutto v. Finney*, 437 U.S. 678, 694 n.24 (1978) ("[L]ike the power to award attorneys fees for litigating in bad faith, the power to assess costs is an important and well-recognized tool used to restrain the behavior of parties during litigation.") (citing FED. R. CIV. P. 30(g) as authority for awarding costs for failure to attend

deposition); *cf. Robinson v. Burnett*, 2009 WL 80274, *2 (W.D. Mich. Jan. 9, 2009) (Maloney, C.J.) ("The court agrees that Robinson's failure to appear at a properly noticed deposition warrants a substantial sanction. Under the circumstances, however, dismissal with prejudice is too harsh until Robinson has had an opportunity to show that some lesser sanction (or no sanction) is appropriate in light of good cause for his conduct.").

If the defendants advise the court in writing that Aslani has signed all necessary medical-authorization forms, and is in compliance with all provisions of this Order, the court will then stay the case for 182 days allowing Plaintiff to seek an extension beyond six months with suitable medical opinion that he remains unable to move the litigation forward. By contrast, if Aslani fails to sign all necessary medical-authorization forms by the deadlines indicated, the court will instead (1) dismiss part or all of his complaint as a sanction for failure to comply with this order *and* (2) require him to reimburse the defendants for the fees and costs incurred to prepare and file Greyhound's motion to dismiss as a discovery sanction and the other defendants' concurrences therein. Plaintiff will submit to his deposition no later than 42 days after the lifting of the stay or any extension thereof.

Aslani has now been amply warned that dismissal of his complaint is a very real possibility if he continues to flout the Federal Rules of Civil Procedure and the orders of the undersigned and/or the Magistrate Judge*, see Farley v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 4937963, *1 (E.D. Mich. Nov. 14, 2008) (Hluchaniuk, U.S.M.J.) (after granting defendant's motion to compel discovery, court warned, "in the event that plaintiff does not comply with this order within that time period[,] the undersigned will recommend that the present action be dismissed as a sanction for failing to comply pursuant to [FED. R. CIV. P.] 37(b)(2)(A)(v)."), and the court advises him that our

Circuit has upheld dismissal as a sanction under similar circumstances. *See Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 740-42 (6th Cir. 2008) (district court properly dismissed a civil-rights complaint without prejudice as a sanction after plaintiff failed to appear at her scheduled deposition, *failed to obey court order to reimburse defendants for costs incurred due to said failure to appear, and failed to obey court order to reschedule deposition*); *see also Maldonado v. Thomas M. Cooley Law School*, 65 F. App'x 955 (6th Cir. 2003) (per curiam) (Boggs, Daughtrey, D.D.C. D.J. Oberdorfer) (Western District of Michigan did not abuse discretion in dismissing *pro se* 42 U.S.C. §§ 1981/1983/1985 complaint for willful failure to cooperate in discovery, where plaintiff refused defendants' requests to depose him, court had repeatedly warned plaintiff that failing to appear for deposition and to pay sanctions would result in more severe sanctions, possibly including dismissal, and monetary sanctions had proved insufficient to obtain his compliance with court order and discovery obligations); *In re Bender*, No. 98-5559, 188 F.3d 506, 1999 WL 617954 (6th Cir. Aug. 12, 1999) (per curiam) (Norris, Suhrheinrich, S.D. Ohio D.J. Rice) (noting with approval that when the debtors failed to attend a deposition held by the claimant, and then failed to reimburse the claimant's attorneys fees and costs attributable to that deposition, the bankruptcy court dismissed the debtors' petition as a sanction).[6]

Any non-compliance with this order, or any prior order of this court, may result in the denial

---

[6]

*Cf. Williams v. Select Speciality Hosp.-Nashville, Inc.*, 2010 WL 93103, *3 (M.D. Tenn. Jan. 7, 2010) ("The plaintiffs' conduct in this case warrants dismissal of the action under Rules 37(b) [discovery sanction] and 41(b) [failure to prosecute]. The plaintiffs have twice failed to appear for properly noticed depositions and have, in both instances, failed to notify the Court or the defendant prior to the scheduled depositions that they would not attend the depositions. They have likewise failed to offer any kind of after-the-fact explanation for their conduct and have failed to respond to the two motions to dismiss . . . .") (also recommending that plaintiffs be required under FED. R. CIV. P. 37(d)(3) to reimburse defendant for attorney fees and costs caused by their failure to appear at their own depositions).

of plaintiff's motions for stay and extensions.

## ORDER

**No later than Friday, June 18, 2010, the plaintiff SHALL:**

–   sign all forms necessary for defendants to obtain and/or disclose all medical information and records pertaining to plaintiff, and tender those signed forms to defense counsel;

–   identify all his treating physicians and physicians of the past ten years, in a signed, dated writing filed with the court and served on the defendants;

–   sign the Protective Order approved by the Magistrate Judge, file the signed order with the court, and tender the signed order to defense counsel.

**No later than Wednesday, June 23, 2010, Defendants SHALL FILE** a written notice advising the court whether or not plaintiff has complied with each of the foregoing directives.

Plaintiff's failure to fully comply with any directive in this Order **MAY** result in dismissal with prejudice of some or all of the complaint, the striking of briefs or affidavits or other documents, the imposition of further monetary sanctions, and/or other orders preventing Aslani from introducing certain argument or evidence at trial.

Plaintiff **IS LIABLE** for the reasonable attorney fees and costs which the defendants incurred in attending his previously-scheduled deposition. **No later than Wednesday, June 23, 2010, each defendant SHALL FILE** an itemized list of said fees and costs. After reviewing said lists, the court will quantify the award of fees and costs and order plaintiff to pay.

Until further order of the court, **Defendants MAY** conduct only those forms of discovery which do not require any further action by plaintiff, such as requests for documents and information from plaintiff's medical providers.

This is <u>not</u> a final, immediately appealable order. *Griffin v. Reznick*, 2008 WL 5110528, *10 (W.D. Mich. 2008) (citing, *inter alia*, *Tanner Co. v. US*, 575 F.2d 101, 102 (6th Cir. 1978)).[7]

**IT IS SO ORDERED this _____28th_____ day of May 2010.**

/s/ Paul L. Maloney _____
Honorable Paul L. Maloney
Chief United States District Judge

---

[7]The following five motions remain pending before the undersigned:

Defendant Greyhound Bus Lines, Inc.'s motion to dismiss the complaint
due to plaintiff's failure or refusal to cooperate in discovery            [doc # 253]

Plaintiff's Motion for Medical Stay                                        [doc # 224]
Plaintiff's Motion for Medical Stay & Extension of Discovery              [doc # 269]

Defendant Greyhound Bus Lines, Inc.'s motion for summary judgment          [doc # 253]
Defendant City of Lansing's second motion for summary judgment             [doc # 255]

In addition, other, nondispositive motions remain pending before the Magistrate Judge.